1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  STACEY D. SCHESSER, State Bar No. 245735
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
   San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5774
   Fax:  (415) 703-5843
8   Email:  Stacey.Schesser@doj.ca.gov

9  Attorneys for Respondent Board of Parole Hearings

10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    SAN JOSE DIVISION

14

15  **VERNON ADLER,**                       C07-02476  JW (PR)

                            Petitioner,
16

17          v.                              Judge:    The Honorable James Ware

   **BEN CURRY,**
18
                            Respondents.
19

20

21           **ANSWER TO ORDER TO SHOW CAUSE;**
          **MEMORANDUM OF POINTS AND AUTHORITIES**
22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
**Page**

3    INTRODUCTION                                                          1

4    ANSWER TO ORDER TO SHOW CAUSE                                         2

5    MEMORANDUM OF POINTS AND AUTHORITIES                                  9

6        ARGUMENT                                                         9

7        I.    THE PETITION SHOULD BE DENIED BECAUSE
               ADLER FAILS TO STATE A CLAIM FOR FEDERAL
8              HABEAS RELIEF UNDER AEDPA.                                  9

9              A.)  AEDPA Permits Relief to State Inmates Only for Violations of
                    Clearly Established Federal Law.                       9
10

11             B.)  The State Courts' Decisions Upholding the Board's Parole
                    Denial Were Not Contrary to or an Unreasonable
                    Application of Clearly Established Federal Law.        11
12

13             C.)  Assuming the Some-Evidence Test Applies to the State Parole
                    Decision, Adler Is Still Not Entitled to Habeas Relief Because
                    the State Court Properly Found that Some Evidence Supports
14                  the Board's Decision.                                  13

15             D.)  There Is No Clearly Established Federal Law Broadening
                    Adler's Due Process Rights.                           14
16

17       II.   THE PETITION SHOULD BE DENIED BECAUSE
               ADLER FAILS TO STATE A CLAIM FOR FEDERAL
               HABEAS RELIEF WHEN ARGUING THAT THE
18             BOARD VIOLATED HIS RIGHTS BASED ON STATE
               LAW.                                                       16
19

20       III.  THE BOARD DID NOT COMMIT AN EX POST FACTO
               VIOLATION BY APPLYING DETERMINATE
               SENTENCING LAW GUIDELINES IN CONDUCTING
21             PETITIONER'S PAROLE CONSIDERATION
               HEARING.                                                   19
22

     CONCLUSION                                                           20
23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2
**Page**

3 **Cases**

4

5 *Biggs v. Terhune*
334 F.3d 910 (9th Cir. 2003) ............................................... 14, 15

6 *Carey v. Musladin,*
___ U.S. ___, 127 S. Ct. 649 (2006) ............................... 10, 11, 15
7

8 *Casey v. Moore*
386 F.3d 896 (9th Cir. 2004) ............................................... 15

9 *Common Cause v. Bd. of Supervisors*
49 Cal. 3d 432 (1989) ............................................... 17
10

11 *Connor v. Estelle*
981 F.2d 1032 (9th Cir. 1992) ............................................... 19

12 *Contra Sass v. California Board of Prison Terms*
461 F.3d 1123 (9th Cir. 2006) ............................................... 7, 15
13

14 *Crater v. Galaza*
491 F.3d 1119 (9th Cir. 2007) ............................................... 15

15 *Early v. Packer*
537 U.S. 3 (2002) ............................................... 12
16

17 *Foote v. Del Papa*
486 F.3d 1166, 2007 WL 1469776 (9th Cir. 2007) ............................................... 11

18 *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*
442 U.S. 1 (1979) ............................................... 2, 7, 8, 10, 11, 12, 14, 20
19

20 *Gurley v. Rhoden*
421 U.S. 200 (1975) ............................................... 18

21 *Gutierrez v. Griggs*
695 F.2d 1195 (9th Cir. 1983) ............................................... 16
22

23 *Hill v. Kane*
2006 WL 3020923 at *3 (Oct. 26, 2006) (N.D. Cal.) ............................................... 15

24 *In re Dannenberg*
34 Cal. 4th 1061 (2005) ............................................... 7, 17, 18
25

26 *In re Duarte*
143 Cal. App. 3d 943 (1983) ............................................... 19

27 *In re Seabock*
140 Cal. App. 3d 29 (1983) ............................................... 19
28

**TABLE OF AUTHORITIES** (continued)

Page

1

2

3   *Lockyer v. Andrade*
    538 U.S. 63 (2003)                                                10, 11

4
    *Middleton v. Cupp*
5   768 F.2d 1083 (9th Cir. 1985)                                         16

6   *Nelson v. City of Irvine*
    143 F.3d 1196 (9th Cir. 1998)                                         18

7
    *Nguyen v. Garcia*
8   477 F.3d 716 (9th Cir. 2007)                                          11

9   *Pulley v. Harris*
    465 U.S. 37 (1984)                                                    16

10
    *Rose v. Hodges*
11  423 U.S. 19 (1975)                                                    16

12  *Rummel v. Estelle*
    445 U.S. 263 (1980)                                                   17

13
    *Sandin v. Connor*
14  515 U.S. 472 (1995)                                                    7

15  *Superintendent v. Hill*
    472 U.S. 445 (1985)                                                   13

16
    *Wainwright v. Greenfield*
17  474 U.S. 284 (1986)                                                   11

18  *Williams v. Taylor*
    529 U.S. 362, S. Ct. 1495 (2000)                                      10

19
    *Wilson*
20  355 F.3d at 1154                                                      18

21  *Woodford v. Viscotti*
    537 U.S. 19, 24, 123 S. Ct. 357 (2002)                                12

22

23  **Constitutional Provisions**

24  United States Constitution
        Fifth Amendment                                                    1
25      Eighth Amendment                                                16, 17
        Fourteenth Amendment                                             1, 17

26

27

28

## TABLE OF AUTHORITIES  (continued)

Page

**Statutes**

California Penal Code
  § 3041 .......................................... 17, 18
  § 3041(a) ...................................... 17
  § 3041(b) ...................................... 8, 17
  § 3041.5(b)(2)(B) ......................... 7

United States Code, Title 28
  § 2241(c)(3) .................................. 16
  § 2244(d)(1) .................................. 9
  § 2254 ........................................... 16
  § 2254(a) ...................................... 16
  § 2254(d) ...................................... 9, 18
  § 2254(d)(1-2) ............................... 10


**Other Authorities**

Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) ......... 8, 9, 12, 19

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  STACEY D. SCHESSER, State Bar No. 245735
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
   San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5774
   Fax:  (415) 703-5843
8   Email:  Stacey.Schesser@doj.ca.gov

9  Attorneys for Respondent Board of Parole Hearings

10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                      SAN JOSE DIVISION

14

|  |  |
|---|---|
| **VERNON ADLER,** | C07-02476  JW (PR) |
| Petitioner, | **ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| **BEN CURRY,** | |
| Respondents. | Judge:   The Honorable James Ware |

20                      **INTRODUCTION**

21        Vernon Adler, an inmate at the Correctional Training Facility, represents himself in this

22  habeas corpus action.  Adler alleges that the Board of Parole Hearings unconstitutionally found

23  him unsuitable for parole at an October 12, 2005 parole consideration hearing.  Specifically,

24  Adler argues four grounds for relief: (1) the Board violated his Fifth and Fourteenth Amendments

25  due process rights by continuing to use unchanging factors to deny him parole; (2) he has a legal

26  right to have a primary term fixed by the Board; (3) the Board's denial of parole is "arbitrary and

27  capricious" because the record is void of evidence to support the finding that he currently poses

28  an unreasonable threat to public safety; and (4) the Board violated his constitutional rights by

Answer to Order to Show Cause; Memorandum of Points and Authorities          *Adler v. Curry*
                                                                            C07-02476  JW (PR)

1  failing to conduct the hearing under the laws in effect before July 1, 1977, when he committed

2  his offense.

3      Respondent contends that Adler received all the process due as set forth in *Greenholtz v.*

4  *Inmates of Nebraska Penal and Correction Complex*, 442 U.S. 1 (1979), the only clearly

5  established federal law with respect to state parole procedures. Without citing any clearly

6  established federal law that broadens his due process rights, Adler received all the process

7  required by the Constitution and cannot state a claim for federal habeas relief. Adler also relies

8  on state law in his arguments for federal habeas relief, thus failing to state a claim cognizable

9  under federal law. Finally, with respect to his fourth claim, the federal and California courts

10  have already determined that retroactive application of the Determinate Sentencing Law (DSL) is

11  not an ex post facto violation.

12      The Court issued an order to show cause why Adler's petition should not be granted on July

13  9, 2007. Respondent Acting Warden Ben Curry[1] answers as follows:

14

15                  **ANSWER TO ORDER TO SHOW CAUSE**

16      In response to the petition for writ of habeas corpus filed in this Court on May 8, 2007,

17  Respondent hereby admits, denies, and alleges the following:

18      1.   Adler is lawfully in the custody of the California Department of Corrections and

19  Rehabilitation following his June 29, 1971 conviction for first-degree murder. (Ex. 1, Abstract

20  of Judgment.) He is currently serving an indeterminate sentence of seven years to life. (*Id.*)

21  Adler does not challenge his underlying conviction in the current proceeding.

22      2.   Respondent affirmatively alleges that on the morning of on November 16, 1970, Alicia

23  Katherine Ross, age 57, was discovered in her hotel room lying in bed, dead in a pool of dried

24  blood, and partially covered with a blanket. (Ex. 2, Probation Officer's Report at 1.) Ms. Ross's

25  ────────────────────────────────────

26      1. A proper habeas respondent is the person having custody of the petitioner, such as the
warden. Rule 2(a), 28 U.S.C. § 2254. Therefore, this Answer is filed on behalf of Respondent
27  Acting Warden Ben Curry. However, because this petition challenges a parole consideration
hearing, the Board is used interchangeably with Respondent in this Answer and the supporting
28  Memorandum of Points and Authorities.

Answer to Order to Show Cause; Memorandum of Points and Authorities                *Adler v. Curry*
                                                                          C07-02476  JW (PR)

                                            2

1  throat was cut and there were lacerations on her jaw, neck, and shoulder area. (*Id.*) Two broken

2  bottlenecks saturated with blood were also found in the ransacked hotel room. (*Id.*) At 12:15

3  a.m. on November 16, 1970, Adler was arrested for being drunk in public after he was observed

4  staggering in the middle of the street. (*Id.*) Residents recalled that Petitioner Adler had been at

5  the hotel at a party the previous evening when he told fellow party-goers that he was going to Ms.

6  Ross's hotel room. (*Id.*) While the police booked him, they found that he had bloodstains on his

7  clothes and shoes, and his hands had multiple cuts and abrasions typical of superficial cuts

8  produced by broken glass. (*Id.*) He also had small particles of cut glass lodged in and about his

9  shoes. (*Id.*) Footprints preserved in blood in Ms. Ross's hotel room were similar pattern and

10  size as the shoes worn by Adler when apprehended. (*Id.*)

11      3.   Respondent affirmatively alleges that Adler was found guilty for the murder of Ms.

12  Ross and sentenced to an indeterminate life sentence. (Ex. 3 – Parole Consideration Hearing

13  Transcript at 20.)

14      4.   Respondent affirmatively alleges that Adler had a juvenile record of revocations of

15  probation and placements in reformatories throughout his adolescent years. (Ex. 3 at 20.)

16      5.   Respondent alleges that Adler was also convicted as an adult for burglary, first-degree

17  grand larceny, parole violations, intoxication, forgery, drunk driving, grand theft, and auto theft.

18  (*Id.* at 20-21.) Adler served sentences in both state prison and county jail for these offenses.

19  (*Id.*)

20      6.   Respondent alleges that Adler ran away from home at the age of eight and was

21  institutionalized for robbery, grand theft, bad checks, and parole violations as a juvenile. (*Id.*)

22      7.   Respondent alleges that during his parole consideration hearing, Adler informed the

23  Board that he had no parole plans. (*Id.* at 22.) When probed further, Adler had no employment

24  plans, no community resources, and nothing to help him reestablish himself in the community.

25  (*Id.* at 32.) When asked if he had spoken to his counselor about attempts to obtain a job through

26  a local union, Adler admitted that he did not make any attempt to speak to his counselor or tell

27  anyone about his failed attempts. (*Id.* at 35.)

28      8.   Respondent alleges that Adler did not have or present any letters of support. (*Id.* at

Answer to Order to Show Cause; Memorandum of Points and Authorities       *Adler v. Curry*
C07-02476 JW (PR)

3

1  23.)

2      9.   Respondent admits that Adler has had positive reports from work supervisors while

3  incarcerated. (*Id.* at 25.)

4      10.  Respondent alleges that Adler received a number of disciplinary reports, including

5  several serious reports, with the most recent disciplinary report in 1998. (*Id.* at 30.)  This most

6  recent serious report, however, was reduced to a minor report.  Adler has not received any serious

7  disciplinary reports for twenty years or any minor disciplinary reports for seven years. (*Id.* at 31.)

8      11.  Respondent alleges that Adler has not participated in any treatment for alcoholism,

9  during his incarceration, including Alcoholic's Anonymous. (*Id.* at 31.)  When asked by the

10  Board if alcohol was related to his commitment offense, Adler admitted that there was drinking

11  at the time the crime was committed. (*Id.* at 31-32.)  Respondent also alleges that when Adler

12  was initially arrested by the police for his commitment offense, it was because he was drunk in

13  public. (Ex. 2 at 1.)

14     12.  Respondent alleges that in his psychological reports, an evaluator noted that Adler's

15  memory and recall of his commitment offense was confused or impaired by alcohol. (Ex. 3 at

16  33.)  When asked his opinion on whether this was a fair statement, Adler admitted that it was.

17  (*Id.*)  Respondent also alleges that the psychologist noted that it was difficult to assess Adler

18  because he cannot remember the specifics of his commitment offense. (*Id.* at 36.)

19     13.  Respondent affirmatively alleges that the San Diego Police Department recommended

20  to the Board that Adler remain in custody and not be considered for parole. (*Id.* at 22.)

21     14.  Respondent alleges that the Deputy District Attorney opposed parole because Adler

22  would pose an unreasonable risk of danger to society. (*Id.* at 38.)  The District Attorney made

23  this determination based on Adler's failure to comply with recommendations of previous Board

24  panels, namely failing to complete any work in Alcoholic's Anonymous, his lack of parole plans,

25  and the commitment offense itself. (*Id.*)

26     15.  Respondent alleges that the Board denied Adler parole on October 12, 2005 for two

27  years. (*Id.* at 46.)

28     16.  Respondent alleges that the Board denied parole based on the gravity of Adler's

Answer to Order to Show Cause; Memorandum of Points and Authorities                    *Adler v. Curry*
                                                                                    C07-02476  JW (PR)

4

1  offense, given that the offense was carried out in a very cruel manner that demonstrates an

2  exceptionally callous disregard for human suffering. (*Id.* at 40.) Respondent admits that the

3  Board noted that Adler's crime was inexplicable, especially because it happened to a 57-year-old

4  woman and there was no motive. (*Id.* at 41.) The Board also noted that Adler had an escalating

5  pattern of criminal conduct, including a juvenile record. (*Id.*) His adult criminal record was also

6  extensive and escalated to his commitment offense. (*Id.*) The Board noted that Adler failed to

7  profit from society's previous attempts to correct his criminality through juvenile probation,

8  juvenile camp, county jail, prison, parole, and probation. (*Id.*) The Board found that Adler's

9  institutional behavior has been good and that he has been disciplinary-free since 1998. (*Id.*) The

10 Board noted Adler's positive work reports and a number of laudatory reports. (*Id.* at 42.) The

11 Board found, however, that Adler had no parole plans and that he had a drinking problem. (*Id.*)

12 Both of these factors gave the Board concern as to how he would fare if released on parole and

13 whether he would re-offend without better plans. (*Id.*) Ultimately, the Board recommended that

14 Adler receive some form of self-help programming with ties to the outside, remain disciplinary

15 free, and continue to earn positive reports. (*Id.* at 45.) Accordingly, the Board denied parole for

16 two years. (*Id.* at 46.)

17     17.  Respondent admits that Adler questioned the Board about setting a primary term and

18 applying the matrix to his term. (*Id.* at 5-9.) During its decision, the Board explained to Adler

19 that in order to determine a base term for a life prisoner, that inmate must first be found suitable

20 for parole. (*Id.* at 45.) In other words, the Board was careful to explain to Adler that a parole

21 date is only set *after* the prisoner has been found suitable. (*Id.*)

22     18.  Respondent admits that Adler filed a petition in San Diego County Superior Court

23 generally alleging the same causes of action that he alleges here. (Ex. 4, Petition for Writ of

24 Habeas Corpus.) Respondent further admits that the San Diego County Superior Court denied

25 Adler's petition for writ of habeas corpus on August 28, 2006. (Ex. 5, Superior Court Order

26 Denying Habeas Corpus.) The court noted that judicial review of the Board's decision is limited

27 to a determination of whether the factual basis for the decision is supported by some evidence in

28 the record and that the evidence has some indicia of reliability. (*Id.* at 4.) The court found that

Answer to Order to Show Cause; Memorandum of Points and Authorities                          *Adler v. Curry*
                                                                                      C07-02476  JW (PR)

5

1    there was "some evidence" to support the Board's decision finding Adler unsuitable for release

2    on parole when it considered Adler's commitment offense, poor criminal history, institutional

3    behavior, psychological factors, and lacking parole plans. (*Id.* at 5-7.) The court specifically

4    found that the Board considered all the applicable factors for determining suitability, but that the

5    negative factors outweighed the positive, specifically: the circumstances of the underlying

6    commitment offense; Petitioner's escalating pattern of criminality in his juvenile history; his

7    failure to profit from his previous institutions and state attempts to correct his criminality; his

8    problem with alcohol and lack of self-help programming; opposition from the San Diego Office

9    of the District Attorney; and Adler's complete lack of parole plans, including no employment

10   offers or contact with anyone on the outside who could advocate on behalf of Petitioner upon

11   release. (*Id.*) Based on the Board's review of these circumstances, the court found that there was

12   no abuse of discretion or violation of due process rights and denied Adler's petition for habeas

13   corpus. (*Id.*)

14       19.  Respondent admits that Adler filed a petition in the California Court of Appeal

15   generally alleging the same causes of action that he alleges here.[2]  (Ex.6, Petition for Writ of

16   Habeas Corpus.) Respondent further admits that the California Court of Appeal denied Adler's

17   petition for writ of habeas corpus on February 15, 2007. (Ex. 7, California Court of Appeal,

18   Order.) The court found that Adler did not state a prima facie case for relief. (*Id.* at 3.) In

19   response to his claims, the court wrote that Adler's ex post facto law claim was previously

20   considered and rejected by the courts. (*Id.*) The court also found that there was "some evidence"

21   in the record to support the Board's decision. (*Id.*) Notably, the court wrote that the Board did

22   not rely solely on unchanging factors in reaching its decision and cited the Board's concern with

23   Adler's complete lack of parole plans. (*Id.*) Lastly, the court found that Adler did not establish

24   that he was incarcerated for a term grossly disproportionate to his individual culpability. (*Id.*)

25   Accordingly, the court of appeal denied Adler's petition for habeas corpus. (*Id.*)

26   _____

27       2. Respondent did not include any of the exhibits attached to Petitioner's state court petitions
     because they would be repetitious and voluminous. Should the Court request the exhibits,
28   Respondent will of course provide them.

Answer to Order to Show Cause; Memorandum of Points and Authorities                           *Adler v. Curry*
                                                                                       C07-02476  JW (PR)

1    20.   Respondent admits that Adler filed a petition for review in the California Supreme

2    Court generally alleging the same causes of action that he alleges here. (Ex. 8, California

3    Supreme Court, Petition for Review.) Respondent admits that the California Supreme Court

4    summarily denied Adler's petition on February 15, 2007. (Ex. 9, California Supreme Court,

5    Denial.) Respondent further admits that Adler thus exhausted his state court remedies in regard

6    to the claims alleged here stemming from his 2005 parole consideration hearing. However,

7    Respondent denies that Adler exhausted his claims to the extent that they are more broadly

8    interpreted to encompass any systematic issues beyond this particular review of parole denial.

9    21.   Respondent denies that Adler presents a federal claim for review when he alleges that

10   the Board's two-year parole denial is arbitrary and an abuse of discretion. Respondent

11   affirmatively alleges that the Board has the authority to make a two-year denial for Adler – a

12   convicted murderer – under California Penal Code section 3041.5(b)(2)(B).

13   22.   Respondent denies that Adler has a federally protected liberty interest in parole; thus,

14   Adler fails to assert a basis for federal jurisdiction. *Greenholtz v. Inmates of Neb. Penal & Corr.*

15   *Complex*, 442 U.S. 1 (1979) (no constitutional liberty interest in parole unless statutory language

16   creates expectancy); *Sandin v. Connor*, 515 U.S. 472, 484 (1995) (no federal liberty in parole

17   because remaining in prison to serve a contemplated sentence does not create an atypical or

18   significant hardship compared with ordinary prison life); and *In re Dannenberg*, 34 Cal. 4th

19   1061, 1087 (2005) (California's parole scheme is a two-step process that does not impose a

20   mandatory duty to grant life inmates parole before a finding of suitability). *Contra Sass v.*

21   *California Board of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006) (holding that California state

22   inmates have a federally protected liberty interest in a parole date.)

23   23.   Respondent denies that the state courts' denials of habeas corpus relief were contrary

24   to, or involved an unreasonable application of, clearly established United States Supreme Court

25   law, or that the denial were based on an unreasonable interpretation of facts in light of the

26   evidence presented. The only clearly established federal law interpreting state parole procedures

27   is found in *Greenholtz v. Inmates of Nebraska Penal and Correction Complex*, 442 U.S. 1

28   (1979). In *Greenholtz*, the Supreme Court stated that an opportunity to be heard and a statement

1    for reasons denying parole satisfies due process. *Id.* at 16. Respondent affirmatively alleges that

2    Adler had an opportunity to present his case to the Board, and that the Board provided him with a

3    detailed explanation for its parole denial. Therefore, Adler received all process due under

4    *Greenholtz*, and thus fails to make a case for federal relief under the Anti-Terrorism and

5    Effective Death Penalty Act of 1996 (AEDPA).

6        24. Respondent denies that the some-evidence standard is clearly established law in the

7    context of parole. To the extent the Court disagrees, Respondent alleges that the Board

8    considered all relevant and reliable evidence before it, and that its decision is supported by some

9    evidence.

10       25. Respondent affirmatively alleges that the Board properly considered the gravity of

11   Adler's commitment offense as required by California Penal Code section 3041(b).

12       26. Respondent denies that the Board violated due process by continuing to use

13   unchanging factors in denying Adler parole. Respondent affirmatively alleges that the Board

14   actually relied on several factors, including Adler's lack of parole plans, to deny parole.

15   Respondent alleges that Adler has the power to change this factor, which implies that this factor

16   is not "unchanging."

17       27. Respondent affirmatively alleges that the Board's finding of Adler's unsuitability is a

18   finding that Adler is a threat to public safety.

19       28. Respondent denies that Adler presents a federal claim for review when he uses state

20   case law and statutes to argue that the Board violated his due process rights in finding

21   unsuitability. Respondent also denies that Adler presents a federal claim for review when he

22   argues to have a base term fixed in accordance with state law.

23       29. Respondent denies that the Board violated Adler's ex post facto rights by applying the

24   Determinate Sentencing Law (DSL) criteria in conducting Petitioner's parole consideration

25   hearing.

26       30. Respondent denies that the Board's December 2005 decision denying parole without

27   setting a fixed parole date violated Petitioner's right to due process, equal protection, or the

28   Constitution's Ex Post Facto Clause.

1      31.  Respondent admits that Adler's claim is timely under 28 U.S.C. § 2244(d)(1), and that

2  the petition is not barred by non-retroactivity.

3      32.  Respondent denies that Adler would be entitled to release.  Respondent affirmatively

4  alleges that it is improper for any court to restrict what evidence the Board may consider at

5  Adler's future hearings or to order Adler released to parole.

6      33.  Respondent denies that an evidentiary hearing is necessary in this matter.

7      34.  Respondent affirmatively alleges that Adler fails to state or establish any grounds for

8  habeas corpus relief.

9      35.  Except as expressly admitted above, Respondent denies, generally and specifically,

10  each and every allegation in the petition, and specifically denies that Adler's administrative,

11  statutory or constitutional rights have been violated in any way.

12      Accordingly, Respondent respectfully requests that the Court deny the Petition for writ of

13  habeas corpus, and dismiss these proceedings.

14

15                **MEMORANDUM OF POINTS AND AUTHORITIES**

16                          **ARGUMENT**

17                             **I.**

18  **THE PETITION SHOULD BE DENIED BECAUSE ADLER FAILS**
      **TO STATE A CLAIM FOR FEDERAL HABEAS RELIEF UNDER**

19  **AEDPA.**

20    **A.)  AEDPA Permits Relief to State Inmates Only for Violations of Clearly**
           **Established Federal Law.**

21

22      The Antiterrorism and Effective Death Penalty Act[3] (AEDPA) restrains judicial authority to

23  grant relief to a state prisoner.  *See* 28 U.S.C. § 2254(d).  Under AEDPA, a federal court may not

24  grant a writ of habeas corpus on a claim that a state court already adjudicated on the merits unless

25  the state court's adjudication was either:  (1) "contrary to, or involved an unreasonable

26

27

28      3. The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, §107(c),
    110 Stat. 1214, 1226 (1996) applies here because the Petition was filed after April 24, 1996.

1    application of, clearly established Federal law, as determined by the Supreme Court of the United

2    States;" or (2) "based on an unreasonable determination of the facts in light of the evidence

3    presented at the State Court proceeding." 28 U.S.C. § 2254(d)(1-2).

4        As a threshold matter, the Court must decide what, if any, "clearly established Federal law"

5    applies. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). In making this determination, the Court

6    may look only to the holdings of the United States Supreme Court governing at the time of the

7    state court's adjudication. *Carey v. Musladin*, ___ U.S. ___, 127 S. Ct. 649, 653 (2006) (quoting

8    *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495 (2000)). The only United States Supreme

9    Court holding that addresses the process due in the state parole context is found in *Greenholtz v.*

10   *Inmates of Neb. Penal Complex*, 442 U.S. 1, 8, (1979). In *Greenholtz*, the Court held that due

11   process is satisfied where state parole procedures afford: (1) an opportunity to be heard; and (2) a

12   statement of reasons for the denial of parole. *Greenholtz*, 442 U.S. at 16.

13       The Board complied with the due process standards as outlined by the Supreme Court in

14   *Greenholtz*, and Adler does not claim otherwise. Rather, Petitioner relies on the "some-

15   evidence" test as a basis and claims that the Board deprived him of due process by denying

16   parole based upon his commitment offense and unchanging factors. To the extent that these

17   claims raise issues of federal law, Adler seeks due process protections beyond those clearly

18   established by the Supreme Court. As discussed in the Supreme Court's recent holding in *Carey*

19   *v. Musladin*, it is improper to import a federal test to determine the proper outcome in federal

20   habeas relief when that test is not clearly established in the specific factual context. *Id.* at 653,

21   654. At issue in that case was whether spectator conduct was subject to the test for inherent

22   prejudice that governed state-sponsored conduct. 127 S. Ct. at 651-52. A convicted murderer

23   filed a federal habeas petition after a state appeals court held that wearing of buttons by the

24   victim's family members that featured the victim's photograph during the trial was not inherently

25   or actually prejudicial. *Id.* at 651-652. The Ninth Circuit granted habeas relief after concluding

26   that the Supreme Court had clearly established the applicable test for inherent prejudice.

27   However, the Supreme Court disagreed, stating "although the Court articulated the test for

28   inherent prejudice that applies to state conduct [], we have never applied that test to spectators'

Answer to Order to Show Cause; Memorandum of Points and Authorities

*Adler v. Curry*
C07-02476  JW (PR)

1  conduct." *Id.* at 653-54. Thus, *Musladin* stands for the principle that courts may not analogize

2  factually distinguishable cases.

3      The Ninth Circuit has recently affirmed this principle in a number of cases. For instance, in

4  *Foote v. Del Papa*, 486 F.3d 1166, 2007 WL 1469776 (9th Cir. 2007), the Ninth Circuit affirmed

5  the district court's denial of a petition alleging ineffective assistance of appellate counsel based

6  on an alleged conflict of interest because no Supreme Court case has held that such an

7  irreconcilable conflict violates the Sixth Amendment. *Id.* at *2-3. Similarly, in *Nguyen v.*

8  *Garcia*, 477 F.3d 716 (9th Cir. 2007), the Ninth Circuit upheld the state court's decision finding

9  that *Wainwright v. Greenfield*, 474 U.S. 284 (1986) did not apply to a state court competency

10  hearing on the ground that the Supreme Court had not held yet applied *Wainwright* in this

11  manner. *Id.* at 718, 727.

12      Just as courts may not analogize state-sponsored conduct to spectator conduct for purposes

13  of AEDPA review, it is improper to apply the some-evidence test by analogize a parole denial to

14  a prison disciplinary proceeding where credit revocation is at stake. Unlike a prison disciplinary

15  proceeding, which is an adversarial process that is retrospective and involves fact-finding, a

16  parole hearing is prospective and invokes the Board's judgment and prediction of future

17  behavior. AEDPA is not an avenue for broadening federal law beyond that which has been

18  clearly established by the Supreme Court. Without a Supreme Court holding supporting due

19  process guarantees beyond those set forth in *Greenholtz*, federal due process under the

20  Constitution does not require more. *Greenholtz*, 442 U.S. at 15-16.

21      **B.)  The State Courts' Decisions Upholding the Board's Parole Denial Were Not
22      Contrary to or an Unreasonable Application of Clearly Established
       Federal Law.**

23      A state court decision is contrary to established federal law if "the state court applies a rule

24  that contradicts the governing law set forth in [United States Supreme Court] cases," or "the state

25  court confronts a set of facts that are materially indistinguishable from a decision of [the United

26  States Supreme] Court and nevertheless arrives at a result different from [the Court's]

27  precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citations and internal quotation marks

28  omitted). Similarly, the state court decision is an unreasonable application of clearly established

Answer to Order to Show Cause; Memorandum of Points and Authorities                *Adler v. Curry*
                                                                          C07-02476  JW (PR)

11

1   law "if the state court identifies the correct governing legal principle from [the United States

2   Supreme Court's] decision but unreasonably applies that principle to the facts of the prisoner's

3   case." *Id.* at 75. It is not enough that the state court applied the law erroneously or incorrectly;

4   rather, the court must have made an objectively unreasonable application. *Id.* at 75-76. State

5   courts need not even cite to, or even be aware of, the governing Supreme Court case law. *Early*

6   *v. Packer*, 537 U.S. 3, 8, (2002). Thus, AEDPA affords a "highly deferential standard for

7   evaluating state-court rulings, which demands that state-court decisions be given the benefit of

8   the doubt." *Woodford v. Viscotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (quotations

9   omitted).

10       Under *Greenholtz*, federal due process requires an opportunity to be heard, and when parole

11  is denied, that the Board inform the inmate in what respects he falls short of qualifying for

12  parole. *Greenholtz*, 16. Adler's claim fails because he received both of these protections at his

13  2005 hearing.

14       First, Adler had a chance to fully present his case before the Board. Adler, discussed his

15  crime with the Board, as well as his social history, criminal background, and educational and

16  vocational activity while incarcerated. (Ex. 3 at 17-38.) Adler had the opportunity to discuss the

17  commitment offense with the Board and declined. (*Id.* at 17.) He did opt to discuss his social

18  background and criminal history. (*Id.* at 20-22.) Adler also discussed with the Board that he did

19  not have any parole plans as well as answered questions regarding his psychological

20  examinations and in-prison programming, including his positive job performance. (*Id.* at 20-25,

21  35-37.) Adler explained any disciplinary reports and the background surrounding negative

22  documents in his file as well as his reasons for declining self-help programming. (*Id.* at 29-33.)

23  Finally, Adler delivered a closing argument outlining the reasons why he believed he should be

24  found suitable for parole. (*Id.* at 38-39.)

25       Second, Adler received a thorough explanation as to why the Board denied parole. (*Id.* at

26  40-46.) Accordingly, under *Greenholtz*, Adler received all process due. Thus, the state courts'

27  denial of habeas was not contrary to clearly established federal law.

28

1    **C.)  Assuming the Some-Evidence Test Applies to the State Parole Decision,
           Adler Is Still Not Entitled to Habeas Relief Because the State Court Properly**
2    **Found that Some Evidence Supports the Board's Decision.**

3          Assuming that Adler has a federally protected liberty interest in parole and that the

4    "minimally stringent" some-evidence standard applies, the requirements of due process would be

5    satisfied if there is "any evidence in the record that could support the conclusion reached by the

6    board." See *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (applying some-evidence

7    standard to prison disciplinary hearing).  The some-evidence test is a deferential standard,

8    guarding against arbitrary deprivations of due process. *Id.* at 455.  This test requires no more

9    than "a modicum of evidence." *Id.*  The reviewing court may not independently assess the

10   credibility of witnesses or independently weigh the evidence. *Id.*  Due process is satisfied so

11   long as "there is any evidence in the record that could support the conclusion reached by the

12   disciplinary board." *Id.* at 455-56.

13         Upon examining the record, the superior court found that the Board relied on several

14   factors to deny Adler parole.  First, the court found that the Board did not solely rely on

15   Petitioner's commitment offense in denying him parole, but also considered Petitioner's prior

16   criminal history and lack of parole plans.  (Ex. 5 at 5-7.)  The court noted that the Board

17   considered all the applicable factors for determining suitability, beginning with the circumstances

18   of the underlying commitment offense, but also considered Adler's escalating pattern of

19   criminality in his juvenile history, his failure to profit from his previous institutions and state

20   attempts to correct his criminality, his institutional behavior, psychological factors and problem

21   with alcohol, the statements by the San Diego Office of the District Attorney, and Adler's lack of

22   parole plans signified by no employment or person on the outside who could advocate on behalf

23   of Petitioner.  (*Id.*)  The court noted that the Board found that the positive aspects did not

24   outweigh the unsuitability for parole and cited an excerpt from the hearing regarding the Board's

25   recommendations to Petitioner for becoming suitable.  (*Id.* at 7-8.)  Thus, the court found that

26   there was some evidence in the record to support the Board's finding that Adler is unsuitable for

27   parole and there was no abuse of discretion in denying his release.  (*Id.* at 8.)

28         In addition, the court of appeal also found that some evidence supported the Board's

Answer to Order to Show Cause; Memorandum of Points and Authorities          *Adler v. Curry*
                                                                              C07-02476 JW (PR)

13

1  finding that Adler is unsuitable. (Ex. 7.) Specifically, the court wrote, "In reaching this

2  conclusion, the Board relied on the circumstances of the commitment offense, Adler's criminal

3  history, his mixed prison programming, the objections to parole from law enforcement agencies,

4  and of particular concern, his complete lack of parole plans." (*Id.* at 2.) The court went on to

5  find that the Board considered and relied on appropriate factors in reaching its decision and that

6  there was some evidence – beyond the unchanging circumstance of the commitment offense –

7  that the Board relied on in reaching its decision. (*Id.* at 3.) Accordingly, the court of appeal

8  denied Adler's petition. Thus, the state courts properly found that the Board had some evidence

9  to deny Adler parole and did not violate Adler's rights in finding him unsuitable.

10      **D.)    There Is No Clearly Established Federal Law Broadening Adler's Due
                Process Rights.**

11

12      Adler argues that his due process rights were violated by the Board's continued use of

13  unchanging factors in denying him parole. This argument fails for a number of reasons. First,

14  there is no clearly established federal law that prevents the Board from considering the

15  unchanging factors in Petitioner's case. All that due process requires is stated in *Greenholtz.*

16  Adler also presents no Supreme Court law that establishes that due process requires the Board

17  not to consider unchanging factors or guarantees greater due process than provided in

18  *Greenholtz.*

19      To the extent that this Court disagrees, Ninth Circuit precedent that Petitioner relies on

20  the does not compel a different result. For example, in *Biggs v. Terhune,* the Ninth Circuit stated

21  that the Board's continued reliance on an unchanging factor to deny parole "could result in a due

22  process violation." 334 F.3d 910, 917 (9th Cir. 2003). However, the *Biggs* court did not

23  definitively indicate that reliance on an unchanging factor necessarily violates due process, only

24  that it possibly could. The court praised Biggs for being "a model inmate," and found that the

25  record was "replete with the gains Biggs has made," including a master's degree in business

26  administration. *Id.* at 912. Nonetheless, the court denied habeas relief because the Board's

27  decision to deny parole – which relied solely on the commitment offense – was supported by

28  some evidence.

1    Most importantly, the statement in *Biggs* is merely circuit court dicta, and not clearly

2    established federal law sufficient to overturn a state court decision under AEDPA. *Crater v.*

3    *Galaza*, 491 F.3d 1119, *18 (9th Cir. 2007) (citing *Casey v. Moore*, 386 F.3d 896 (9th Cir.

4    2004), which states that circuit decisions are not controlling precedents under the standard

5    required by AEDPA.) Additionally, the Ninth Circuit recently emphasized that *Biggs* does not

6    contain mandatory language, and that "[u]nder AEDPA, it is not our function to speculate about

7    how future parole hearings could proceed." *Sass*, 461 F.3d at 1129. The *Sass* court then rejected

8    the argument that the Board's reliance on "immutable behavioral evidence" to deny parole

9    violated federal due process.[4] Thus, *Biggs* does not preclude the Board from using

10   circumstances of the commitment offense to deny parole, nor may its dicta be used to overturn a

11   valid state court decision.

12       Notably, the Board did not solely rely on unchanging factors, such as the commitment

13   offense or Adler's criminal history, in finding Adler unsuitable for parole. As noted by the court

14   of appeal, in addition to these two factors, the Board also relied on Adler's "mixed prison

15   programming, the objections to parole from law enforcement agencies, and of particular concern,

16   his complete lack of parole plans." (Ex. 7 at 2.) The court specifically noted that it is within

17   Adler's control to change his lack of parole plans, the factor with which the Board appeared most

18   concerned. (*Id.* at 3.) The Board expressed concern for how Adler would fare if released and

19   determined that Alder was still a threat to public safety and not yet suitable for parole. (Ex. 3 at

20   44-45.) The Board thus relied on other factors in denying Adler parole.

21       With respect to his third ground for relief, Adler presents no Supreme Court law to

22   support broadening his due process rights and requiring the Board to consider whether he is a

23   current threat to public safety. Per *Musladin*, there is no clearly established federal law requiring

24

25       4. This Court has also recognized that the Board may properly rely on static factors to deny
26   parole. In a recent decision, this Court noted that "[p]ast criminal conduct is not some arbitrary
     factor like eye color that has nothing to do with present dangerousness. Recidivism concerns are
27   genuine. California's parole scheme does not offend due process by allowing the [Board] to predict
     that an inmate presents a present danger based on a crime he committed many years ago." *Hill v.*
28   *Kane*, 2006 WL 3020923 at *3 (Oct. 26, 2006) (N.D. Cal.) (citations omitted).

1  a parole board to provide any level of evidence, let alone evidence of whether a prisoner poses a

2  current threat to public safety.  In no case has the Supreme Court advanced that a parole decision

3  is reviewed to determine whether the inmate poses no current risk to public safety.  Accordingly,

4  federal habeas relief may not be granted on this ground.

5                                              **II.**

6  **THE PETITION SHOULD BE DENIED BECAUSE ADLER**
   **FAILS TO STATE A CLAIM FOR FEDERAL HABEAS**
7  **RELIEF WHEN ARGUING THAT THE BOARD**
   **VIOLATED HIS RIGHTS BASED ON STATE LAW.**
8

9      A state prisoner is entitled to habeas corpus relief under 28 U.S.C. § 2254 only if he is

10  held in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C.

11  § 2254(a); *see also* 28 U.S.C. § 2241(c)(3).  State law questions are not cognizable in federal

12  habeas corpus proceedings.  *See, e.g., Rose v. Hodges*, 423 U.S. 19, 21 (1975); *Gutierrez v.*

13  *Griggs*, 695 F.2d 1195, 1197-98 (9th Cir. 1983).  Absent a federal constitutional violation, a

14  federal court may not challenge a state court's interpretation or application of state law,

15  *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985), or grant relief "on the basis of a

16  perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  As a result, if a petition

17  raises only a violation of state rather than federal law, no federal claim is presented and the

18  petition is subject to dismissal for failure to state a cognizable claim.  28 U.S.C. § 2254(a); *Rose,*

19  423 U.S. at 21; *Gutierrez*, 695 F.2d at 1197-98.

20      Here, Petitioner alleges that regardless of the Board's suitability finding, the Board is

21  required to establish a fixed parole release date for Petitioner that is constitutionally

22  proportionate to his individual culpability.  However, in support of these allegations, Adler cites

23  two California Supreme Court decisions and does not reference any federal law.  Accordingly,

24  given that Petitioner's allegations reflect that he is raising only alleged violations of state rather

25  than federal law, no federal claim is presented and his petition must be denied. 28 U.S.C. §

26  2254(a); *Rose,* 423 U.S. at 21; *Gutierrez*, 695 F.2d at 1197-98.  To the extent that this Court

27  disagrees, even if Petitioner's claim is construed as alleging that his sentence of life in prison for

28  first degree murder is cruel and unusual punishment under the Eighth Amendment, this claim

Answer to Order to Show Cause; Memorandum of Points and Authorities                          *Adler v. Curry*
                                                                                          C07-02476  JW (PR)

1  would likely fail under *Rummel v. Estelle*.  445 U.S. 263, 285 (1980) (holding that mandatory life

2  sentences did not constitute cruel and unusual punishment under the Eighth and Fourteenth

3  Amendments.)

4         Furthermore, it is now well established that California's statutory and regulatory parole

5  provisions provide that a parole release date will not be set until after the Board finds an inmate

6  suitable for parole.  While California Penal Code section 3041(a) provides that the Board "shall

7  normally set a parole release date" at a prisoner's first parole hearing, subsection (b) states that

8  the Board shall not set a parole release date if "it determines that the gravity of the current

9  convicted offense or offenses, or the timing and gravity of current or past convicted offense or

10  offenses, is such that consideration of the public safety requires a more lengthy period of

11  incarceration for this individual."  Cal. Penal Code § 3041.  The California Supreme Court in

12  *Dannenberg* concluded that the language of Penal Code section 3041 is not mandatory; there is

13  no right to parole in California; the Board has extremely broad discretion and is not required to

14  fix a parole date; and the statutory scheme of section 3041 indicates that section 3041(b)

15  extinguishes any expectation an inmate may have in parole found in section 3041(a).  *In re*

16  *Dannenberg*, 34 Cal. 4th 1061, 1084, 1087-88, 1097-98 (2005).

17         In analyzing the meaning of this statute, the California Supreme Court noted that, under

18  California law, the word "shall" in a statute generally denotes a mandatory duty.  *Dannenberg*, 34

19  Cal. 4th at 1087 (citing *Common Cause v. Bd. of Supervisors*, 49 Cal. 3d 432, 443 (1989)).  But

20  this presumption is not conclusive, and the Court found that the "shall" in California Penal Code

21  section 3041(a) was not used in the "absolute sense."  *Id.* at 1087.  Instead, the word "shall" is

22  qualified in subdivision (a) by the word "normally," and then further limited in subdivision (b) by

23  the word "unless," which directs the Board not to release an inmate on parole if it determines that

24  "'consideration of the public safety' requires lengthier incarceration for the particular inmate."

25  *Id.*  Therefore, the Court stated that "the most natural and reasonable" reading of the statute is

26  that subdivision (a) applies only if subdivision (b) does not apply, i.e., that the Board will not set

27  a parole date under subdivision (a) if it determines that, under subdivision (b), public safety

28

Answer to Order to Show Cause; Memorandum of Points and Authorities    *Adler v. Curry*
C07-02476  JW (PR)

1    requires a lengthier incarceration. *Id.*[5]

2         Based on its analysis of Penal Code section 3041, the California Supreme Court

3    determined that "the statutory language belies the notion of a *mandatory duty*" to parole any

4    prisoner. *Dannenberg,* 34 Cal. 4th at 1087 (emphasis original). The California Supreme Court

5    also pointed out that while subdivision (a) may initially appear to create a liberty interest in early

6    parole release to ensure a proportionate term to that of other inmates, "the overriding statutory

7    concern for public safety in the individual case trumps any expectancy the indeterminate life

8    inmate may have in a term of comparative equality with those served by other similar offenders."

9    *Id.* at 1084. Thus, the statutory language does not mandate parole release or notably restrict the

10   Board's discretion in determining parole suitability. *Id.* at 1084-88. Simply put, life inmates in

11   California do not have a legitimate expectation in early release on parole. *Id.*

12        In sum, California's statutory parole scheme distinguishes the suitability determination

13   from setting a parole release date, and makes it clear that a parole release date is not determined

14   until *after* an inmate is found suitable for parole. Cal. Penal Code § 3041; *Dannenberg*, 34 Cal.

15   4th at 1071. And contrary to Petitioner's allegations, in determining an inmate's suitability for

16   parole, the Board is not required to compare the inmate's crime to other similar offenses, "to its

17   base term matrices, or to the minimum statutory prison term for that offense." *Dannenberg*, 34

18   Cal. 4th at 1098 and n.18. Accordingly, Petitioner cannot show that the state courts' decisions

19   rejecting his due process claim were either contrary to, or involved an unreasonable application

20   of, clearly established federal law, or based on an unreasonable determination of the facts.

21   28 U.S.C. § 2254(d); *Wilson*, 355 F.3d at 1154. As a result, his petition should be denied as to

22   this claim.

23   ///

24

25       5. Although a federal court is generally not bound by state-court decisions, federal courts are
26   bound by the decision of the state's highest court interpreting its own law, as the state's highest court
     is the final arbiter of the meaning of the state statutes. *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975);
27   *Nelson v. City of Irvine*, 143 F.3d 1196, 1206-07 (9th Cir. 1998). Thus, the California Supreme
     Court's interpretation of California's parole statute in *Dannenberg* is binding authority in this case.
28   *See Nelson*, 143 F.3d at 1206-07.

**III.**

**THE BOARD DID NOT COMMIT AN EX POST FACTO VIOLATION BY APPLYING DETERMINATE SENTENCING LAW GUIDELINES IN CONDUCTING PETITIONER'S PAROLE CONSIDERATION HEARING.**

At Petitioner's parole consideration hearing, as with the hearings for any other inmate, the Board evaluated Petitioner's suitability for parole under the applicable Determinate Sentencing Law guidelines (DSL). Petitioner alleges, however, that this approach constitutes an Ex Post Facto Clause violation because at the time he committed his crimes, the Indeterminate Sentencing Law guidelines (ISL) applied, and thus the Board's retroactive application of the DSL guidelines was unlawful. Petitioner's allegations are without merit because there is no clearly established law preventing the Board from applying the DSL criteria. Therefore, Adler has failed to state a claim under AEDPA entitling him to federal habeas relief.

Furthermore, it is well established that "the application of the DSL parole-suitability guidelines to prisoners sentenced under the ISL does not disadvantage them, and therefore does not violate the federal constitutional prohibition against ex post facto laws." *Connor v. Estelle*, 981 F.2d 1032, 1033-34 (9th Cir. 1992). Rather, the DSL parole-suitability guidelines require consideration of the same criteria in determining suitability for parole as did the ISL. *Id.* Accordingly, petitioner's ex post facto claim is without merit.

The California courts have also similarly construed California's parole provisions, concluding that the retroactive application of DSL guidelines does not present an ex post facto violation. *In re Duarte*, 143 Cal. App. 3d 943, 951 (1983) (holding that the application of the DSL guidelines to a prisoner sentenced under the ISL did not violate the ex post facto clause); *In re Seabock*, 140 Cal. App. 3d 29, 40 (1983). As the courts have noted, under the ISL there was no liberty interest in a finding of parole suitability because the Adult Authority, the Board's predecessor, was vested with complete discretion to grant or deny parole. *Seabock*, 140 Cal. App. 3d at 34. "The criteria utilized under the ISL as developed through practice and as modified by case law were not altered by the DSL." *Id.* at 41. That is, under both the ISL and the DSL, an inmate convicted and sentenced to an indeterminate life term had only the possibility

Answer to Order to Show Cause; Memorandum of Points and Authorities

*Adler v. Curry*
C07-02476 JW (PR)

1   of being released from prison earlier than the expiration of his life term.

2        In sum, while there is no legal authority to support Petitioner's claim, both the federal and

3   California courts have determined that the retroactive application of DSL guidelines does not

4   constitute an ex post facto violation. Accordingly, the Board's parole denial, which requires that

5   Petitioner continue to serve his life-maximum sentence, was not in violation of the Ex Post Facto

6   Clause.

7

8                           **CONCLUSION**

9        Adler received all the process due at his parole consideration hearing under the clearly

10   established federal law articulated in *Greenholtz*. Therefore, he cannot state a claim for federal

11   habeas relief. He also includes claims in his petition based on state law and thus not cognizable

12   under federal law. Lastly, the Ninth Circuit has already established that the retroactive

13   application of DSL guidelines does not constitute an ex post facto violation. Accordingly,

14   Respondent respectfully requests that the petition be denied.

15

16      Dated: September 7, 2007

17                  Respectfully submitted,

18                  EDMUND G. BROWN JR.
                    Attorney General of the State of California

19                  DANE R. GILLETTE
                    Chief Assistant Attorney General

20

21                  JULIE L. GARLAND
                    Senior Assistant Attorney General

22                  ANYA M. BINSACCA
                    Supervising Deputy Attorney General

23

24                  *Stacey D. Schesse*

25                  STACEY D. SCHESSER
                    Deputy Attorney General

26                  Attorneys for Respondent

27

28   20102131.wpd

Answer to Order to Show Cause; Memorandum of Points and Authorities        *Adler v. Curry*
                                                C07-02476 JW (PR)

# DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Adler v. Curry**

No.:   **C07-02476  JW (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>September 7, 2007</u>, I served the attached

### ANSWER TO ORDER TO SHOW CAUSE;
### MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Vernon Adler**
**B-35449**
**Correctional Training Facility**
**P.O. Box 689**
**Soledad, CA 93960-0689**
*in pro per*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on September 7, 2007, at San Francisco, California.

M. Luna
Declarant

Signature

20103706.wpd