# EXHIBIT 3

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS


In the matter of the Life )
Term Parole Consideration )    CDC Number B-35449
Hearing of:                )
                           )
VERNON ADLER               )    **INMATE**
                           )
                           )    **COPY**
_____)

CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

OCTOBER 12, 2005

2:15 P.M.


PANEL PRESENT:

Mr. Tom Sawyer, Presiding Commissioner
Mr. John Weaver, Deputy Commissioner


OTHERS PRESENT:

Mr. Vernon Adler, Inmate
Mr. Richard Sachs, Deputy District Attorney
Correctional Officers Unidentified


CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____  No      See Review of Hearing
_____  Yes     Transcript Memorandum


**Stacy Wegner, Peters Shorthand Reporting**

ii

## INDEX

|  | PAGE |
|---|---|
| Proceedings | 1 |
| Case Factors | 17 |
| Pre-Commitment Factors | 20 |
| Post-Commitment Factors | 23 |
| Parole Plans | 24 |
| Closing Statements | 38 |
| Recess | 39 |
| Decision | 40 |
| Adjournment | 46 |
| Transcriber Certification | 47 |

--oOo--

1

## P R O C E E D I N G S

1    **DEPUTY COMMISSIONER WEAVER:** Okay. You're

2    on record.

3

4    **PRESIDING COMMISSIONER SAWYER:** Okay. This

5    is a Subsequent Parole Consideration Hearing for

6    Vernon Adler. Did I pronounce that right?

7    **INMATE ADLER:** Yes.

8    **PRESIDING COMMISSIONER SAWYER:** A-D-L-E-R,

9    CDC Number B-35449. Today's date is 10/12/05.

10   The time is 2:15 in the afternoon. We're

11   located at the Correctional Training Facility in

12   Soledad. Date received is 7/7/1971, and the

13   county of commitment is San Diego. The offense

14   is murder in the first degree, Case Number CR

15   22437, count one of 187 of the Penal Code. Term

16   is seven to life. Minimum eligible parole is

17   11/15/1977. And this hearing is being tape

18   recorded for purposes of voice identification.

19   Each of us is required to state our first and

20   last name, spelling our last name, and we'd like

21   to get your CDC number when it comes to you.

22   I'll start. Tom Sawyer, S-A-W-Y-E-R,

23   Commissioner.

24   **DEPUTY COMMISSIONER WEAVER:** John Weaver,

25   W-E-A-V-E-R, Deputy Commissioner.

26   **DEPUTY DISTRICT ATTORNEY SACHS:** Richard

27   Sachs, S-A-C-H-S, Deputy District Attorney.

2

1   PRESIDING COMMISSIONER SAWYER:  Okay.

2   INMATE ADLER:  Vernon Adler, A-D-L-E-R, B-

3   35449.

4   PRESIDING COMMISSIONER SAWYER:  Thank you.

5   Mr. Adler, the record reflects that you've

6   signed a form BPT 1073 on 2/22/04, and this is

7   the reasonable accommodation notice and request

8   in accordance with the provisions of the

9   American's with Disabilities Act.  It indicates

10  on here that you do not have a disability;

11  although, I can see that you are wearing

12  glasses.  And do you have any other disabilities

13  that we do not know about?

14  INMATE ADLER:  No.

15  PRESIDING COMMISSIONER SAWYER:  Okay.

16  Would you make sure -- would you take a look at

17  this form.  I'm passing it to Mr. Adler, 1073,

18  look at that.  That's your signature.  Do you

19  recall signing that form?

20  INMATE ADLER:  Yes, I do.

21  PRESIDING COMMISSIONER SAWYER:  Okay.

22  Anything you want to a add to the form as far as

23  do you need any accommodations whatsoever for

24  this hearing?

25  INMATE ADLER:  No.

26  PRESIDING COMMISSIONER SAWYER:  Okay.

27  Thank you.  And the information is still current

3

1   and correct on that form?

2       INMATE ADLER:  Yes.

3       PRESIDING COMMISSIONER SAWYER:  Okay.  This

4   hearing is being conducted pursuant to Penal

5   Code Sections 3041, 3042, and the rules and

6   regulations of the Board of Prison Terms

7   governing parole consideration hearings for life

8   inmates.  The purpose of today's hearing is to

9   consider your suitability for parole.  In doing

10  so, we'll consider the number and nature of the

11  crimes you're committed for, your prior criminal

12  and social history, and your behavior and

13  programming since your commitment.  We've had an

14  opportunity to review your Central File and your

15  prior hearing transcript.  You'll be given an

16  opportunity to correct or clarify the record.

17  We will consider your progress since your

18  commitment and since your last hearing.  Your

19  updated counselor's report and psychological

20  report will also be considered.  Any change in

21  parole plans should be brought to our attention.

22  We'll reach a decision today and inform you

23  whether or not we find you suitable for parole

24  and the reasons for our decision.  If you're

25  found suitable for parole, the length of your

26  confinement will be explained to you.  This

27  hearing is conducted in two phases.  I'll

4

1  discuss with you the crime that you're committed
2  for, your prior criminal and social history,
3  your parole plans and any letters of support or
4  opposition that may be on file.  Deputy
5  Commissioner Weaver will discuss with you your
6  progress since your commitment, your counselor's
7  report, and your psychological evaluation.  Once
8  this is concluded, the District Attorney can ask
9  you questions.  Questions from the District
10 Attorney shall be asked through us to you, and
11 you answer back to us.  You understand?
12     **INMATE ADLER:**  Yes.
13     **PRESIDING COMMISSIONER SAWYER:**  Okay.
14 Before we recess for deliberations, the District
15 Attorney and you will be given an opportunity to
16 make a final statement regarding your parole
17 suitability.  Your statement should be directed
18 as to why you feel you are suitable for parole.
19 We will then recess, clear the room, and
20 deliberate.  Once we've completed our
21 deliberations, we will resume the hearing and
22 announce our decision.  California Code of
23 Regulations states that regardless of time
24 served, a life inmate shall be found unsuitable
25 for and denied parole if, in the judgment of the
26 Panel, the inmate would pose an unreasonable
27 risk of danger to society if released from

5

1  prison.  You have certain rights.  Those rights

2  include the right to a timely notice of this

3  hearing, the right to review your Central File,

4  and the right to present relevant documents.  Do

5  you feel that your rights have been met?

6      INMATE ADLER:  Yes, I have.

7      PRESIDING COMMISSIONER SAWYER:  Okay.  And

8  you also have a right to be heard by an

9  impartial Panel.  Is there any objection to this

10  Panel?

11      INMATE ADLER:  I have one question before -

12  -

13      PRESIDING COMMISSIONER SAWYER:  Okay.

14      INMATE ADLER:  -- I answer that.

15      PRESIDING COMMISSIONER SAWYER:  Sure.

16      INMATE ADLER:  Well, will this Panel be

17  complying with the rules and regulations?

18      PRESIDING COMMISSIONER SAWYER:  Yes, sir.

19      INMATE ADLER:  Okay.  Then I'm requesting

20  that this Panel apply section 2292(a) of the

21  rules and regulations, which states, again, all

22  life prisoners committed to state prison for

23  crimes committed prior to July 1st, 1977, shall

24  be heard in accordance with the rules in effect

25  prior to 7/1/77.  Will that -- will the Panel be

26  complying with the section at this hearing?

27      PRESIDING COMMISSIONER SAWYER:  No.  We'll

6

1   go by today's rules.  We follow today's rules,

2   not prior to 1977.

3          INMATE ADLER:  Well, the second section --

4          PRESIDING COMMISSIONER SAWYER:  Yes,

5   Commissioner.

6          DEPUTY COMMISSIONER WEAVER:  Let me speak

7   to that.  In the event that you are found

8   suitable by this Panel today or a Panel in the

9   future, you are entitled to do another hearing

10  that would apply the rules that were in effect

11  at the time that the crime occurred for which

12  you were committed to prison, Mr. Adler.

13         INMATE ADLER:  That is, I believe, with the

14  Stanworth hearing.

15         DEPUTY COMMISSIONER WEAVER:  Absolutely,

16  correct.

17         INMATE ADLER:  Okay.  But what that does,

18  you will be found suitable under --

19         DEPUTY COMMISSIONER WEAVER:  The criteria

20  for suitability has not been found that much

21  different.  The criterion with regard to the

22  Stanworth hearing is that in Stanworth -- under

23  the Stanworth procedures, you are given up to

24  two months of credit for all of your post-

25  conviction time.  Under the current rules, you

26  can get four.

27         INMATE ADLER:  Is the Panel aware that I've

7

1   been incarcerated for 35 years?

2       **DEPUTY COMMISSIONER WEAVER:**  Well, we are

3   aware that you came in on July the 7th of 1971.

4       **INMATE ADLER:**  Including county jail time,

5   it's -- next month the 15th, it will be 35 years

6   since I've been arrested, and it's been

7   continuous incarceration.

8       **DEPUTY COMMISSIONER WEAVER:**  You were given

9   credits of 7 months and 22 days, according to

10  what's on your legal status sheet, but it's your

11  life term that we're considering.  Your

12  reception date was July the 7th, 1971.

13      **INMATE ADLER:**  There's a second -- there's

14  a second sentence in that 2292.  All life

15  prisoners heard after the affective date of

16  these regulations, which was July 31st, 1978,

17  who have been committed to state prison for

18  crimes committed after 7/1/77 shall be heard in

19  accordance with this article.  This article is

20  Article Five, and it carries a matrix of 8 to

21  22.  By your own rules and regulations, the

22  hearing being conducted today -- I'm saying that

23  it's illegal.

24      **DEPUTY COMMISSIONER WEAVER:**  Well, you're

25  entitled to that opinion, Mr. Adler, but the

26  rules that we're dealing with today are based on

27  a premise of whether or not you are a threat to

8

1   society by virtue of your crime and your past

2   record. And the rules of suitability are not

3   any different in substance than they were when

4   the crime occurred. The rules that we go by

5   today with regard to suitability.

6        **INMATE ADLER:** This is my, I believe, it's

7   my 16th hearing, and I've never had a hearing

8   under the law that I was sentenced under.

9        **DEPUTY COMMISSIONER WEAVER:** Okay. That

10  may be true, but the law that applied at the

11  time that the crime occurred, which you already

12  brought utmost appropriately, had to do with

13  what the Stanworth case was about, and that's

14  what Stanworth's problem was, that it was felt

15  by Stanworth that he was being judged by

16  suitability and other factors that weren't in

17  effect at the time that the crime occurred. And

18  that's the reason that there are such things as

19  Stanworth hearings.

20       **INMATE ADLER:** I'm familiar with the

21  Stanworth hearing, but their current policy is

22  you -- before the Stanworth hearing, you have a

23  hearing under the 8 to 22 matrix and have a term

24  set, and then you go under 8 to 13 and the

25  prisoner receives a benefit of the shorter term,

26  but if you exceed both of them, what benefits

27  would I be receiving?

1    **DEPUTY COMMISSIONER WEAVER:**  Okay.  Let me

2    go back then in response to your question, or

3    the issue that you're raising.  The matrix,

4    whether it be the old matrix or the new matrix,

5    doesn't make a bit of difference until you're

6    found suitable.

7        **INMATE ADLER:**  Does that include the matrix

8    of 25 to life?

9        **DEPUTY COMMISSIONER WEAVER:**  It includes

10   that as well.

11       **INMATE ADLER:**  That's (indiscernible).

12       **DEPUTY COMMISSIONER WEAVER:**  Well, let me

13   just tell you my -- from my knowledge of the

14   Board and dealing with these issues, the matrix

15   does not have any application until you are

16   found suitable.  At that particular time that

17   matrix will be applied and it may be found that

18   you are 10 years overdue according to the

19   matrix.

20       **INMATE ADLER:**  I don't believe I'll

21   receiving a fair and impartial hearing today.

22       **DEPUTY COMMISSIONER WEAVER:**  All right,

23   well, if you --

24       **INMATE ADLER:**  According to that, you're

25   not following your own rules and regulations.

26   That's -- I have nothing further to say.

27       **DEPUTY COMMISSIONER WEAVER:**  Okay.  You

1  want us to proceed in abstention or do you want

2  --

3      INMATE ADLER:  You can if you want to.

4      DEPUTY COMMISSIONER WEAVER:  Well --

5      INMATE ADLER:  Well, I'm going to step out

6  while you make your decision.

7      DEPUTY COMMISSIONER WEAVER:  You have

8  certain fundamental rights, and if you're not

9  present to protect those and be your own

10  advocate and be your own attorney, which is what

11  you have chosen to do then Mr. Sawyer, then

12  Commissioner Sawyer and I would consult one

13  another and decide as to how to proceed, but

14  without talking to him right now, it would be my

15  position if you don't wish to be here and be

16  your own advocate, that we would appoint counsel

17  for you.

18      INMATE ADLER:  Which means you want me to

19  postponement of the hearing?

20      DEPUTY COMMISSIONER WEAVER:  Pardon me?

21      INMATE ADLER:  It would mean a postponement

22  of the hearing, a reschedule?

23      PRESIDING COMMISSIONER SAWYER:  Yes.

24      DEPUTY COMMISSIONER WEAVER:  It would mean

25  postponement of the hearing until counsel was

26  appointed and put you on the next --

27      INMATE ADLER:  Go ahead and get it over

1  with.  I'm already 14 months late at this

2  hearing now.

3       DEPUTY COMMISSIONER WEAVER:  Well, I notice

4  that.  I noticed that in my research that the

5  hearing has been put off twice already.

6       INMATE ADLER:  Right.

7       DEPUTY COMMISSIONER WEAVER:  The last time

8  you went to the Board was August 2002.

9       INMATE ADLER:  Right.

10      DEPUTY COMMISSIONER WEAVER:  Okay.

11      INMATE ADLER:  We'll continue with the

12  hearing.

13      PRESIDING COMMISSIONER SAWYER:  Okay.

14      INMATE ADLER:  Get on a matter of record.

15      PRESIDING COMMISSIONER SAWYER:  Yes.  This

16  is all on the record.

17      INMATE ADLER:  All right.

18      PRESIDING COMMISSIONER SAWYER:  I also want

19  to reflect on the record that we just lost the

20  District Attorney, and I assume he'll be coming

21  back.  Here he is.

22      DEPUTY DISTRICT ATTORNEY SACHS:  Okay.  I

23  think we're back again.

24      PRESIDING COMMISSIONER SAWYER:  You with

25  us?

26      DEPUTY DISTRICT ATTORNEY SACHS:  Yes.  It

27  just froze for a moment, but I can hear you now.

1   PRESIDING COMMISSIONER SAWYER:  Okay.  Mr.

2   Adler has decided to go on with the hearing.

3       DEPUTY DISTRICT ATTORNEY SACHS:  Yes.

4       PRESIDING COMMISSIONER SAWYER:  Okay.  And

5   the answer to my question, you also the right to

6   be heard by an impartial Panel, and do you have

7   an objection to this Panel?

8       INMATE ADLER:  Other than I believe we're

9   not following the rules and regulations, we'll

10  continue with the hearing.

11      PRESIDING COMMISSIONER SAWYER:  Okay.

12  Thank you.  You will receive a copy of our

13  written tentative decision today.  That decision

14  is subject to review by the Decision Review Unit

15  and by the entire Board meeting as a body.  It

16  will become affective within 120 days.  It's

17  also subject to review by the Governor.  A copy

18  of the tentative decision and a copy of the

19  transcript will be sent to you.  As May 1st,

20  2004, there were major changes limiting your

21  former right to appeal Board decisions or

22  actions directly to the Board.  The old Board

23  regulations were repealed.  Current policy is

24  entitled Administrative Appeals correspondence

25  and grievances concerning the Board of Prison

26  Term's decisions and is available at the prison

27  law library.  You're not required to admit your

1   offense or discuss your offense if you do not

2   wish to do so.  However, this Panel does accept

3   as true the findings of the Court, and you are

4   invited to discuss the facts and circumstances

5   of the offense if you decide.  The Board will

6   review and consider any prior statements you've

7   made regarding the offense in determining your

8   suitability for parole.  Is there any

9   confidential material that will be used in this

10  hearing today?

11          DEPUTY COMMISSIONER WEAVER:  No, sir.

12          PRESIDING COMMISSIONER SAWYER:  Okay.  I

13  have a hearing checklist as -- I'm going to pass

14  it to you.  You have a hearing checklist there.

15          INMATE ADLER:  I have it.

16          PRESIDING COMMISSIONER SAWYER:  You have

17  it?

18          INMATE ADLER:  Yes.

19          PRESIDING COMMISSIONER SAWYER:  Okay.  Mr.

20  Sachs, do you have all the items on your hearing

21  checklist?

22          DEPUTY DISTRICT ATTORNEY SACHS:  I have all

23  these documents, Commissioner.

24          PRESIDING COMMISSIONER SAWYER:  Thank you.

25  Mr. Adler, do you have any additional documents

26  that you would like to submit today?

27          INMATE ADLER:  A question for the Panel,

14

1  which was brought up before, and that notice --

2  that notice that was sent out in 1977 stating I

3  was going to have my term fixed, and I was never

4  given that hearing, and I was wondering why.

5  The copy of the original is in my file.  A copy

6  was sent to the District Attorney of San Diego -

7  -

8      PRESIDING COMMISSIONER SAWYER:  Uh-huh.

9      INMATE ADLER:  -- a sentencing judge,

10  defense attorney, and the agency that

11  investigated the case.

12      PRESIDING COMMISSIONER SAWYER:  All right.

13  It's dated August 4th, 1977.  It says a notice

14  of determination of term, at the time, pursuant

15  to Penal Code Section 1170.2.

16      INMATE ADLER:  Which is the retroactive

17  provisions of the DSL to ISL prisoners.

18      PRESIDING COMMISSIONER SAWYER:  Okay.  And

19  do you -- you submitted this?

20      INMATE ADLER:  I've asked several Board

21  members at previous hearings and they don't want

22  to address it, and I was wondering why.

23      PRESIDING COMMISSIONER SAWYER:  Would you

24  like to address it?

25      DEPUTY COMMISSIONER WEAVER:  I'm not

26  familiar with this document as it applies to Mr.

27  Adler.  And I would hesitate to make any

1  comments about it, in that this was dated August

2  4th, 1977, and it was right in that particular

3  timeframe when the law changed as Mr. Adler is

4  pointing out to us.

5      INMATE ADLER:  Yes.

6      DEPUTY COMMISSIONER WEAVER:  And the -- all

7  the indeterminate cases at that particular time,

8  with the exception of murder first, were

9  converted to determinant cases.  Ironically, at

10  that time, murder second was also made a

11  determinant term.  It wasn't until the Bridges

12  Initiative that murder second was brought back

13  under the umbrella of the indeterminate sentence

14  law.  I think that, you know, that this

15  situation of yours got caught up in that

16  changeover from the ISL to -- the DSL to the

17  ISL, but it is not applicable because of your

18  murder first conviction, Mr. Adler.

19      INMATE ADLER:  Are you familiar with the

20  compendium of life inmates demographics?

21      DEPUTY COMMISSIONER WEAVER:  Okay.  Mr.

22  Adler --

23      INMATE ADLER:  (indiscernible).

24      DEPUTY COMMISSIONER WEAVER:  Let me -- let

25  me -- let me -- let me stop you right here

26  because the reason the Panel is convening today

27  is to make a determination as to your

16

1    suitability for parole and also to make a

2    determination if in fact you continue to be a

3    danger to public safety if you were to be

4    released as of today.  Now, you're asking this

5    Panel to look at a lot of historical data,

6    documents.  And one thing and another.  That is

7    not the reason why we are here today.  If you

8    have a problem with your legal status, then you

9    should ask for a legal status review.  If you

10   have a problem with the way you were sentenced,

11   then you should seek some relief in some other

12   theatre and not before this Panel today.

13        **INMATE ADLER:**  Give it back to me.  I'll

14   keep it for reference.

15        **DEPUTY COMMISSIONER WEAVER:**  You're not the

16   first person that has been caught up in this

17   dilemma, and hopefully you're the last.

18        **INMATE ADLER:**  I won't be the last, but no

19   one wants to address it.

20        **DEPUTY COMMISSIONER WEAVER:**  Well, I'm not

21   sure I can address it to your satisfaction.  You

22   know, based upon what you've shown me, I'm not

23   prepared to do a full review of your case.  I

24   don't have all the documents, and if that's what

25   you're seeking, then you need to proceed in some

26   other area then bringing it before the Panel

27   that's here today.  Our function is simply to

1  determine your suitability for parole as of

2  today.

3      **INMATE ADLER:**  All right.

4      **PRESIDING COMMISSIONER SAWYER:**  Okay.  Are

5  there any -- do you have any preliminary

6  objections that you want to put on the record?

7      **INMATE ADLER:**  No.  Just go with the

8  hearing and get it over with.

9      **PRESIDING COMMISSIONER SAWYER:**  Okay.  Will

10 you be speaking with us in regards to the crime?

11     **INMATE ADLER:**  No.

12     **PRESIDING COMMISSIONER SAWYER:**  Would you

13 raise your right hand, sir?  Do you solemnly

14 swear or affirm that the testimony you are about

15 to give at this hearing will be the truth, the

16 whole truth, and nothing but the truth?

17     **INMATE ADLER:**  I do.

18     **PRESIDING COMMISSIONER SAWYER:**  Thank you.

19 Mr. Adler, I'm going to be reading from the

20 August 2004 calendar in the parole -- in the

21 Board package on Page One, summary of the crime.

22              On the morning of 11/16/1970

23              Bernice Young arrived at the

24              Minneapolis Hotel on 5th Street in

25              San Diego, California, to visit a

26              friend, Alicia Katherine Ross, R-O-

27              S-S.  Ms. Ross failed to answer the

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

door; however, Ms. Young heard Ms. Ross's dog barking. When Ms. Young then contacted the hotel manager to express her concern due to Ms. Ross's failure to open the door, the hotel manager opened the door to Ms. Ross's room and found her lying in a bed dead in a pool of dried blood partially covered with a blanket. The victim's throat was cut. Also, there was lacerations on the jaw, neck, and shoulder area. Two broken jagged lined bottlenecks saturated with blood were found in the room. The room had also been ransacked. Residents of the hotel recall that Adler had been at a party at the said hotel the previous evening, and that when he left the party shortly after 11:00 P.M, he told persons present that he was going to the victim's room. It appeared that Adler that met the victim the morning of the previous day when he'd helped her carry some packages to her room and spent the remainder of the day and

1  evening visiting and drinking with
2  the victim and other residents of
3  the hotel. Adler was arrested
4  11/16/70 at 12:15 A.M. for being
5  drunk in public on 8th and Broadway
6  streets approximately three blocks
7  from the Minneapolis Hotel. Adler
8  had bloodstains on his clothes and
9  shoes. Adler's hands had multiple
10  cuts and abrasions typical of
11  superficial cuts produced by broken
12  glass. Adler's shoes contained
13  small particles of cut glass lodged
14  in and about his soles. His
15  footprints preserved in blood in
16  the murder room were similar
17  pattern and size as those worn by
18  Adler when apprehended.
19  In Mr. Adler's version of this, he
20  indicated that his version remains the same that
21  he provided previous reports. Adler met the
22  victim the morning of the day prior to the
23  murder. He'd help the victim carry in some
24  packages to her hotel room. Adler spent the
25  remainder of the day, and he'd been visiting and
26  drinking with the victim and other residents of
27  the hotel. Eventually he left the hotel and

1   walked three blocks where he was arrested for

2   being drunk in public. He states that he did

3   not plead guilty to PC 187 murder second degree,

4   even those his attorney advised him to because

5   he did not think there was enough evidence to

6   convict him. Adler claims his innocence, being

7   sentenced by a jury trial. Okay. And pre-

8   conviction factors and your rap sheet, you at

9   eight years old ran away from home. Since that

10  time, the prisoner's juvenile record resulted in

11  his placement in a training school, revocation

12  of probation resulting in placements in

13  reformatories throughout his adolescent years.

14  Adult convictions, 2/15/1958, burglary, no

15  disposition noted. 2/13/1959 -- and that was in

16  South Rodchester, Minnesota. You had in Saint

17  Cloud, Minnesota, grand larceny first degree,

18  one to ten years. 2/23/1965, San Diego,

19  violation of parole, no disposition noted on

20  that. 2/28/1966, in Rodchester, Minnesota,

21  intoxication, 30 days in the county jail.

22  11/17/1966 in Owatonna, O-W-A-T-O-N-N-A,

23  Minnesota, forgery, five years -- it says COMM

24  of CORR, Minnesota. Was that five years in

25  custody?

26          INMATE ADLER:  Yes.

27          PRESIDING COMMISSIONER SAWYER:  Okay.  In

21

1  1967, July 14th, in Stillwater, Minnesota, you

2  were discharged by a commission. In 1970 --

3  6/20/70, it says you were in Austin, Minnesota,

4  a lodger. What's a lodger, L-O-D-G-E-R?

5          **INMATE ADLER:** I have no idea.

6          **PRESIDING COMMISSIONER SAWYER:** Okay. And

7  9/29/1970 in San Diego, drunk driving. And

8  11/7/70, San Diego, forgery, grand theft --

9  forgery, auto theft. And then 11/16/1970 the

10 instant offense. And personal factors of the

11 prisoner was 5th of 13 offspring born to Lauren,

12 L-A-U-R-E-N, and Margaret of Melville,

13 Minnesota. He was running away from home at the

14 age of eight, and his personal history primarily

15 involves institutionalization for robbery, grand

16 theft, bed checks, parole violations as

17 indicated in the Probation Officer's Report and

18 past psychiatric evaluation reports. He

19 terminated his formal education ninth grade

20 level and states that he obtained his high

21 school diploma while in prison in Minnesota.

22 His first wife of 1958 divorced him the year of

23 their marriage when he was sent to prison in

24 Minnesota as a result of the first-degree

25 larceny conviction. A child was born to this

26 union. Prisoner denied any military history,

27 not considered to be a sexual or mentally

22

1    disorder offender.   In the future plans that you

2    indicate you don't have any parole plans?

3         **INMATE ADLER:**  No.

4         **PRESIDING COMMISSIONER SAWYER:**  Okay.   And

5    in the packet dated March 25th, 2005, from the

6    city of San Diego.

7              I've reviewed the circumstances

8              leading to the arrest, conviction

9              of Vernon Adler for the November

10             1970 murder of 57 year-old Alicia

11             Ross.   On November 17th, 1970, at

12             approximately 11:00 P.M. Adler and

13             Ms. Ross were drinking at Ross's

14             residence.   Adler and Ross argued.

15             Adler slashed Ross's throat with a

16             wine bottle.   Ms. Ross's body was

17             not found until 11:00 A.M. the next

18             day, and the room was ransacked.

19             Adler was arrested and convicted of

20             Ross's murder and sentenced to life

21             in prison.   For committing such a

22             vicious murder, it's the

23             recommendation of the San Diego

24             Police Department that he remain in

25             custody and not be considered for

26             parole.

27       And that's signed by Kevin Rouney,

23

1    Lieutenant from the Homicide Unit.  Do you have

2    any letters of support --

3         INMATE ADLER:  No.

4         PRESIDING COMMISSIONER SAWYER:    -- that you

5    have with you?  There are none noted here.

6         INMATE ADLER:  None.

7         PRESIDING COMMISSIONER SAWYER:  Okay.  I

8    also have a letter November 17th, 2004, and an

9    updated letter, April 13th, 2005, from Mr.

10   Sachs, but Mr. Sachs is represented here today,

11   and so I'm not going to read those letters.

12   Okay.  Do you want to do post-conviction?

13        DEPUTY COMMISSIONER WEAVER:  Thank you.

14   Mr. Adler last appeared before the Board for a

15   full hearing on August 26th, 2002.  And at that

16   time he was denied parole consideration for two

17   years with the recommendation that he continue

18   to be disciplinary free, that he participate in

19   self-help and/or therapy, and that Panel

20   addressed a new psychological evaluation.  He

21   was then scheduled for an appearance before the

22   Board on December the 7th of 2004, and when that

23   hearing date came up, it was postponed.  The

24   hearing was postponed because the Panel noted

25   that the new psychiatric that had been

26   previously ordered in 2002 had not been

27   completed, so they postponed it for a new psych.

1  His next scheduled appearance was for May the

2  12th of 2005, and according to what I saw in the

3  file, that hearing was postponed because there

4  was a scheduled two-hour power outage, either on

5  that day or the day prior to that, May the 11th.

6  I'm not certain of the exact date of the power

7  outage, and one of the Panel members had a

8  medical appointment in the afternoon, which took

9  precedence over the hearing.  So here we are

10 today, and there have been some new documents

11 entered into the file.  One being a addendum to

12 the Board report, and there was one done by

13 Counselor Staten, S-T-A-T-E-N.

14        INMATE ADLER:  Staten.

15        DEPUTY COMMISSIONER WEAVER:  Staten.

16        INMATE ADLER:  Staten.

17        DEPUTY COMMISSIONER WEAVER:  I'm sure

18 Counselor Staten appreciates me pronouncing the

19 name correctly.  Did you get a copy Mr. Adler?

20        INMATE ADLER:  I did.

21        DEPUTY COMMISSIONER WEAVER:  Okay.  And

22 that period of time that Staten reviewed

23 indicated that you stayed at CTF and that were

24 you housed in GP.  You were Medium-A custody,

25 and there was no voc or academic training during

26 that period of time and that you remained

27 assigned to prison industries in the wood

1   factory finishing shop, and that you've had

2   exceptional grades.  There was a comment made in

3   here that apparently during this period of time

4   that there was a change of supervisors and that

5   the supervisor that was consulted indicated that

6   the supervisor had not had enough time to

7   appropriately evaluate the prisoner.  So

8   consequently, the counselor put down that there

9   were prior reports indicating that you had

10  better than average performance.  Did -- in

11  fact, counselor quotes Supervisor said Adler is

12  a good worker with high quality performance.

13  And it says that you participated in two hours

14  of video instruction having to do with community

15  reentry.  Is that correct?

16      INMATE ADLER:  Yes, it is.

17      DEPUTY COMMISSIONER WEAVER:  Okay.  And it

18  says there's no group activity, no psych

19  treatment, nothing noteworthy regarding prison

20  behavior.  You have a pay numbers in industries?

21      INMATE ADLER:  I do.

22      DEPUTY COMMISSIONER WEAVER:  And what does

23  it equate to on a month where there's no

24  lockdown and everything is going along smooth?

25      INMATE ADLER:  It averages about $6.75 a

26  day.

27      DEPUTY COMMISSIONER WEAVER:  So --

1    INMATE ADLER:  Over a hundred dollars.

2    DEPUTY COMMISSIONER WEAVER:  Over a hundred

3  dollars?

4    INMATE ADLER:  Over a hundred dollars.

5    DEPUTY COMMISSIONER WEAVER:  Have you saved

6  any money?

7    INMATE ADLER:  No.

8    DEPUTY COMMISSIONER WEAVER:  You spend it

9  all, or send it home, or what do you do?

10    INMATE ADLER:  Spend it.

11    DEPUTY COMMISSIONER WEAVER:  Spend it?

12    INMATE ADLER:  Mainly on food.

13    DEPUTY COMMISSIONER WEAVER:  Okay.  For

14  food?

15    INMATE ADLER:  Right.

16    DEPUTY COMMISSIONER WEAVER:  Okay.  All

17  right.  Counselor Staten indicates that you were

18  given an opportunity to review your file and it

19  says that Adler indicated that there are several

20  discrepancies that he discovered during the

21  review of the Central File noting lack of

22  entries to indicate intake and preboard audits,

23  128(g) classification chronos, lack of

24  psychological evaluation report and past BPT

25  decisions.  Adler also indicated that he made

26  the discoveries of the discrepancies when he

27  requested copies of all the chronological

27

1  history/CDC 112s in the Central File.  Did you

2  get any of those issues resolved subsequent to

3  talking to counselor Staten?

4      INMATE ADLER:  No.  The appeal is up in

5  Sacramento.  I appealed the process, and it's up

6  at Director's Review.

7      DEPUTY COMMISSIONER WEAVER:  On a 602?

8      INMATE ADLER:  Yes.

9      DEPUTY COMMISSIONER WEAVER:  And it was --

10  what happened on the first level down here?

11      INMATE ADLER:  Denied.

12      DEPUTY COMMISSIONER WEAVER:  It was denied.

13  And the second level?

14      INMATE ADLER:  Denied.

15      DEPUTY COMMISSIONER WEAVER:  So it's at the

16  third level of review?

17      INMATE ADLER:  Right.

18      DEPUTY COMMISSIONER WEAVER:  When was the

19  last time that you had contact with them at the

20  third level, or when was it sent up there for

21  third level review?

22      INMATE ADLER:  Less than a month ago.

23      DEPUTY COMMISSIONER WEAVER:  I'm not sure I

24  fully understand everything.  I don't want to

25  get into it because it's on appeal, but you

26  know, every 112 since you've came to the

27  Department of Corrections is in your Central

28

1    File, and you had an opportunity to review

2    those, but I'm not predicting anything as to the

3    outcome of your appeal.  I'm saying that if 112s

4    was an issue, they're in there.

5        INMATE ADLER:  112s is in there.

6        DEPUTY COMMISSIONER WEAVER:  The 112s are

7    in there having to do with your movement ever

8    since you came to the Department of Corrections.

9    That's what the 112 is about.

10       INMATE ADLER:  Right.  There's -- I went

11   down to CMC in March, 1976, there's no entry on

12   my 112 until two and a half years later.

13       DEPUTY COMMISSIONER WEAVER:  Were you at

14   CMC the whole time or -- and I don't --

15       INMATE ADLER:  I left.

16       DEPUTY COMMISSIONER WEAVER:

17   (indiscernible) on track.

18       INMATE ADLER:  I was --

19       DEPUTY COMMISSIONER WEAVER:  Were you over

20   at Tescadero (phonetic) at one point in time?

21       INMATE ADLER:  CMC East.

22       DEPUTY COMMISSIONER WEAVER:  All the time?

23       INMATE ADLER:  Yes.

24       DEPUTY COMMISSIONER WEAVER:  Okay.  Well,

25   this indicates that you at some point in time in

26   19 -- you were here at CTF in 1989.  That you

27   went to CMC East --

29

1    INMATE ADLER:  No.

2    DEPUTY COMMISSIONER WEAVER:  -- in January

3  of '90 for a psych eval?

4    INMATE ADLER:  No.  We're talking about

5  different dates.

6    DEPUTY COMMISSIONER WEAVER:  What date are

7  you talking about, sir?

8    INMATE ADLER:  I went from Folsom down to

9  CMC in March of 1976.

10    DEPUTY COMMISSIONER WEAVER:  Okay.

11    INMATE ADLER:  There's a line drawn through

12  it.  It says revised --

13    DEPUTY COMMISSIONER WEAVER:  Revised 112.

14    INMATE ADLER:  Then it starts up at

15  11/29/78.

16    DEPUTY COMMISSIONER WEAVER:  11 -- no.  It

17  says 5/4/77 continued posting.  Then it goes to

18  November 29th, 1978.  It doesn't indicate where

19  you were between transferring to CMC East in '76

20  until you were received at San Quentin in 1980,

21  so maybe there is a discrepancy there.  But

22  anyway, let me go back to why we're here for

23  today.  The circumstances of the crime have

24  already been commented on by Commissioner

25  Sawyer, and the record indicates that you

26  already -- it's already been mentioned that you

27  obtained a high school diploma while you were in

30

1  Minnesota.  And I notice that there's a number

2  of 115s, the last being in 1985 for possession

3  of money at North Facility.  And 128s, the last

4  being in 1998 for refusing to work.  Is that

5  true?

6       INMATE ADLER:  Yes.

7       DEPUTY COMMISSIONER WEAVER:  Why?

8       INMATE ADLER:  They put me in a job that I

9  wasn't qualified to work at.

10      DEPUTY COMMISSIONER WEAVER:  Okay.

11      INMATE ADLER:  I had no training in it.

12      DEPUTY COMMISSIONER WEAVER:  Did you tell a

13 supervisor that?

14      INMATE ADLER:  I did.

15      DEPUTY COMMISSIONER WEAVER:  And that you

16 weren't more qualified for the job?

17      INMATE ADLER:  Yes.

18      DEPUTY COMMISSIONER WEAVER:  Did it have a

19 pay number?

20      INMATE ADLER:  It was, but it was in a

21 position I'm not familiar with, and I felt that

22 I would be an endangerment.  I'm not familiar

23 with the area.  I'm not familiar with the

24 surrounding.  I'm not going to put myself in a

25 position to be injured.

26      DEPUTY COMMISSIONER WEAVER:  And you said

27 I'm not going to work the sanding line and

31

1   whatever.  This was originally written up as a

2   115 and then --

3       INMATE ADLER:  Reduced to a 128.

4       DEPUTY COMMISSIONER WEAVER:  -- it was

5   reduced to a 128(a).  So you've been

6   disciplinary free essentially for seven years on

7   128(a)s, and 10 years on 115s.

8       INMATE ADLER:  20.

9       DEPUTY COMMISSIONER WEAVER:  Excuse me, 20

10  on 115s.  That's good.  The counselor also

11  indicated that during this review period that

12  you did not attend any self-help programs or

13  pursue any educational or voc upgrading

14  experience.  Have you been in any self-help

15  programs?

16      INMATE ADLER:  They don't have it here.

17      DEPUTY COMMISSIONER WEAVER:  They don't

18  have Alcoholic's Anonymous here?

19      INMATE ADLER:  They do, but I quit going.

20      DEPUTY COMMISSIONER WEAVER:  Why?

21      INMATE ADLER:  I didn't feel like going.  I

22  don't need to hear anybody else's problems.

23  I've got enough of my own.

24      DEPUTY COMMISSIONER WEAVER:  Well, do you

25  think alcohol was related in any way, shape, or

26  form to your commitment offense?

27      INMATE ADLER:  There was drinking involved

32

1   at the time the crime was committed, but if I

2   had a drinking problem, it would be documented

3   in my file.  There's no mention, no being drunk,

4   making Pruno, nothing.  I don't have a drinking

5   problem now.

6           **DEPUTY COMMISSIONER WEAVER:**  Well, you

7   don't have any in the institution.

8           **INMATE ADLER:**  It's available, believe me.

9           **DEPUTY COMMISSIONER WEAVER:**  I do believe

10  you.  Counselor said that you did not have any

11  parole plans.  That you shared with the

12  counselor that you didn't have any employment

13  offers, no community resources, nothing to help

14  you reestablish yourself in the community.

15          **INMATE ADLER:**  I been incarcerated 35

16  years.  I lost all contact, even with my family

17  members.

18          **DEPUTY COMMISSIONER WEAVER:**  Now, Mr.

19  Adler, if you went to AA, you might be able to

20  get a sponsor and you might be able to establish

21  some relationships that might be beneficial.

22  You're a good worker.  It's possible that

23  through a sponsor there may be a job offer

24  forthcoming with your skills that you have in,

25  what, sanding and staining.  I don't know, but

26  this is your decision -- your decision to make.

27  If you want to participate in things that might

33

1    be of benefit to you.  The psychological report

2    that the Panel postponed your hearing for is

3    dated November the 5th, 2004.  Did you get a

4    copy of that, sir?

5         INMATE ADLER:  I do.

6         DEPUTY COMMISSIONER WEAVER:  And that was

7    done by a Dr. Stack, S-T-A-C-K?

8         INMATE ADLER:  Yes.

9         DEPUTY COMMISSIONER WEAVER:  And Dr. Stack

10   says this is an addendum essentially to the

11   previous Board report that was done by Dr.

12   Terrini in 1999.  And you have a copy of Dr.

13   Terrini's report as well?

14        INMATE ADLER:  Yes.

15        DEPUTY COMMISSIONER WEAVER:  And it talks

16   about your history and that you told the doctor

17   that you had not attended Narcotic's Anonymous

18   or AA and that you have made a promise that you

19   would never drink again.  And it says his last

20   use of substances was November the 15th, 1970.

21   I note in one of the reports, I believe, it was

22   Dr. Terrini's report, that your memory -- your

23   recall of the incident, wherein this women died,

24   was somewhat either confused or it wasn't good

25   because of use of alcohol is what was indicated

26   that you said.  Is that a fair statement?

27        INMATE ADLER:  Yes.

34

1    **DEPUTY COMMISSIONER WEAVER:** Dr. Stack

2    says, you know, that on a diagnostic impression,

3    alcohol dependence is a sustained institutional

4    remission, 34 years. On access two, antisocial

5    personality disorder substantially improved, and

6    a GAF score of 90. The doctor explained what a

7    GAF score was?

8    **INMATE ADLER:** No.

9    **DEPUTY COMMISSIONER WEAVER:** A global

10   assessment of functioning. That's very high.

11   That's very good. So you should be commended

12   for that. It says that you knowledge you're

13   responsible for the crime. I think I have to

14   change the tape. Excuse me. Side Two, Tape One

15   in the case of Mr. Vernon Adler. The report by

16   Dr. Stack that I was referring to previously

17   indicated that Dr. Stack recommends abstinence

18   from all alcohol and drugs, random monitoring

19   during probationary period. Doctor goes onto

20   say that this evaluator agrees with Dr.

21   Terrini's 1999 evaluation that there was no

22   trace of bitterness, intellectualization,

23   rebelliousness, or institutionalization

24   discernible during the lengthy interview with

25   Inmate Adler. Inmate Adler indicated if given a

26   parole date, he would be able to utilize

27   resources available to him through the lifer

35

1  class taught by Mr. Walker to finalize his

2  parole plans as well as employment options.

3  What's that?  Tell me what that means.

4      INMATE ADLER:  IEP class that they started

5  out for PIA from prison industries from all

6  counties that were people that were convicted.

7  They got videos on how to apply for a job.  The

8  does and don'ts of interviews.  Sad to say it's

9  phasing out.  It's not as hyped up as it was

10  meant to be.

11      DEPUTY COMMISSIONER WEAVER:  Okay.  What

12  have you done in regard to San Diego County?

13  Have you got a copy of the San Diego Union and

14  checked for jobs?

15      INMATE ADLER:  I written to a copy places

16  down there through (indiscernible) and I never

17  received no answer.

18      DEPUTY COMMISSIONER WEAVER:  Okay.

19      INMATE ADLER:  Couple of them came back and

20  said the address was wrong.

21      DEPUTY COMMISSIONER WEAVER:  Did you show

22  those attempts to anybody saying, hey, well, I

23  tried and they're not responding?

24      INMATE ADLER:  No.

25      DEPUTY COMMISSIONER WEAVER:  Did you talk

26  to your counselor about it?

27      INMATE ADLER:  No.

36

1   **DEPUTY COMMISSIONER WEAVER:**   Okay.   Just as

2   a matter of record, Dr. Terrini did a report

3   dated June 21st, 1999, and it indicates that at

4   that particular time you planned to live with

5   your wife and that situation, that relationship

6   is no longer --

7       **INMATE ADLER:**   No.

8       **DEPUTY COMMISSIONER WEAVER:**   -- a viable --

9       **INMATE ADLER:**   No.

10      **DEPUTY COMMISSIONER WEAVER:**   --

11  relationship.   So that's not a resource.   So

12  things have changed --

13      **INMATE ADLER:**   Yes, they have.

14      **DEPUTY COMMISSIONER WEAVER:**   -- since you

15  talked to Dr. Terrini.   Dr. Terrini's report is

16  the report under current mental status and

17  treatment needs.   Dr. Terrini said in part there

18  was no evidence of mood or thought disorder.

19  His judgment appeared to be sound.   His insight

20  was difficult to assess as he maintains he still

21  cannot remember specifics of his commitment

22  offense, and that you don't have any memory of

23  committing the crime, that you can't believe

24  that you were capable of the crime.   And Dr.

25  Terrini goes on indicating in part that his

26  violence potential is estimated to be no more

27  than the average citizen in the community and

37

1  that all bets to be off if you were to abuse

2  alcohol again upon parole, and that would result

3  in your violence potential to be considerably

4  higher than the average citizen in the

5  community.  And he further indicates that your

6  lack of violent 115s in the institution

7  indicates that your violence potential is to be

8  considered significantly below average relative

9  to level two inmate population.  So it's got one

10  side --

11      **INMATE ADLER:**  Dr. Stack has more to say in

12  there.  You didn't read it.  She felt that I was

13  a viable candidate for parole.

14      **DEPUTY COMMISSIONER WEAVER:**  Okay.  Well,

15  that's very good, but we're the ones that have

16  to make the final decision, Mr. Adler.  Anything

17  that I haven't mentioned or that I should of

18  mentioned that you want on the record today?

19      **INMATE ADLER:**  You covered it pretty well.

20      **DEPUTY COMMISSIONER WEAVER:**  Thank you,

21  sir.  I'll ask that you return your attention to

22  Commissioner Sawyer.

23      **PRESIDING COMMISSIONER SAWYER:**  Okay.  Mr.

24  Sachs, do you have any questions?

25      **DEPUTY DISTRICT ATTORNEY SACHS:**  No

26  Commissioner, thank you.

27      **PRESIDING COMMISSIONER SAWYER:**  Okay.  Then

1  would you like to close?

2      **DEPUTY DISTRICT ATTORNEY SACHS:**  Yes.  On

3  behalf of the People in the State of California,

4  we would respectfully oppose parole.  The

5  release of Mr. Adler would pose an unreasonable

6  risk of danger to society.  The primary reasons

7  for this recommendation are that the inmate has

8  not complied with previous recommendations of

9  previous Panels.  He has not completed any work

10  in Alcoholic's Anonymous, although alcohol

11  played a significant role in this offense.  He

12  has no parole plans.  In addition, the offense

13  itself was especially heinous and atrocious

14  beyond the minimum elements necessary to commit

15  murder.  And therefore, the case comes within

16  the purview of Rosencranz (phonetic) and

17  Dannenberg (phonetic) also.  For public safety

18  reasons, we would ask that his release be

19  denied.  Thank you.

20      **PRESIDING COMMISSIONER SAWYER:**  Thank you.

21  It's your turn, Mr. Adler.

22      **INMATE ADLER:**  Other than the amount of

23  time that I've already done -- I don't know if

24  the Panel will take that into consideration.

25  Due to the amount of time that I have done, not

26  counting good time credit that will need to be

27  applied, I'm requesting that the Panel waive

43

1  trace of bitterness, intellectualization,

2  rebelliousness or institutionalization with

3  Inmate Adler today.  Inmate Adler indicated that

4  if given a parole date, he would be able to

5  utilize resources available to him through the

6  lifer class taught to Mr. Walker to finalize his

7  parole plans as well as his employment options.

8  And it's the opinion of the author that Inmate

9  Adler is a viable candidate for parole.  And

10 that was Dr. Stack, and it was 11/5/04.  We did

11 have 3042 response from the City of San Diego

12 Police Department and from the County of San

13 Diego Deputy District Attorney Sachs.  Regarding

14 his parole plans, he has none, and there's no

15 employment and no parole plans and no -- as you

16 said you don't have anybody on the outside that

17 can be an advocate for you.  That's why Deputy

18 Commissioner Weaver tried to give you a little

19 leg up on that and said, you know, if you got

20 into AA it becomes -- they become your advocate.

21 You did have a drinking problem.  That's clear

22 given your history, but by not having any

23 advocates outside, it becomes difficult for you

24 to come up with some parole plans, some place to

25 live.  You can't wait until you walk out the

26 front door and get on the bus because you got to

27 **VERNON ADLER B-35449 DECISION PAGE 4 10/12/05**

44

1    have some plans because otherwise our concern is

2    clearly that you might fall off the wagon, and

3    then all the bets are off as far as your

4    psychological report is concerned.  It's not

5    going to happen.  You've got to have something

6    out there, Mr. Adler, that will be your

7    advocate, and AA does have -- that's what they

8    do.  And that's really important that you do.

9    We feel that you do have some self-help

10   available here.  I know you're working, and you

11   certainly should be commended for the work that

12   you do and for getting your high school diploma

13   and your global functioning is good, but we're

14   going to need to see something going on the

15   outside with your place to live, and I'm not

16   talking about halfway house.  And once you get a

17   date, you've been in here so long, you won't

18   have to worry about you staying any longer once

19   your date is established.  So you're talking

20   about 120 days, and all of a sudden you go out

21   the front gate, and you don't have any place to

22   go.  The chance of re-offending is much greater,

23   so what we want to see is some plans, some

24   parole plans, a place to live, some job contacts

25   based on what you do best, and not -- we don't

26   necessarily need to have a job offer, but at

27   **VERNON ADLER B-35449 DECISION PAGE 5 10/12/05**

45

1    least tell us what you're going to do and what

2    you're going to be looking for and what your

3    skill level is and how much you're going to be

4    make.  Do some research, do some homework on

5    those things.  We've got some recommendations.

6    Of course, I can talk until I'm blue in the face

7    with AA, but get self-help.  If not AA, find

8    another source that has ties to the outside.

9    Stay discipline free, earn positive chronos.

10   And Commissioner Weaver, do you have anything

11   you'd like to say?

12        **DEPUTY COMMISSIONER WEAVER:**  Mr. Adler, in

13   all fairness to you, you've raised some issues

14   today regarding the matrix, and you've submitted

15   appeals in the past to the Board and, you know,

16   whether you go under 2282 about a base term, it

17   says "The Panel shall set a base term for each

18   life prisoner who is found suitable for parole."

19   Meaning, you have to be found suitable first,

20   and that's one of the documents that you

21   submitted previously.  If you go under the old

22   2296, under the community release Board, it

23   says, "Once a prisoner has been found suitable

24   for parole, a parole date shall be set."  You

25   have to be found suitable first, and that is

26   what Commissioner Sawyer is talking to you

27   **VERNON ADLER B-35449 DECISION PAGE 6 10/12/05**

46

1  about, about doing something so that you can be

2  found suitable so that your term can be fixed.

3  And that's all I have to say.

4          PRESIDING COMMISSIONER SAWYER:  Okay.

5  We're extending your time by two years here.

6          DEPUTY DISTRICT ATTORNEY SACHS:  How long

7  was the denial?

8          PRESIDING COMMISSIONER SAWYER:  Two years.

9          DEPUTY DISTRICT ATTORNEY SACHS:  Thank you.

10         INMATE ADLER:  I don't think I'm going to

11  be coming before you people anymore, because I

12  don't think you have jurisdiction over me

13  anymore since we did the matrix.  So you have a

14  nice day.

15         PRESIDING COMMISSIONER SAWYER:  Okay.  Good

16  luck.

17                    --oOo--

18

19

20

21

22

23  PAROLE DENIED TWO YEARS

24  THIS DECISION WILL BE FINAL ON:_____FEB - 9 2006____

25  YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT

26  DATE, THE DECISION IS MODIFIED.

27  VERNON ADLER B-35449 DECISION PAGE 7 10/12/05

47

## CERTIFICATE AND
## DECLARATION OF TRANSCRIBER

I, STACY WEGNER, a duly designated transcriber,

PETERS SHORTHAND REPORTING, do hereby declare and

certify under penalty of perjury that I have

transcribed tape(s) which total one in number and

cover a total of pages numbered 1 - 46, and which

recording was duly recorded at CORRECTIONAL TRAINING

FACILITY, SOLEDAD, CALIFORNIA, in the matter of the

SUBSEQUENT PAROLE CONSIDERATION HEARING OF VERNON

ADLER, CDC NO. B-35449, ON OCTOBER 12, 2005, and that

the foregoing pages constitute a true, complete, and

accurate transcription of the aforementioned tape to

the best of my ability.

I hereby certify that I am a disinterested

party in the above-mentioned matter and have no

interest in the outcome of the hearing.

Dated October 27, 2005, at Sacramento,

California.


STACY WEGNER
TRANSCRIBER
**PETERS SHORTHAND REPORTING**