# EXHIBIT 4

Name  Vernon Adler

Address  P.O. Box 689  East Dorm 109-Low

Soledad, CA 93960-0689

CDC or ID Number  B-35449

**MC-275**

**F I L E D**
Clerk of the Superior Court

**JUL 0 6 2006**

By: ___AT___ , Deputy

WRIT GRANTED/DENIED
DATE  8/28/06

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN DIEGO

(Court)

| VERNON ADLER | |
|---|---|
| Petitioner | |
| | vs. |
| BEN CURRY, Warden,(A).et.al. | |
| Respondent | |

2nd PETITION FOR WRIT OF HABEAS CORPUS

No. HC18509

(To be supplied by the Clerk of the Court)

~~BOOKING~~ CR22437

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 at seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

**This petition concerns:**

☐ A conviction                     ☒ Parole

☐ A sentence                       ☐ Credits

☐ Jail or prison conditions        ☐ Prison discipline

☒ Other *(specify):* Board of Parole Hearings violated due process by use of unchanging factors.

1. Your name: _____ Vernon Adler _____

2. Where are you incarcerated? Correctional Training Facility - East Dorm

3. Why are you in custody?   ☒ Criminal Conviction   ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      First Degree murder

   b. Penal or other code sections: Penal Code sections 187, 190, 1168.

   c. Name and location of sentencing or committing court: Superior Court of California

      County of San Diego

   d. Case number: CR-22437

   e. Date convicted or committed: Convicted June 2, 1971

   f. Date sentenced: June 29, 1971

   g. Length of sentence: 7 (seven) years to life

   h. When do you expect to be released? June 29, 1984

   i. Were you represented by counsel in the trial court?   ☒ Yes.   ☐ No.   If yes, state the attorney's name and address:

      Mr. Robert F. Bourne, 2550 5th Ave., Suite 720

      San Diego, CA 92103-6624 (last known Address)

4. What was the LAST plea you entered? *(check one)*

   ☒ Not guilty   ☐ Guilty   ☐ Nolo Contendere   ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   ☒ Jury   ☐ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

**Ground One:**

Petitioners due process rights under the 5th and 14th Amend. of the U.S. Const. were violated at petitioner's 16th (sixteenth) subsequent parole consideration hearing held October 12, 2005 (Exhibit A) by the Board's continued use of unchanging factors.

The Board's decision to deny parole was based solely on the commitment offense (Id. 40-41)(decision page 1-2) factors which will **never** change.

Petitioner has been denied parole at 16 parole hearings, (his minimum eligible parole date was November 15, 1977, Ex B pg 1) during which the commitment offense has been used as the main or sole factor to deny parole, this is a classic example of the Board turning a sentence from life with the possibility of parole into one of life without the possibility of parole, a violation of petitioner's protected liberty interest in parole. "In assessing any due process violation is the fact that continued reliance on unchanging circumstances transforms an offense for which California law provides eligibility for parole into a de facto life imprisonment without parole" Irons v. Warden, 358 F.Supp.2d 936, 947.

The mandatory language in California Penal Code (PC) 3041, imposes a obligation to grant parole when certain conditions have been met, thus creating a legally binding protected liberty interest in parole, a presumption that parole release will be granted; Greenholtz v. Inmates of Nebraska, 442 U.S. 15; McQuillon v. Duncan, 306 F.3d. 901-2; Biggs v. Terhune, 334 F.3d 914; Irons, supra. These cases hold that states can (and California did) create an enforceable liberty interest in parole through their 'unique structure and language" in the parole statues.

The evidence in the record, found by the Board, shows petitioner has been imprisoned for 35 years, has very good institutional behavior, has exceptional

work reports and job skills, by all accounts has met all conditions of rehabilitation espoused by the prison system (Ex A). Further, petitioner is housed at Correctional Training Facility - EAST DORMITORY housing unit, designed for non-violent, programming, rehabilitated, working individuals, (petitioner is working in PIA furniture factory) as such, petitioner is to be considered "low risk" and "non-violent" for public safety interest, <u>Johnson v. California</u>, 321 F.3d 791, 795, as testified to by prison administrators.

"The behavior record of an inmate during confinement is critical in determining the degree the inmate is prepared to adjust to parole release" <u>Greenholtz</u>, supra. In <u>Biggs</u>, supra, the court found that the Board was "initially justified" in denying parole based on the commitment offense or criminal history. The court warned that continued use of those factors at subsequent parole hearings would "run contrary to the rehabilitative goals espoused by the prison system' resulting in a constitutional due process violation. Also denials in face of exemplary behavior and overwhelming evidence of rehabilitation violates an inmate's liberty interest in parole.

The following cases have found these violations; <u>Kunkler v. Muntz</u>, CV 05-6473 TJH (E) (March 15, 2006) <u>Clay v. Kane</u>, No. 04-8663- VAP(AJW) (C.D.Cal. December 2, 2005) (similar); <u>Saif'ullah v. Carey</u>, No. 02-2664-MCE(DAD), 2005 WL 1555389 (E.D.Cal. June 28, 2005) (similar); <u>Yellen v. Butler</u>, No. S-01-2398-MCE, (E.D.Cal. March 31, 2004) (similar); <u>Masoner v. State</u>, No. 03-1261-ER, 2004 WL 1080177 (E.D.Cal. Jan 23, 2004) (similar).

Moreover, <u>In re Dannenberg</u>, 23 Cal.Rptr3d. 417, 436 (citing <u>In re Rodriquez</u>, 122 Cal.Rptr. 552) the law required the Adult Authority to set an actual maximum term for **all** inmates, proportionate to their individual culpability. <u>Rodriquez</u> stressed that the Adult Authority's responsibility to fix an inmate's maximum term, derived from former Penal Code section 3020.

In the instant case, petitioner was convicted in 1971, 4 (four) years prior to _Rodriquez_, it appears the Adult Authority (now the Board of parole hearings) has failed to follow the mandate to set a maximum term.   The California Supreme Court in _In re Stanworth_, 33 Cal.3d 176, 188, concluded that if the standard of punishment has been altered to petitioner's prejudice, ex post facto has been violated.   Clearly a parole date was to be set under _Rodriquez_, as explained, supra ex post facto mandates a date be fixed now.

Petitioner was to have a date fixed at a maximum term in 1975, the Board failed.   Petitioner was not sentenced to life without the possibility of parole, yet his 7 year to life sentence, a sentenced imposed in 1971 has now turned into one of life without the possibility of parole as evidenced by 16 parole denials over a 35 year span.

Therefore in the interest of justice this petition should be granted.

4(a)

8. Did you appeal from the conviction, sentence, or commitment?    [X] Yes.    [ ] No.    If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
     Court of Appeal, Fourth Appellate District, Division One

   b. Result:    Denied    c. Date of decision:    unknown

   d. Case number or citation of opinion, if known:    4 Crim. 5019

   e. Issues raised:    (1)    Insufficient evidence to support first degree murder verdict.

       (2)    Refusing to grant new trial based on newly discovered evidence.

       (3)    Trial judge erred in instructing the jury of the issue of diminished capacity.

   f. Were you represented by counsel on appeal?    [X] Yes.    [ ] No.  If yes, state the attorney's name and address, if known:
     Same as trial attorney.

9. Did you seek review in the California Supreme Court?    [X] Yes.    [ ] No.    If yes, give the following information:

   a. Result:    Denied    b. Date of decision:    Unknown

   c. Case number or citation of opinion, if known:    unknown

   d. Issues raised:    (1)    unknown

       (2)

       (3)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:
   Not an issue at time of conviction

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:
     The Board of parole hearings does not have an appeal process.

   b. Did you seek the highest level of administrative review available?    [X] Yes.    [ ] No.
     *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?    [X] Yes. If yes, continue with number 13.    [ ] No. If no, skip to number 15.

13. a. (1) Name of court: __Superior Court of Marin County; No. SC-087466A__

    (2) Nature of proceeding (for example, "habeas corpus petition"): __Habeas Corpus__

    (3) Issues raised: (a) __Violation of Due process__

    (b) __Application of penal code 1170.2 (b)__

    (4) Result (Attach order or explain why unavailable): __Denied - lost paper work__

    (5) Date of decision: __October 17, 1996__

  b. (1) Name of court: __Sixth Appellate Court of Appeal; No. H016152__

    (2) Nature of proceeding: __Habeas Corpus__

    (3) Issues raised: (a) __Same as above.__

    (b) _____

    (4) Result (Attach order or explain why unavailable): __Denied - lost paper work__

    (5) Date of decision: __December 19, 1996__

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page. **see attached page.**

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
__No hearings ever held.   State courts choose not to hold hearings on issues relating to indeterminate terms.__

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
__no delay, Board decision was final on February 9, 2006__

16. Are you presently represented by counsel?    [ ] Yes.    [X] No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court?    [ ] Yes.    [X] No. If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
__Court of first impression.__

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: _July 2 2006_    ▶ _Vernon L. _____ (SIGNATURE OF PETITIONER)

Continuation from page 6.

13. c. (1) Name of Court: <u>California Supreme Court: No. S058453</u>

   (2) Nature of proceeding:  <u>Habeas corpus petition.</u>

   (3) Issues raised: (a) <u>Petitioner was denied due process and equal</u>
     <u>protection in not having his term fixed as scheduled.</u>
     <u>(b) Petitioner alleged he was restrained of his liberty after</u>
     <u>paroling authorities sent notices stating Petitioner will have</u>
     <u>term fixed pursuant to Penal Code Section 1170.2.</u>
     <u>(c) Current parole board lost jurisdiction after Petitioner</u>
     <u>exceeded ranges of punishment for first degree murder under the</u>
     <u>Indeterminate Sentence Law (ISL).</u>

   (4) Result:  <u>Denied:</u>

   (5) Date of decision:  <u>May 28, 1997.</u>

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS


In the matter of the Life )
Term Parole Consideration )
Hearing of:              )          CDC Number B-35449
                         )
VERNON ADLER             )
                         )          INMATE
_____)          COPY


CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

OCTOBER 12, 2005

2:15 P.M.


PANEL PRESENT:

Mr. Tom Sawyer, Presiding Commissioner
Mr. John Weaver, Deputy Commissioner


OTHERS PRESENT:

Mr. Vernon Adler, Inmate
Mr. Richard Sachs, Deputy District Attorney
Correctional Officers Unidentified


CORRECTIONS TO THE DECISION HAVE BEEN MADE

            _____  No      See Review of Hearing
            _____  Yes     Transcript Memorandum


**Stacy Wegner, Peters Shorthand Reporting**

1       **CALIFORNIA BOARD OF PAROLE HEARINGS**

2                   **D E C I S I O N**

3       **PRESIDING COMMISSIONER SAWYER:**  Okay.  The

4    time is 3:26 P.M. in the matter of Mr. Adler.

5    The Panel has reviewed all information received

6    from the public and relied on the following

7    circumstances in concluding that the prisoner is

8    not suitable for parole and would pose an

9    unreasonable risk of danger to society or threat

10   to public safety if released from prison.  This

11   crime certainly was carried out in a very cruel

12   and -- cruel manner, which demonstrates an

13   exceptionally callous disregard for human

14   suffering.  Mr. Adler was in the room with

15   Katherine -- Alicia Katherine Ross, age 57, in

16   her hotel room.  She was found the next day.

17   Her throat was cut by -- and there were two

18   broken jagged wine bottlenecks saturated in

19   blood found in the room.  That's pretty --

20   that's a pretty disregard -- callous disregard

21   for human suffering, slicing her throat and

22   she's bleeding to death on her bed.  He was

23   apprehended that night, 2:15 A.M, for being

24   drunk in public, had blood on his clothes,

25   shoes, pants, multiple cuts and abrasions as

26   typical of superficial cuts produced by broken

27   **VERNON ADLER B-35449 DECISION PAGE 1 10/12/05**

1    glass, his shoes contained small particles of

2    cut glass lodged in and about his soles. We

3    don't know the motive for this particular crime,

4    whether it was robbery, whether it was -- why it

5    happened. It's just inexplicable that it ever

6    happened to this 57 year-old woman. His

7    previous record, he certainly has an escalating

8    pattern of criminal conduct, at least tumultuous

9    relationship, and since that at the age of eight

10    -- started at the age of eight years old started

11    running away from home. His juvenile record

12    resulted in his placement in training school,

13    revocation of probation, and throughout his

14    adolescent years. When he turned adult in 1958,

15    he was still out of control, burglary, grand

16    larceny seven times, intoxication, forgery,

17    drunk driving, auto theft, and up to --

18    escalated up to 1970 where he ended up with the

19    instant offense here. He failed to profit from

20    society's previous attempts to correct his

21    criminality of juvenile probation, juvenile

22    camp, county jail, prison, on parole and

23    probation. His institutional behavior has been

24    very good since he's only had six 115s, the last

25    one being 8/8/1985, and that was contraband,

26    money. 128, only six of those, the last one

27    **VERNON ADLER B-35449 DECISION PAGE 2 10/12/05**

1    being 3/1/1998, refusing to go to work, and the

2    reason for that sounded plausible. Speaking of

3    work, he has worked in the PIA wood furniture

4    factory doing the sanding and staining. He

5    receives exceptional work reports. He did get

6    his high school education while in custody in

7    Minnesota. Was noted by the Deputy Commissioner

8    that he has a very high GAF of 90. He's

9    received a number of laudatory chronos for being

10    -- for doing good work. The psychiatric

11    factors, he's -- in the last assessment of

12    dangerousness -- I'm sorry, in the clinical

13    observation comments/recommendations, Inmate

14    Adler is competent and responsible for his

15    behavior. He has the capacity to abide by

16    institutional standards as done so during his

17    incarceration period. This inmate does not have

18    a mental health disorder which would necessitate

19    treatment either during his current

20    incarceration period or following parole. As

21    Inmate Adler has acknowledged a significant

22    problem with alcohol in his past, I recommend

23    upon parole abstinence from all alcohol and

24    drugs and random monitoring during his

25    probationary period. This evaluator agrees with

26    Dr. Terrini's 1999 evaluation that there's no

27    **VERNON ADLER B-35449 DECISION PAGE 3 10/12/05**

1    trace of bitterness, intellectualization,

2    rebelliousness or institutionalization with

3    Inmate Adler today.  Inmate Adler indicated that

4    if given a parole date, he would be able to

5    utilize resources available to him through the

6    lifer class taught to Mr. Walker to finalize his

7    parole plans as well as his employment options.

8    And it's the opinion of the author that Inmate

9    Adler is a viable candidate for parole.  And

10   that was Dr. Stack, and it was 11/5/04.  We did

11   have 3042 response from the City of San Diego

12   Police Department and from the County of San

13   Diego Deputy District Attorney Sachs.  Regarding

14   his parole plans, he has none, and there's no

15   employment and no parole plans and no -- as you

16   said you don't have anybody on the outside that

17   can be an advocate for you.  That's why Deputy

18   Commissioner Weaver tried to give you a little

19   leg up on that and said, you know, if you got

20   into AA it becomes -- they become your advocate.

21   You did have a drinking problem.  That's clear

22   given your history, but by not having any

23   advocates outside, it becomes difficult for you

24   to come up with some parole plans, some place to

25   live.  You can't wait until you walk out the

26   front door and get on the bus because you got to

27   **VERNON ADLER B-35449 DECISION PAGE 4 10/12/05**

1    have some plans because otherwise our concern is

2    clearly that you might fall off the wagon, and

3    then all the bets are off as far as your

4    psychological report is concerned.  It's not

5    going to happen.  You've got to have something

6    out there, Mr. Adler, that will be your

7    advocate, and AA does have -- that's what they

8    do.  And that's really important that you do.

9    We feel that you do have some self-help

10   available here.  I know you're working, and you

11   certainly should be commended for the work that

12   you do and for getting your high school diploma

13   and your global functioning is good, but we're

14   going to need to see something going on the

15   outside with your place to live, and I'm not

16   talking about halfway house.  And once you get a

17   date, you've been in here so long, you won't

18   have to worry about you staying any longer once

19   your date is established.  So you're talking

20   about 120 days, and all of a sudden you go out

21   the front gate, and you don't have any place to

22   go.  The chance of re-offending is much greater,

23   so what we want to see is some plans, some

24   parole plans, a place to live, some job contacts

25   based on what you do best, and not -- we don't

26   necessarily need to have a job offer, but at

27   **VERNON ADLER B-35449 DECISION PAGE 5 10/12/05**

1    least tell us what you're going to do and what
2    you're going to be looking for and what your
3    skill level is and how much you're going to be
4    make.  Do some research, do some homework on
5    those things.  We've got some recommendations.
6    Of course, I can talk until I'm blue in the face
7    with AA, but get self-help.  If not AA, find
8    another source that has ties to the outside.
9    Stay discipline free, earn positive chronos.
10   And Commissioner Weaver, do you have anything
11   you'd like to say?
12       **DEPUTY COMMISSIONER WEAVER:**  Mr. Adler, in
13   all fairness to you, you've raised some issues
14   today regarding the matrix, and you've submitted
15   appeals in the past to the Board and, you know,
16   whether you go under 2282 about a base term, it
17   says "The Panel shall set a base term for each
18   life prisoner who is found suitable for parole."
19   Meaning, you have to be found suitable first,
20   and that's one of the documents that you
21   submitted previously.  If you go under the old
22   2296, under the community release Board, it
23   says, "Once a prisoner has been found suitable
24   for parole, a parole date shall be set."  You
25   have to be found suitable first, and that is
26   what Commissioner Sawyer is talking to you
27   **VERNON ADLER B-35449 DECISION PAGE 6 10/12/05**

1    about, about doing something so that you can be

2    found suitable so that your term can be fixed.

3    And that's all I have to say.

4        PRESIDING COMMISSIONER SAWYER:  Okay.

5    We're extending your time by two years here.

6        DEPUTY DISTRICT ATTORNEY SACHS:  How long

7    was the denial?

8        PRESIDING COMMISSIONER SAWYER:  Two years.

9        DEPUTY DISTRICT ATTORNEY SACHS:  Thank you.

10       INMATE ADLER:  I don't think I'm going to

11   be coming before you people anymore, because I

12   don't think you have jurisdiction over me

13   anymore since we did the matrix.  So you have a

14   nice day.

15       PRESIDING COMMISSIONER SAWYER:  Okay.  Good

16   luck.

17                        --oOo--

18

19

20

21

22

23   PAROLE DENIED TWO YEARS

24   THIS DECISION WILL BE FINAL ON:_____ - 9 2008

25   YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT

26   DATE, THE DECISION IS MODIFIED.

27   VERNON ADLER B-35449 DECISION PAGE 7 10/12/05

47

CERTIFICATE AND
DECLARATION OF TRANSCRIBER


I, STACY WEGNER, a duly designated transcriber,

PETERS SHORTHAND REPORTING, do hereby declare and

certify under penalty of perjury that I have

transcribed tape(s) which total one in number and

cover a total of pages numbered 1 - 46, and which

recording was duly recorded at CORRECTIONAL TRAINING

FACILITY, SOLEDAD, CALIFORNIA, in the matter of the

SUBSEQUENT PAROLE CONSIDERATION HEARING OF VERNON

ADLER, CDC NO. B-35449, ON OCTOBER 12, 2005, and that

the foregoing pages constitute a true, complete, and

accurate transcription of the aforementioned tape to

the best of my ability.

I hereby certify that I am a disinterested

party in the above-mentioned matter and have no

interest in the outcome of the hearing.

Dated October 27, 2005, at Sacramento,

California.


STACY WEGNER
TRANSCRIBER
**PETERS SHORTHAND REPORTING**



CALIFORNIA COMMUNITY RELEASE BOARD

In the Matter of the                              Life Prisoner

Hearing of                        Initial Parole Consideration

ADLER, Vernon L.                                 Parole Denied

B-35449

CMC

 This matter was heard before the Community Release Board
(CRB) on November 29, 1978 at the California Mens Colony.
The hearing panel was composed of J. Sides, Member; F.
Coronado, Member; and T. White, Representative.

 Present at the hearing were:  V. Adler, Prisoner; F.
Metzger, Counsel for Prisoner; H. McManus, Deputy District
Attorney, San Diego County.

 Any others present are identified in the transcript.

 Oral and documentary evidence was submitted and after
due consideration of all the evidence, the panel makes the
following findings:

Legal Status

 On July 7, 1971, the prisoner was received in prison
pursuant to Penal Code (PC) §1168 for a violation of PC §187,
first degree murder (Case No. CR-22437, Count 1).  The
controlling minimum eligible parole (MEPD) date is November
15, 1977.

, FOR
RECORDS OFFICER
USE

Pre-prison
Credit

PC §3041(a) provides that the CRB shall meet with persons sentenced under PC §1168 and shall normally set a parole release date unless, pursuant to PC §3041(b), the Board determines that a parole date cannot be fixed at this hearing.

This hearing is conducted pursuant to the California Administrative Code (CAC), Division 2, Chapter 3, Article 5, which sets forth parole consideration criteria and guidelines for life prisoners implementing PC §3041.

Statement of Facts

On the morning of November 16, 1970, Mrs. Bernice Young discovered the body of Alicia Ross, age 57, covered with a blanket and lying in a pool of blood. The victim's throat had been cut; there were lacerations of the jaw, neck and shoulder area. Two broken, jagged wine bottle necks saturated with blood were found in the room. The room had been ransacked.

Parole Suitability

CAC §2281(a) requires that the panel first determine whether the prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable

ADLER, V. L.  B-35449              -2-
js

FOR
RECORDS OFFICER
USE
Pre-prison
Credit

risk or danger to society if released from prison.  CAC

§2281(c) sets forth circumstances tending to show unsuitabil-

ity and CAC §2281(d) sets forth circumstances tending to show

suitability.  These regulations are guidelines only.

The prisoner is found unsuitable for parole on the basis

of the following circumstances:

1.  He has a prior criminal history dating back to age

13 with serious alcohol abuse;

2.  The instant offense is particularly heinous and the

prisoner has no insight or understanding of his culpability

in this woman's unseemily demise;

3.  The Psychological Evaluation of September 20, 1978

refers the reader to one by the same writer, Dr. Joel Land,

PhD, dated April 18, 1977.  This report is not considered to

be supportive of release in that the successful prognosis for

nonviolence and community adjustment is entirely predicated

on his nonconsumption of alcohol, which is acknowledged as a

serious prior problem and is offense related;

4.  He has, except for approximately two months out of

the past eight years, successfully avoided any kind of

therapy, self-inventory or self-confrontation regarding the

violence demonstrated in this offense;

5.  He has not worked on his serious alcoholic problem

ADLER, V. L.  B-35449                    -3-
js

FOR
RECORDS OFFICER
USE

Pre-prison
Credit

by attendance at any alcohol abuse program;

6. He has, over an eight-year period, successfully avoided any academic and vocational upgrading despite a recommendation to him by a panel of the Adult Authority (AA) on June 14, 1974;

7. Based on the above factors, the panel concludes that the prisoner poses an unreasonable risk of danger to society if released from prison, and the panel cannot project any certain date in the future when this condition would not exist.

Recommendation

In preparation for the next parole consideration hearing, the panel recommends that the prisoner:

1. Should involve himself in academic and/or vocational training;

2. Should involve himself in some type of psychotherapy;

3. Should attend Alcoholics Anonymous or any other institution-approved alcohol abuse program available;

4. Maintain a clean disciplinary record;

5. Take advantage of any self-help programs available to the prisoner;

6. Be retained on psychiatric referral status.

ADLER, V. L.   B-35449                    -4-
js

FOR
RECORDS OFFICER
USE
Pre-prison
Credit

Statements submitted into prisoner's record pursuant to PC §§1203.01 and 3042 have been considered by the Board panel in this hearing.

Order

Due to the foregoing findings and reasons parole is denied.

PC §3041.5(b)(2) provides that within 20 days following any meeting where a parole date has not been set, the Board shall send the prisoner a written statement setting forth the reason or reasons for refusal to set a parole date and at what time the prisoner can reasonably expect to be considered for the setting of a parole date and what beneficial situation in which he/she might participate.

This case shall be scheduled for hearing for parole consideration within one year of the effective date of this decision.

JAN 2 8 1979

EFFECTIVE DATE_____.

ADLER, V. L.   B-35449                    -5-
js

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
(C.C.P. §§ 1013(A), 2015,5)

I, _____ Vernon Adler _____, declare:

I am over 18 years of age and I am party to this action.  I am a
resident of CORRECTIONAL TRAINING FACILITY prison, in the County
of Monterrey, State of California.  My prison address is:

> Vernon Adler _____, CDCR #: B-35449 _____
> CORRECTIONAL TRAINING FACILITY
> P.O. BOX 689, CELL #: East Dorm 109-Low
> SOLEDAD, CA 93960-0689.

On _July 2, 2006_____, I served the attached:

Petition for writ of habeas corpus

on the parties herein by placing true and correct copies
thereof, enclosed in a sealed envelope (verified by prison
staff), with postage thereon fully paid, in the United States
Mail in a deposit box so provided at the above-named institution
in which I am presently confined.  The envelope was addressed as
follows:

Office of the Clerk
Superior Court of California
County of San Diego
County Courthouse
220 W. Broadway
San Diego, CA 92101-3814

Attorney General of California
455 Golden Gate Avenue, Ste. 11000
San Francisco, CA 94102-3364

I declare under penalty of perjury under the laws of the
State of California that the foregoing is true and correct.

Executed on _July 2, 2006_.

_____
Vernon Adler
_____
Declarant