# EXHIBIT 5

FILED
Clerk of the Superior Court
AUG 28 2006
By: SN ,Deputy

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SAN DIEGO

In the Matter of the Application of ) HC 18509
) CR 22437
) 2nd Petition
VERNON ADLER, )
              Petitioner. ) ORDER DENYING PETITION FOR WRIT
) OF HABEAS CORPUS
)
)
)
)

AFTER REVIEWING THE PETITION FOR WRIT OF HABEAS CORPUS AND THE COURT FILE IN THE ABOVE REFERENCED MATTER, THE COURT FINDS AS FOLLOWS:

In 1971, Petitioner was convicted of First Degree Murder, in violation of Penal Code §187. Petitioner was sentenced on June 29, 1971, to life imprisonment with possibility of parole. In the instant Petition for Writ of Habeas Corpus (hereinafter "Petition"), Petitioner alleges that he was entitled to a hearing to fix the actual term of imprisonment, and a hearing to determine a possible parole date, both of which he asserts never occurred.

On April 7, 2006, Petitioner filed his first Petition asserting that was entitled to a hearing to fix the actual term of imprisonment, as well as a hearing to determine a possible parole date, and that such hearings were never held. The Petition was denied.

On July 6, 2006, Petitioner filed the present second Petition, challenging his sixteenth subsequent parole consideration hearing held on October12, 2005, and the decision of the Board of

Parole Hearings ("Board or "BPH") finding him unsuitable for parole. Petitioner argues the Board violated Petitioner's due process rights by denying parole solely on the basis of the unchanging nature of the commitment offense.

The Petition is denied for the reasons stated herein.

First, a defendant is not permitted to try out his contentions piecemeal by successive proceedings attacking the validity of the judgment against him. (*In re Clark* (1993) 5 Cal.4th 750, 767-775, quoting, *In re Connor* (1940) 16 Cal.2d 701, 705.) Unless a petitioner can justify the filing of numerous habeas corpus petitions, the reviewing court may summarily deny the current petition in its entirety. (*In re Clark, supra,* 5 Cal.4th 750, 767-775.) Petitioner has not provided any valid justification for failing to assert his claims, if any, in his first petition. Thus, notwithstanding the reasons set forth below, the Petition may be denied on this basis.

Every petitioner must set forth a *prima facie* statement of facts which would entitle him to habeas corpus relief under existing law. (*In re Bower* (1985) 38 Cal.3d 865, 872.) Vague or conclusory allegations do not warrant habeas relief. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) The petitioner bears the burden of proving the facts upon which he bases his claim for relief. (*In re Riddle* (1962) 57 Cal.2d 848, 852.) The petition should include copies of reasonably available documentary evidence in support of claims, including pertinent portions of hearing transcripts and affidavits or declarations. (*People v. Duvall, supra,* 9 Cal.4th at 474.) A petitioner's unsubstantiated statements do not provide a sufficient basis upon which to prove his claims. (*In re Alvernaz* (1992) 2 Cal.4th 924, 945.)

Petitioner has not met this burden.

**Overview Of Parole Suitability Standards:**

By statute, when determining suitability for parole, the parole board "shall normally set a parole release date" (Pen. Code § 3041(a)) "unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of a current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual." (Pen. Code § 3041(b)). The state Legislature has given the BPH the power to establish the rules and regulations regarding release on parole. (Pen. Code § 3052.) The

BPH regulations require a panel determining parole suitability for a life prisoner to find the prisoner unsuitable for parole if, in the judgment of the panel, the prisoner will pose an unreasonable risk of danger to society if released from prison. (California Code of Regulations, Title 15 [hereafter 15 C.C.R.] §§ 2281(a), 2402(a).) The BPH should consider all relevant, reliable information available to it, including the prisoner's social history, past and present mental state, criminal history, commitment offenses, behavior before, during and after the crime, attitudes toward the crime, and any other information that bears on the prisoner's suitability for release on parole. (15 C.C.R. §§ 2281(b), 2402(b).)

The BPH has also set forth general factors that tend to show suitability and unsuitability for parole. (15 C.C.R. §§ 2281(c)-(d), 2402(c)-(d).) The following are the factors tending to show *unsuitability* for parole that the parole board should consider:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> (C) The victim was abused, defiled or mutilated during or after the offense.
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

/ / /

/ / /

/ / /

The following are the factors tending to show *suitability* for parole that the parole board should consider:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.
(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.
(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.
(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.
(7) Age. The prisoner's present age reduces the probability of recidivism.
(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.
(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release. (15 C.C.R. § 2402(d)).

The precise manner in which these specified factors are considered and balanced lies within the broad discretion of the BPH, but any decision to deny parole cannot be arbitrary or capricious. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 656-657, 677 (*Rosenkrantz*).) Thus, the standard is that a life prisoner such as Petitioner should be granted parole unless the BPH finds, in the exercise of its broad discretion, the prisoner is unsuitable for parole in light of the circumstances specified by statute and by regulation. (See *Rosenkrantz, supra*, 29 Cal.4th at 654-655.) The overriding factor in determining whether a prisoner is suitable for parole is public safety. (Pen. Code § 3041; 15 C.C.R. § 2402(a); *In re Dannenberg* (2005) 34 Cal.4th 1061, 1084 (*Dannenberg*); *In re Scott* (2005) 133 Cal.App.4th 573, 591 (*Scott*).)

Judicial review of the BPH's decision whether a prisoner is suitable for parole is limited to a determination of whether the factual basis for the decision is supported by some evidence in the record presented to the parole board that has some indicia of reliability. (*Rosenkrantz, supra*, 29

Cal.4th at 667; *Scott, supra,* 133 Cal.App.4th at 590-591.) This standard of review requires only a "modicum of evidence." (*Rosenkrantz, supra,* 29 Cal.4th at 677.) It is within the BPH's discretion to decide how to resolve conflicts in the evidence and to decide how much weight to give each factor. (*Id.* at 656, 677.) "It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole." (*Id.* at 677.) As long as the BPH's decision reflects individualized consideration of the specified criteria and legal standards, and is not arbitrary or capricious, the court's review is limited to ascertaining whether there is some evidence in the record that supports the decision. (*Id.*)

**Petitioner's Claims On Habeas Corpus:**

Petitioner argues that his due process rights under the 5th and 14th Amendment were violated at his sixteenth subsequent parole consideration hearing based solely on the Board's continued use of unchanging factors, such as the nature of his commitment offense. However, Petitioner's claims are without merit because there is "some evidence" to support the Board's decision finding Petitioner unsuitable for release on parole.

The federal courts indeed have found the language of Penal Code § 3041 creates a liberty interest in release on parole, which is protected by the procedural safeguards of the due process clause. (*Biggs v. Terhune* (9th Cir. 2003) 334 F.3d 610, 614; *McQuillion v. Duncan* (9th Cir. 2002) 306 F.3d. 895, 902-903; see also, *Rosenkrantz, supra,* 29 Cal.4th at 653.) However, the California Supreme Court has recently found that whether a prisoner is suitable for parole trumps the prisoner's expectancy of a set parole date. (*Dannenberg, supra,* 34 Cal.4th at 1070-1071 ["The statutory scheme, viewed as a whole, thus clearly elevates a life prisoner's individual suitability for parole above the inmate's expectancy in early setting of a fixed and "uniform" parole date."]) Thus, there is no violation of a prisoner's liberty interest if the parole board properly denied parole.

A decision to deny parole can be based on the nature of the prisoner's underlying offense alone, as long as the parole board has given due consideration to all applicable factors regarding suitability for parole (*Rosenkrantz, supra,* 29 Cal.4th at 677, 682-683; see also, *Scott, supra,* 133 Cal.App.4th at 594-595), and the circumstances of the commitment offense reasonably could be

considered more aggravated or more violent than the minimum necessary to sustain a conviction for that offense (*Rosenkrantz, supra,* at 678, 683; see also, *Dannenberg, supra,* 34 Cal.4th at 1098.)

The parole board in this case did not rely solely on Petitioner's commitment offense in denying him parole. The BPH gave due consideration to all the applicable factors regarding suitability for parole as set forth in 15 C.C.R. §2402(c), (d). First, the BPH considered the underlying commitment offense. Petitioner was in the room with Alicia Katherine Ross, age 57, in her hotel room. She was found the next day with her throat cut, and there were two broken jagged wine bottlenecks saturated in blood found in the room. Petitioner was apprehended that night, at 2:15 a.m., for being drunk in public. He had blood on his clothes, shoes, pants, and had multiple cuts and abrasions consistent with the type of superficial cuts produced by broken glass. His shoe also contained small particles of cut glass lodged into his sole. (Petition, Exhibit A at 1:14-27; 2:1-5.) The Board found that the offense was committed in an especially cruel and callous manner (15 C.C.R. §2402(c)(1)), in that Petitioner sliced Ms. Ross's throat and left her bleeding to death on her bed, which demonstrated an exceptionally callous disregard for human suffering. (Ex. A at 1:17-22.) Although the Board did not know the motive for the crime (15 C.C.R. §2402(c)(1)(E)) they found it inexplicable that Petitioner did this to the 57 year-old woman. (Exhibit A at 2:1-6.)

The Board also considered Petitioner's prior criminal history. (15 C.C.R. §2402(c)(2), (3)). Petitioner has an escalating pattern of criminality in his juvenile history, starting at the age of eight when he ran away from home. Petitioner's juvenile record resulted in his placement in training school and revocation of probation throughout his adolescence years. In 1958, until the date of the instant offense, Petitioner committed offenses such as burglary, grand larceny on seven occasions, intoxication, forgery, drunk driving, and auto theft. The Board found that Petitioner failed to profit from society's previous attempts to correct his criminality, such as juvenile probation, juvenile camp, county jail, prison, parole, and probation. (Ex. A at 2:6-23.)

The Board next considered Petitioner's institutional behavior. (15 C.C.R. §2402(c)(6)). The Board commended Petitioner for remaining relatively disciplinary-free while incarcerated. Petitioner has only received 6, 115's, the last one being in 1985, for contraband and money. (Petition, Exhibit A at 2:23-27.) The Board further commended Petitioner on his work in the PIA

wood furniture factory doing the sanding and staining. Petitioner received exceptional work reports and got his high school education while in custody in Minnesota. (Petition, Ex. A at 3:1-10.)

The Board next considered psychological factors. (15 C.C.R. §2402(c)(5)). The BPH reviewed Petitioner's psychological report, which found Petitioner a viable candidate for parole. The report stated Petitioner was competent and responsible for his behavior. Petitioner had the capacity to abide by institutional standards and has done so during his incarceration. Petitioner does not have a mental health disorder. However, Petitioner has acknowledged a significant problem with alcohol in his past. The Board also reviewed the responses they received from the 3042 notices from the San Diego Office of the District Attorney, which were opposed to parole. (Petition, Exhibit A at 4:10-13.)

The Board next considered Petitioner's parole plans. (15 C.C.R. §2402(d)(8)). The Board found that Petitioner had no parole plans. Petitioner had no employment, and no one outside of prison that could be an advocate for Petitioner. Given Petitioner's history of drinking problems, without having advocates outside of prison, it would be difficult for Petitioner to come up with some parole plans and a place to live. The Board stated their concern that without any parole plans, Petitioner might likely re-offend. The Board advised Petitioner that he needs to solidify his parole plans, such as finding a place to live, making some job contacts, and getting some self-help such as AA, before his next hearing. (Petition, Exhibit A at 4:14-27; 5:1-27; 6:1-11.)

After weighing the above factors, the BPH determined the positive aspects did not outweigh the unsuitability for parole, and denied parole for two years.

The Board stated:

> I know you're working and you certainly should be commended for the work that you do and for getting your high school diploma and your global function is good, but we're going to have to see something going on the outside with your place to live, and I'm not talking about a halfway house....The chance of re-offending is much greater, so what we want to see is some plans, some parole plans, a place to live, some job contacts based on what you do best, and not—we don't necessarily need to have a job offer, but at least tell us what you're going to do and what you're going to be looking for and what your skill level is and how much you're going to make. Do some research, do some homework on those things. We've got some recommendations of course, I can talk until I'm blue in the face with AA, but get self-help. If not AA, find another source that

has ties to the outside. Stay discipline free, earn positive chronos. (Petition, Exhibit A at 5:10-27; 6:1-11.)

Based on the above, there is "some evidence" in the record to support the Board's finding that Petitioner is unsuitable for parole. This Court finds no abuse of the Board's discretion is apparent in this case.

Therefore, the Petition for Writ of Habeas Corpus is DENIED, in its entirety.

A copy of this order shall be served upon 1) Petitioner and 2) the Office of the San Diego County District Attorney (Appellate Division).

IT IS SO ORDERED.

DATED: 8/26/06

TIMOTHY R. WALSH
JUDGE OF THE SUPERIOR COURT

I hereby certify that the foregoing instrument is a full, true & correct copy of the original on file in this office, that said document has not been revoked, annulled or set aside, and it is in full force and effect.

Attest: AUG 2 8 2006 @ 4:00 pm
Clerk of the Superior Court of the State of California, in and for the County of San Diego
By A. Nakao  Deputy

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>☒ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814<br>☐ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827<br>☐ FAMILY COURT, 1501 6TH AVE., SAN DIEGO, CA 92101-3296<br>☐ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105<br>☐ KEARNY MESA BRANCH, 8950 CLAIREMONT MESA BLVD., SAN DIEGO, CA 92123-1187<br>☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643<br>☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941<br>☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200<br>☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649<br>☐ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792<br>☐ JUVENILE COURT, 1701 MISSION AVE., OCEANSIDE, CA 92054-7102 | FOR COURT USE ONLY<br><br>F I L E D<br>Clerk of the Superior Court<br><br>SEP 0 1 2006<br><br>By: SN , Deputy |
|---|---|
| PLAINTIFF(S)/PETITIONER(S)<br>The People of The State of California | |
| DEFENDANT(S)/RESPONDENT(S)<br>VERNON ADLER | JUDGE:<br>DEPT: |
| CLERK'S CERTIFICATE OF SERVICE BY MAIL<br>(CCP 1013a(4)) | CASE NUMBER<br>HC 18509<br>CR 22437 |

I, **STEPHEN LOVE**, certify that: I am not a party to the above-entitled case; that on the date shown below, I served the following document(s):
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

on the parties shown below by placing a true copy in a separate envelope, addressed as shown below; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at: ☒ San Diego ☐ Vista ☐ El Cajon ☐ Chula Vista ☐ Oceanside ☐ Ramona, California.

| NAME | ADDRESS |
|---|---|
| VERNON ADLER | PO BOX 689 EAST DORM 109-LOW<br>SOLEDAD, CA 93960-0689 |
| SAN DIEGO COUNTY DISTRICT ATTORNEY'S OFFICE<br>APPELLATE DIVISION | P.O. BOX 121011<br>SAN DIEGO, CA 92112-1011 |

STEPHEN LOVE
CLERK OF THE SUPERIOR COURT

By _____, Deputy

Date: 09/01/06

SDSC CIV-286(Rev 11-99)     CLERK'S CERTIFICATE OF SERVICE BY MAIL