# EXHIBIT 6

*Copy*

REC'D CLS DOCKETING

MC-275

Name    Vernon Adler

Address    P.O. Box 689

Soledad, CA 93960-0689

East Dorm 109-Low

CDC or ID Number    **B-35449**

F I L E D

Stephan M. Kelly, Clerk

OCT 2 6 2006

Court of Appeal Fourth District

## CALIFORNIA COURTS OF APPEAL

## FOURTH APPELLATE DISTRICT

(Court)

SAN DIEGO

| VERNON ADLER | PETITION FOR WRIT OF HABEAS CORPUS |
|---|---|

Petitioner

vs.

B. CURRY, Warden (A), et al.

Respondent

No.    **D 049680**

*(To be supplied by the Clerk of the Court)*

EXHIBITS SEPARATELY BOUND

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

**This petition concerns:**

[ ] A conviction          [XX] Parole

[ ] A sentence          [ ] Credits

[ ] Jail or prison conditions          [ ] Prison discipline

[XX] Other *(specify)*: Board of Parole Hearings fails to set parole release date

1. Your name:    Vernon Adler

2. Where are you incarcerated?    Correctional Training Facility - East Dorm

3. Why are you in custody?    [XX] Criminal Conviction    [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   First Degree Murder

b. Penal or other code sections:    187 - 1168

c. Name and location of sentencing or committing court:    Superior Court of California - San Diego

d. Case number:    CR-22437

e. Date convicted or committed:    Convicted June 2, 1971

f. Date sentenced:    Sentenced June 29, 1971

g. Length of sentence:    Life with the possibility of parole.

h. When do you expect to be released?    Years ago.

i. Were you represented by counsel in the trial court?    [X] Yes.    [ ] No.    If yes, state the attorney's name and address:

   Mr. Robert F. Bourne, 2550 5th Ave., Suite 720
   San Diego, CA 92103-6624 (Last Known Address)

4. What was the LAST plea you entered? *(check one)*

   [X] Not guilty    [ ] Guilty    [ ] Nolo Contendere    [ ] Other:

5. If you pleaded not guilty, what kind of trial did you have?

   [X] Jury    [ ] Judge without a jury    [ ] Submitted on transcript    [ ] Awaiting trial

INTRODUCTION

More than Thirty Five (35) years have past since Vernon Adler began his continued incarceration in the California Prison System on July 7, 1971, while Mr. Adler has presented himself for parole over fifteen (15) times, he is being denied parole on factors of his past he can "never" change.

Since Mr. Adler was convicted a entire generation has past, Neil Armstrong walked on the moon, the Beatles broke up, the then Baltimore Colts beat the Dallas Cowboys in Superbowl 5, the Vietnam War ended and Watergate begin. The late William H. Rehniquist, recent victim to cancer, become Associate Justice to the U.S. Supreme Court in 1972, elevated to Chief Justice in 1986, to be succeeded by the youngest man in history Honorable John Roberts. Patty Hearst was kidnapped, later convicted of robberies in 1976, pardoned 1979 and her kidnappers sentenced to 10 years to life in 1978, were paroled 1983, twenty three (23) years ago. And, the California Prison System was considered to be one of the most violent in the country.

During the 35 years of trials our country has endured, petitioner has not involved himself in violent acts or used any illegal substances. Petitioner's psych reports show petitioner is a programming inmate, who has taken trades, upgraded his education, matured well, is not bitter, and the reasonable few institutional write-ups (over a 35 year time span) are for non-violent, minor, prison rule violations, which consist of, six 115's (last one is 1985, now 21 years old) and six 128's (last one in 1998, now 8 years old). Both the 115's and 128's, are so old and non-violent, they equate to broken tail lights or minor work infractions. These minor infractions are therefore worthless in the determination of petitioner's suitability readiness for parole.

The numerous changes in California Penal Law and parole consideration

3

hearings rules and regulations, since petitioner's conviction in 1971 are being used unlawfully to support a finding of unsuitability for parole in violation of ex post facto principals of law. During petitioner's 16th parole consideration hearing, held October 12, 2005, (current hearing being challenged) (Exhibits bound separately) (transcripts of hearings marked Ex A) petitioner requested the Board of Parole Hearings (hereafter Board) to apply section 2292(a) which states all life prisoners convicted prior to July 1, 1977 shall be heard under the rules in effect prior to 7/1/77 (Id. pg 5). The Board refused. And declared they would hold the hearing under current Laws, Rules, and Regulations (Id. pg 5-6).

Notwithstanding the mandate of <u>Rodriquez</u>, infra, and further assuming, arguendo, petitioner's commitment offense supported denial of parole at petitioner's 1st, 2nd, 3rd, 4th, 5th, 6th, 7th, even his 8th hearing, did the facts of the crime support denial at the 9th? 10th? 11th? 12th? 13th? 14th? 15th? What about this 16th hearing petitioner is now challenging? When does overwhelming evidence of a de facto change in sentence from life with, to life without parole, by the Board of Parole Hearings mandate the granting of a writ of habeas corpus?

Must this court address the above violation despite the fact the high court of California ordered Parole Authorities to set primary terms for "ALL" inmates in <u>In re Rodriguez</u>, (1975) 14 Cal.3d 639? Yes. Clearly parole authorities have no intention of following laws issued by the California Supreme Court when the law favors the prisoner. The high court in (2005) affirmed <u>Rodriqurez</u>, supra, in <u>In re Dannenberg</u>, 23 Cal.Rptr.3d 417, no doubt, without court intervention, Parole Authorities will "not" set petitioner's primary term. Thus, Prima Facie has been established.

In 1982, the California Supreme Court in <u>In re Stanworth</u> 33 Cal.3d 176,

ruled that failure to consider persons sentenced under the Indeterminate

Sentence Law (ISL) prior to 1976 violates ex post facto. It's undisputed that

petitioner's rights are being violated, requiring an order to show cause be

issued along with appointment of counsel.


## PETITIONER'S CONTENTIONS

1. Petitioner's due process rights under the 5th and 14th Amend. of the

U.S. Const. and State Law were violated at petitioner's 16th (sixteenth)

subsequent parole consideration hearing held October 12, 2005 by the Board's

continued use of unchanging factors.


2. Petitioner has been denied his legal right to have a primary term fixed by

the Adult Authority, currently Board of Parole Hearings, as ordered by the

California Supreme Court in In re Rodriquez, 14 Cal.3d 639 (1975) reaffirmed

in In re Dannenberg, 23 Cal.Rptr.3d 417 (2005).


3. Decision petitioner is unsuitable for parole is "arbitrary and capricious"

the "record" is void of "evidence" to support a finding petitioner "currently"

poses an unreasonable threat to "Public Safety" if released on parole.


Petitioner submits, as Exhibit B, a Compendium of Life Inmates'

Demographics, California Department of Corrections, Compiled February 22,

1997, Statistics for 1945-1996. This Compendium, as petitioner will use to

support his grounds for relief, shows numerous examples of life crimes more

violent, with past criminal histories more extreme and yet these life term

inmates were paroled by the Board. Clear examples of proof petitioner has

been dealt with in a "arbitrary and capricious" manner.

A myth has evolved that the Indeterminate Sentence Law (ISL) and the
Determinate Sentence Law (DSL) are combined, the myth is easy to dispel.  The
DSL, enacted into law in 1976, required set terms (determined by state
lawmakers) for all crimes, except murder and kidnapping.  Those crimes
remained a ISL crime in order to rehabilitate the offender, unlike DSL
offender who's sentence was a fixed amount for punishment.  The ISL offender
was, and is, required to rehabilitate prior to release.  The duty of the
parole board, therefore, is to compare the ISL offender's rehabilitation to
risk to "public safety".  Prior to 1976 this required the parole panel to
judge the offender, not the offense, for suitability.

Currently, the parole panels use penal code 3041 (b) to find an ISL
offender unsuitability because of the offense rather than the rehabilitative
efforts of the offender, while this is upside down reasoning and certainly
unconstitutional, changes of laws 5 years after petitioner's conviction is
clearly a unconstitutional violation of ex post facto.

Clear "evidence" shows, for over 35 years, petitioner has not committed a
violent act towards any person, be it, Correction Staff, Prison Staff, or
Prison Inmate, clearly petitioner has rehabilitated, what "evidence" remains
to support a finding of current "risk" to "public safety".  NONE!

### STANDARD FOR REVIEW

Petitioner, being pro per, asks this court to use less stringent standards
than formal pleadings drafted by lawyers, <u>Haines v. Kerner</u> (1972) 404
U.S. 519.  Petitioner also request this court to apply the factor of "Public
Safety", i.e. current risk, which the California Supreme Court has equated the
term "suitable" with "safety", see <u>Dannenberg</u>, supra, combined with, <u>In re</u>

4(b)

Scott, 133 Cal.App.4th 573.  Commitment offense can negate suitability only if the crime "reliably" established by "evidence" in the "record" rationally indicate that the offender will present an unreasonable "public safety" risk if released from prison.  The predictive value of a crime is very questionable after a long period of time.  Denials of release solely on the basis of a crime or past crimes "warrant" especially close scrutiny.  The instant case, 35 years old, is a classic example of one requiring close judicial scrutiny.

## BOARD OF PAROLE HEARINGS REASON FOR PAROLE DENIAL

1.  Prisoner is not suitable for parole and would pose a unreasonable risk of danger to society or threat to public safety if released from prison.  This crime demonstrates an exceptionally callous disregard for human suffering (Ex A pg 40).

2.  His previous record...burglary, larceny, forgery, auto theft. (Ex A)

3.  The panel also made issue of AA and lack of parole plans (Id. 43-44).

   This third reason alleged by the BPH is meritless.  First, AA has been found to be an unlawful requirement for parole.  Second, the Board members are incorrect, prison AA does not advocate, help, or associate with parolees, most, if not all prison AA instructors, are prison employees and for safety reasons will not be placed in a advocate position for former inmates for obvious reasons.  Third, "no evidence" after 35 years of sobriety to support a risk to "public safety".  Fourth, parole plans or an allegation of lack of housing and a job, are not a requirement for a suitability finding.

Petitioner filed a petition for writ of habeas corpus in the Superior Court of California, County of San Diego, his county of commitment, case no. HC 18509-CR 22437. That court denied the petition on June 01, 2006, (Ex C) on the basis that petitioner had previously filed similar issues, citing In re Lynch, (1972) 8 Cal.3d 410, 439, fn.26; In re Clark, (1993) 5 Cal.4th 750, 769. That a petition for writ of habeas corpus has once been denied, a new application will be denied unless there has been a change in the facts or the law.

That is the case at bar, petitioner filed in 1996 claiming he "was entitled to a hearing to fix the actual term of imprisonment", the court denied. Apparently the court assumed petitioner was not entitled a primary term fixed under In re Rodriquez, supra, by the California Supreme Courts affirmance of Rodriquez in Dannenberg supra, petitioner's petition must be heard under that affirmance by the high court in 2005, thus the June 01, 2006 (Ex C) denial is contrary to California Supreme Court Law.

To ensure the principal of exhaustion, petition filed a new petition in the above Superior Court, case no. HC 18509-CR 22437-2nd petition (Ex D), this time challenging his sixteen subsequent parole consideration hearing held October 12, 2005, claiming his due process rights are being violated by continued denial of parole based on unchanging factors. The Court denied. The denial order alleged, petitioner is not permitted to try out contentions piecemeal by successive proceedings. This reasoning fails. Petitioner is asking the court to order the Authorities to set his primary term as mandated by the California Supreme Court; in 1975 reaffirmed 2005 (addressed supra) the Law that applies to petitioner, who was convicted prior to July 1, 1977.

Next, the court applied California Penal Code section 3041 (b) to deny the petition, this law was not enacted until after petitioner's conviction,

4(d)

therefore is a clear violation of ex post facto.

Further, petitioner has been to sixteen (16) parole hearing, at each he
has been denied the setting of a parole date. Contrary to the Superior Courts
claim, petitioner is entitled to file a new application for writ of habeas
corpus after each parole consideration hearing.

GROUNDS FOR RELIEF

**GROUND ONE:**

Petitioner's due process rights under the 5th and 14th Amend. of the
U.S. Const. and State Law were violated at petitioner's 16th (sixteenth)
subsequent parole consideration hearing held October 12, 2005 (Ex A) by the
Board's continued use of unchanging factors.

The Board's decision to deny parole was based solely on petitioner's
conviction and past history (Id. pg 40-41) (committed over 35 years ago)
(petitioner request judicial notice be taken that this is the sixteenth time
parole has been denied due to his conviction and past history) factors
petitioner can **never** change, an undisputed fact.

Again, petitioner has been to (16) hearings, (his minimum eligible parole
date past on November 15, 1977, 29 years ago, Id. pg 1) at each, the same
factors are used to deny parole in violation of petitioner's protected liberty
interest in parole. This is a classic example of the Board turning a sentence
from life with, into a de facto sentence of life without, the possibility of
parole, which Honorable Judge David S. Wesley (June 26, 2006) found continual
parole denials based on the forementioned unchanging factors converts a
possible parole sentence into a life without parole sentence which is not
state law and ordered Rosenkrantz paroled, In re Rosenkrantz, BH003529; appeal

4(e)

denied B192676; California Supreme Court review denied S145504, (Ex E). Also, see Irons v. Warden, 358 F.Supp.2d 936, 947 (in assessing any due process violation is the fact that continued reliance on unchanging circumstances transforms an offense for which California Law provides eligibility for parole into a de facto life imprisonment without parole).

Mandatory language contained in California Penal Code (PC) 3041(a) (which does not violate ex post facto) imposes a obligation to grant parole when certain conditions have been met, thus creating a legally binding protected liberty interest in parole, a presumption that parole release will be granted; Greenholtz v. Inmates of Nebraska, 442 U.S. 15; McQuillon v. Duncan, 306 F.3d. 901-2; Biggs v. Terhume, 334 F.3d 914; Irons, supra; Sass v. California Board of Prison Terms, (2006)     F.3d     , 2006 DJDAR     . These cases hold that California created an enforceable liberty interest in parole, further, petitioner is entitled to the law under PC 3041(a) that a date shall normally be set (notwithstanding PC 3041(b) and Dannenberg 34 Cal. 1070-1071 application of a denial of 'uniform terms' as quoted by the Superior Court (Ex D) clearly violates petitioner's protection under ex post facto).

The "some evidence" standard of Superintendent v. Hill, (1985) 472 U.S. 445, 457, supports a finding that petitioner has met all conditions of rehabilitation espoused by the prison system (Ex A) and all suitability factors petitioner can obtain in the California Prison System, i.e. stable social history, signs of remorse, age (now 65 years old), understanding and plans for the future (petitioner has developed marketable skills that can be put to use upon release) and institutional behavior (petitioner has an excellent record (considering continued incarceration for 35 years and **"no"** evidence of any violent or serious behavior) demonstrates an enhanced ability to function within the law upon release, evidence found by the Board.

Further, petitioner is housed at Correctional Training Facility - East
Dormitory - housing unit, designed for non-violent, programming,
rehabilitated, working individuals, (petitioner is working in PIA furniture
factory) as such, petitioner has been found to be "low risk" and "non-violent"
when considering risk to "public safety" 'evidenced' by prison administrators
in Johnson v. California 321 F.3d 791, 795. In Greenholtz, supra, the
U.S. Supreme Court found: "The behavior record of an inmate during confinement
is critical in determining the degree the inmate is prepared to adjust to
parole release". In Biggs, supra, the Ninth Circuit found:  the "board is
initially 'justified' in denying parole based on the commitment offense or
criminal history"  the court warned  "continued use of those factors at
subsequent parole hearings would run contrary to the rehabilitative goals
espoused by the prison system resulting in a constitutional due process
violation. The court concluded by saying:  continued denials in face of
exemplary behavior and overwhelming evidence of rehabilitation violates an
inmate's protected liberty interest in parole.

Numerous case have found such a violation, Judge Wesley (cited supra) and
the below listed sample few: Kunkler v. Muntz, CV 05-6473 TJH(E)(March 15,
2006); Clay v. Kane, 04-8663-VAP(AJW)(C.D.CAL. December 2, 2005); Saif'ullah
v. Carey, 02-2664-MCE(DAD) 2005 WL 1555389 (E.D.Cal. June 28, 2005); Yellen
v. Butler, S-01-2398-MCE (E.D.Cal. March 31, 2004); Masoner v. State,
03-1261-ER 2004 WL 1080177 (E.D.Cal. Jan 23, 2004).

The California Supreme Court in Dannenberg, 23 Cal.Rptr.3d at 436 (quoting
Rodriquez 122 Cal.Rptr. 552) found the law requires Authorities to set actual
maximum terms for "ALL" inmates, proportionate to their individual
culpability, this responsibility to fix a prisoner's actual term derives from
former PC 3020. As petitioner will show in Ground Two, through the Compendium

of Life Inmates' Demographics (Ex B) his length of time served is constitutionally disproportionate.

In the instant case, petitioner was convicted in 1971 (35 years ago) (4 years prior to Rodriquez, supra, clearly the Authorities are failing to follow the duty to set a maximum term.  The California Supreme Court in In re Stanworth, 33 Cal.3d at 188 ruled that if the standard of punishment has been altered to petitioner's prejudice, ex post facto has been violated.

The failure of the Authorities to follow the law set in 1975 in Rodriquez and again in 2005 as affirmed in Dannenberg, which requires a primary term be fixed, clearly supports cause for court intervention.  The Board has refused for 30 plus years and 16 parole hearings to follow the law as it pertains to petitioner, who was eligible for parole after serving 7 years.  Petitioner was not sentenced to life without parole, petitioner's only hope for parole is the granting of this petition for writ of habeas corpus.

**GROUND TWO:**

Petitioner has been denied his legal right to have a primary term fixed by the Adult Authority, currently Board of Parole Hearings, as ordered by the California Supreme Court in In re Rodriquez, 14 Cal.3d 639 (1975) reaffirmed in In re Dannenberg, 23 Cal.Rptr.3d 417 (2005).

Petitioner had and has a legal right under the law to have a primary term fixed (or it was fixed, yet never disclosed to petitioner) that is constitutionally proportionate to his individual culpability.  As explained this term fixing responsibility of the Authorities to fix petitioner's maximum term has been violated.

In Dannenberg at 421, the court held that "life inmates who believe that

such Board decisions have kept them confined beyond the time the Constitution allows for their particular criminal conduct may take their claims to court, petitioner now invokes this right. Specifically, petitioner asserts his continued incarceration of 35 years is grossly disproportionate compared to the numerous life inmates (who paroled years ago) convicted of crimes more serious than petitioner, see Compendium of Life Inmates' Demographics (Ex B) petitioner will list the follow examples:

DARRELL KEMP:  Committed a sadistic, vicious, premeditated rape murder of a very young lady who was about to be married, served 19 years (Id. pg  8).
CHARLES TURVILLE:  Committed torture/murder, served 12 years (Id. pg 12).
DENNIS STANWORTH:  Raped and killed two women, served 17 years (Id. pg 15).
TERRY MABRY:  Murdered a Police Officer and had prior criminal history of armed robberies, forgery, car theft, served 14 years (Id. pg 19).
GALEN LOKEY:  Kidnap – murder, served 9 years (Id. pg 21).
WILLIAM FAIN:  Murder, three kidnaps, two rapes, sexual perversion, sentence to two life sentences (consecutive) served 15 years / 8 Months (Id. pg 22).
TED SUBIA:  Murdered his victim using a claw type hammer to the head, the head was so crushed the coroner could not determine how many blows were inflicted, the conclusion was severe overkill, time served 8 years (Id. pg 23).
CHARLES JOLLY:  Kidnapped, raped, and murdered a woman by slashing her body beyond identification,  time served 11 years (Id. pg 33).
ROBERT HILL:  Raped, sodomized, and murdered a pregnant housewife, so there would be no witness to identity him, time served 13 years (Id. pg 40).
LU:  Committed two vicious, animal like murders with a hatchet, time served 13 years (Id. pg 45).
JOSE MORALES:  His victim had her thumb amputated, face slashed, and was shot

in the head, convicted for murder - mutilation, served 9 years / 11 months, paroled to a halfway house (Id. pg 53).

VINCENT BOZZO:  Committed murder during armed robbery, released 1990 after serving 14 years (Id. pg 91).

BILLY McILVAINE:  A Police Officer:  Convicted of torture/murder.  McIlvaine pretended to arrest David Dominguez, took him to his home, tortured him, then shot him in the head.  Paroled in 1992 after serving 15 years / 6 months, his parole affirmed by Governor Pete Wilson, who had sought McIlvanie's release for many years (Id. pg 94).

The mandate to fix a primary term to "ALL" life term inamtes convicted prior to 1975 in Rodriquez has clearly not been carried out by the authorities (or failed to disclose to petitioner or document the primary term in petitioner's C-file) worse petitioner now suffers confinement which is beyond constitution limits which Rodriquez sought to prevent.

Clearly, petitioner's 35 years exceeds the time served by most first degree murderers convicted prior to 1977, and whose facts demonstrate more violence than the gravity of petitioner commitment offense.  The matrix as it applies to petitioner (Ex B pg 7) shows:  CIRCUMSTANCES - section C. Severe Trauma - VICTIM section II. Prior Relationship, time to serve 13-15-17, petitioner and the victim attended a party, were seen to consume numerous alcoholic drinks, victim's throat was cut by a broken wine bottle.

Suitability finding under PC 3041 (b) does not apply, this violates ex post facto, the application of Dannenberg suitability finding first, "uniform terms" setting second, also violates ex post facto.

Petitioner, convicted prior to the changes in law in 1976, requires the Board to set petitioner's primary term, and requires petitioner's term be fixed "unform" and proportionate to petitioner's individual culpability,

4(j)

i.e. according to the forementioned "matrix" which clearly shows petitioner should have served no more than 17 years, petitioner has now served an excess of 18 years, so far, clear "evidence" of gross disproportionate time served.

The proper means to obtain a declaration of a primary (maximum) term is by Habeas Corpus, <u>In re Montenegro</u>, 246 C.A.2d. 515 cause for this petition.


**GROUND THREE:**


Decision petitioner is unsuitable for parole is "arbitrary and capricious" the "record" is void of "evidence" to support a finding petitioner "currently" poses an unreasonable threat to "Public Safety" if released on parole.

Specifically petitioner challenges the Board's decision to denial parole, on the baseless finding that petitioner currently poses a current risk to "public safety" due to the gravity of his offense and past history (both 35 years removed), at his SIXTEENTH (16th) subsequent parole consideration hearing held October 12, 2005 Ex A).

The factor statutorily required to be considered, and the overarching consideration, is "Public Safety", the California Supreme Court has equated the term "suitable" with "safety" <u>In re Dannenberg</u>, (2005) 34 Cal.4th 1061, 1091. <u>In re Scott</u>, 133 Cal.App.4th 573 the commitment offense can negate suitability only if circumstances of the crime "reliably" established by "evidence" in the "record" rationally indicate that the offender will present an unreasonable public safety risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time. Thus, "denial" of release solely on the basis of the gravity of the commitment offense "warrants" especially close scrutiny.

PETITIONER PRESENTS SUCH A CASE.

Numerous courts have found the predictive value of offenses declines over

time and California Law does not allow the Board to convert a life with parole
sentence into a life without parole sentence, see Bair v. Folsom State Prison,
2005 WL 2219220 *12 n.3 (E.D.Cal. 2005), report and Recommendation adopted by,
2005 WL 3081634 (E.D.Cal. 2005); and Rosenkrantz v. Marshall, 2006 WL 2327085
(C.D. Cal. 2006); and California Superior Court Judge David S. Wesley found
continual parole denials based on the forementioned unchanging factors
converts a possible parole sentence into a life without parole sentence which
is "not" California Law, In re Rosenkrantz, BH003529 (same Robert Rosenkrantz
29 Cal.4th 616); California Court of Appeals summarily denied writ of
supersedeas/application for stay no. B192676; California Supreme Court denied
review and application for stay no. S145504, (Ex E).

Judge Wesley also found that the Board's decision may not rely on an
opposition by the county's District Attorney as a factor to deny parole (Id.
pg 2). Judge Wesley also found 20 years of prison incarceration time exceeds
the maximum term for first degree murder (Id. pg 3).

Clearly, petitioner's 35 years of incarceration demonstrates a classic
example of sentence conversion to life without parole by the Board, and the
"record" is void of "evidence" to support a finding petitioner poses a risk to
"public safety", both of which requires petitioner's parole.

The Board cannot find petitioner's gains and his ability to maintain them
over an extended period of time supported by the evidence presented, the
Boards failure to consider all of petitioner's rehabilitative efforts,
espoused by the prison system, violates due process, and petitioner has held
these gains for well over 10 year, 20 years? 30 years? Petitioner has "no"
prison record of violent behavior.

The prison system has determined: 1) petitioner's offense was "not
unusually violent" 2) classified petitioner at a low public safety risk level

two inmate and 3) now houses petitioner in Correctional Training Facility II -
East Dormitory - designed for non-violent, programming, working individuals,
such inmate's are considered "low risk" and "non-violent" as testified to in
the case Johnson v. California, 321 F.3d 791,795. The Board's failure to
consider petitioner "risk to public safety" based on his prison housing and
programming has to be a violation of due process. This is also "evidence"
petitioner has the ability to find and maintain a job and decent housing.

Lastly, the Boards findings that petitioner's inability to find housing
and a job (while incarcerated) is "not" a factor to deny parole (Ex A pg 44).

Even the Board admits petitioner has exceeded his time on line 16-21 (Id.)
they said: "once you get a date, you've been in here so long, you won't have
to worry about staying any longer once you date is established. So you're
talking about 120 days, and all of a sudden you go out the front gate." THE
BOARD CONCEDES PETITIONER HAS PAST HIS TIME TO SERVE.

While unclear, it appears the Board is saying marketable skills and a
halfway house is "not" good enough to get a parole date, of course such is
"not" a factor to deny parole.

Again, the Board's sole reliance on the gravity of the offense to justify
denial of parole can be "initially" justified as fulfilling the requirements
set forth by state law. (Biggs v. Terhune (9th Cir. 2003) 334 F.3d 910, 916.)
However, over time, should petitioner continue to demonstrate exemplary
behavior and evidence of rehabilitation, denying a parole date simply because
of the nature of the commitment offense raises serious questions involving his
liberty interest in parole. (Id. at p. 917.) (Ex B). Thus, petitioner's
commitment offense, assuming the offense met the In re Dannenberg, (2005) 34
Cal.4th 1061 test, supported denial at petitioner's initial hearing, the crime
"no longer" supports denial in face of the Board's finding that petitioner's

-4(m)-

rehabilitation supports parole.

During trial proceedings, the district attorney did offer to reduce the charge to second degree murder in exchange for a guilty plea, (Ex K), this is also evidence that petitioner's crime does not warrant death in prison.

## PETITIONER'S REHABILITATION ACHIEVEMENTS

Petitioner has availed himself to numerous self-help, education, vocation courses, of most important are: Achieved his GED, Vocational Welding, attended Alcoholics Anonymous continuously for 13 years, (Ex G), petitioner also has achieved Certificates in A/C Electronics, D/C Electronics, Electronic Circuits, Semiconductor Devices, Electronic Communications, Digital Techniques, Microprocessors, for complication of Vocational Electronics, and a Certificate of Proficiency as a Furniture Painter, Stainer, Sprayer, Number of Hours achieved in this trade 10,000+ hours (Ex J).

## PETITIONER'S PRIOR CRIMINAL HISTORY

While petitioner had a prior record, (One (1) Burglary, One (1) Grand Larceny, One (1) Forgery and One (1) Auto Theft (Ex F) (none of these offenses involved injury to others)) the "predictive value" of said offenses, from 35 years ago, hold no "evidentiary support".

## PSYCHIATRIC EVALUATION

2004 report written by S. Stack and 1999 report written by Steven J. Terrini (submitted as Ex G) both finds that petitioner does "not" currently pose a risk to "public safety" and both support petitioner's release on parole.

It should be noted that the Board read, yet failed to actual consider these recommendations. Specifically, Dr. Stack found Inmate Adler a viable

candidate for parole (Ex A pg 37 & 43). The Board, however, stated that these recommendations are "very good" "but we're the ones that have to make the final decision" (Id. at pg 37 ln 15-16) clearly the panel did not consider this to be a factor which firmly supports parole for petitioner.

## PETITIONER'S SOCIAL RELATIONSHIPS

Petitioner had a good social history with his sister, and friend (Ex G & H) for many years, currently his work record shows he has a excellent ability to work well with correction staff and inmates, "evidence" of his ability to create social relationships. These gains, along with resources provided petitioner through his prison employment has been found to enable petitioner to finalize his parole and employment plans when paroled (Ex A pg 43 and Ex I).

## SUBSTANCE ABUSE

No substance abuse found for over 35 years.

CURRENT LAW HOLDS:  Reliance on conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law.  But, where inmate over time continues to demonstrate exemplary behavior and evidence of rehabilitation, denying him parole date simply because of the nature of prior conduct would raise serious questions involving his liberty in parole; In re Smith, 114 Cal.App.4th 372; Biggs, v. Terhune, 334 F.3d 916; Irons v. Warden, 358 F.Supp.2d. 947 - fn.2.

DUE PROCESS IS VIOLATED by the continued reliance on unchanging factors when the Board of Parole Hearings repeatedly ignore evidence of the inmate's exemplary post-incarceration development and rehabilitation,  Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003); Irons v. Warden of Calif. State

Prison, 358 F.Supp.2d 936, 947 (E.D.Cal.2005)(The board has "relied on
unchanging factors [i.e., commitment offense and alcohol use at time of
offense] at least 15 prior times" to deny parole; "[T]he continued reliance on
these factors ... violates due process ..."); <u>Clay v. Kane</u>, No. 04-8663-
VAP(AJW) (C.D.Cal. December 2, 2005) (similar); <u>Saif'ullah v. Carey</u>, No. 02-
2664-MCE(DAD), 2005 WL 1555389 (E.D.Cal. June 28, 2005) (similar); <u>Yellen</u>
<u>v. Butler</u>, No. S-01-2398-MCE, (E.D.Cal. March 31, 2004) (similar); <u>Masoner</u>
<u>v. State</u>, No. 03-1261-ER, 2004 WL 1080177 (E.D.Cal. Jan 23, 2004) (similar).

There is "no evidence" in petitioners case of any unsuitability factor
other than the now expired predictive value of the commitment offense, and all
suitability factors have been met or exceeded.


THEREFORE: "no" evidence can be found in the record to find petitioner
poses a current risk to "public safety". The Board concedes petitioner has
exceeded the time petitioner was required to do for his offense, thus no
parole date need be set, just release, clearly a finding of unsuitability is
"arbitrary and capricious" as shown throughout this petition. Thus requiring
this petition for writ of habeas corpus to be granted.


**GROUND FOUR:**

Petitioner requested the Board to consider his application for parole
under the laws that applied to him prior to numerous changes that occurred on
July 1, 1977, the Board denied, a violation of constitutional ex post facto.

During petitioners parole consideration hearings, petitioner has
requested the Boards to conduct his hearings under the laws prior to July 1,
1977. During the latest hearing held October 12, 2005 (Ex A) petitioner once
again ask the Board to conduct his hearing in accordance to California Code of

Regulations (CCR) Title (T) 15 Division (D) 2, Section (S) 2292 RETROACTIVITY subsection (a) which states in part: "ALL life prisoners committed to state prison for crime(s) committed prior to July 1, 1977 SHALL be heard in accordance with rules in effect prior to 7/1/77." THE BOARD REFUSED (Ex A pg 5-6) holding the hearing under current law in violation of ex post facto.

First and foremost, the California Supreme Court found in In re Stanworth, 33 Cal.3rd 176 (1976) both the State and Federal Constitutions require petitioner's parole release consideration be held under both the Indeterminate Sentence Law and Administrative Guidelines which were in effect at the time he was sentenced.

The regulations and rules that became effective July 31, 1978 CCR. T. 15 D. 2 S. 2281 (provided as Ex L) subsection (c) Circumstances Tending to Show Unsuitability. (states in whole) The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstances or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:

(1) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(2) Childhood Abuse. The prisoner was raised in a home in which he or his siblings suffered unusual physical abuse.

(3) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon victim.

(4) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(5) Bizarre Conduct After Crime. The prisoner abused, defiled of mutilated

the corpse.

(6)  Institutional Behavior.  The prisoner has engaged in serious misconduct
in prison or jail.

As petitioner has shown this court, "NONE" of the above unsuitability
factors applies:  Again, petitioner has NO record of any of the following: 1)
NO record of prior violence, 2) NO record of childhood abuse, 3) NO record of
sadistic sexual offenses, 4) NO record of severe mental problems, 5) NO record
of bizarre conduct after crime, and 6) NO record of serious misconduct in any
institution.  Thus, petitioner cannot be found unsuitable under the above.

Judicial notice need be taken that the above guidelines are all about the
offender and NOT THE GRAVITY OF THE OFFENSE, the use of California Penal Code
3041 (b) would again be ex post facto, as shown.

The following cases found ex post facto violations; Stanworth supra
[both State and Federal]; In re Fain, 139 Cal.App.3d. 295 (1983) [parole date
consideration based on determinate sentence law criteria rather than
indeterminate sentence law criteria, is ex post facto].  The controlling
United States Supreme Court Ex Post Facto Case, Stonger v. California 123
S.Ct. 2446 (2003).

The following case are a few examples of how the prior law was court
ordered to be applied to those who committed offense prior to July 1, 1977.

Way v. Superior Court for City of San Diego, 141 Cal.Rptr. 383, 386
(1977) [make punishment fit the criminal rather than the crime]; In re Neal,
114 Cal.App.3d 141 (1980) [all prison sentences, including those imposed under
the indeterminate sentence law, must be for a fixed term of imprisonment with
a specific parole date]; Dorado v. Kerr, 454 F.2d 892 cert. denied 93
S.Ct. 244 [California indeterminate sentence procedure is for individual
treatment of offender]; In re Troglin, 51 C.A.3d 434 [In fixing prison terms

and granting paroles, the Adult Authority is expected to make the length of time fit the criminal rather than the crime]; In re Rodriquez, 14 C.3d 639 (1975) [Adult Authority obligated to fix prisoner's term at number of years proportionate to his offense]; In re Minnis 7 C.3d 639 (1972) [In deciding whether to fix a sentence at less than maximum and whether to grant parole, the Adult Authority must consider the nature of the offense, age of offender, his prior associations, his habits, his inclinations, his traits of character, his potential for reform, his good conduct while incarcerated and the interest of public security].

Petitioner was scheduled to have his term fixed on September 12, 1977 or soon thereafter (see Ex M). But for unknown reasons, this was never done, or done and not disclosed to petitioner, either way, the Authorities have failed to fix petitioner's primary term, and there is no justifiable reason way petitioner should not be paroled.

Clearly petitioner has been denied his right to have his application for parole consideration held under the laws which apply to him in violation of ex post facto.

Therefore:  This court must find the Board of Parole Hearings has violated petitioner's constitutionally protected rights and order petitioner be paroled.

/L/

///

///

4(s)

8. Did you appeal from the conviction, sentence, or commitment?  ☒ Yes.  ☐ No.    If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
   Court of Appeal, Fourth Appellate District, Division One

   b. Result:  Denied                                    c. Date of decision:  Unknown

   d. Case number or citation of opinion, if known:  Court of Appeal Case no. 4 Crim. 5019

   e. Issues raised:  (1)  Insufficient evidence to support verdict of first degree murder.

      (2)  Refusing to grant new trial based on newly discovered evidence.

      (3)  Trial judge erred in instructing the jury on the issue of diminished capacity.

   f. Were you represented by counsel on appeal?  ☒ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

   Mr. Robert F. Bourne, 2550 5th Ave., Suite 720, San Diego, CA 92103-6624

9. Did you seek review in the California Supreme Court?  ☒ Yes.  ☐ No.    If yes, give the following information:

   a. Result:  Denied                                    b. Date of decision:  Unknown

   c. Case number or citation of opinion, if known:  Unknown

   d. Issues raised:  (1)  Believe to be same as above.

      (2)

      (3)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal,
    explain why the claim was not made on appeal:
    Issue not ripe during appeal.

11. Administrative Review:

    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust
       administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975)
       52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such
       review:
       Board of parole hearings no longer has an administrative review process.

    b. Did you seek the highest level of administrative review available?  ☒ Yes.  ☐ No.
       *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?  [XX] Yes. If yes, continue with number 13.  [ ] No. If no, skip to number 15.

13. a. (1) Name of court:  __California Superior Ct., County of San Diego__

    (2) Nature of proceeding (for example, "habeas corpus petition"):  __Habeas Corpus__

    (3) Issues raised: (a)  __To have an actual term of imprisonment fixed.__

       (b)  __To have a hearing to determine a parole date.__

    (4) Result (Attach order or explain why unavailable):  __Denied attached (Ex C)__

    (5) Date of decision:  __June 01, 2006__

  b. (1) Name of court:  __California Superior Ct., County of San Diego__

    (2) Nature of proceeding:  __Habeas Corpus__

    (3) Issues raised: (a)  __Due process violated by converting life with possibility of parole__
    xxx __into life without parole based solely on unchanging factors.__

    (4) Result (Attach order or explain why unavailable):  __Denied (Ex D)__

    (5) Date of decision:  __September 01, 2006__

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
    No hearings held.

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
    No delay,

16. Are you presently represented by counsel?  [ ] Yes.  [XX] No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court?  [ ] Yes.  [XX] No. If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
    N/A

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:  _October 22, 2006_

▶ _____
(SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]    **PETITION FOR WRIT OF HABEAS CORPUS**    Page six of six

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
#### (C.C.P. §§ 1013(A), 2015,5)

I, _____Vernon Adler_____, declare:

I am over 18 years of age and I am party to this action.  I am a resident of CORRECTIONAL TRAINING FACILITY prison, in the County of Monterrey, State of California.  My prison address is:

Vernon Adler_____, CDCR #: B-35449_____
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: ED-109-L_____
SOLEDAD, CA 93960-0689.

On ___10/22/2006___, I served the attached:

Petition for Writ of Habeas Corpus

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope (verified by prison staff), with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named institution in which I am presently confined.  The envelope was addressed as follows:

California Courts of Appeal
Fourth Appellate District
750 B. St. #300
San Diego, CA 92101-8189

Department of Justice
Office of the Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on ___10/22/2006___.

_____
Vernon Adler
Declarant