# EXHIBIT 7

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

F I L E D
Stephen M. Kelly, Clerk

FEB 15 2007

Court of Appeal Fourth District

| | |
|---|---|
| In re VERNON ADLER<br><br>on<br><br>Habeas Corpus. | D049680<br><br>(San Diego County<br>Super. Ct. No. CR22437) |

THE COURT:

    The petition for writ of habeas corpus has been read and considered by Justices Benke, Huffman, and Aaron.

    In 1971 a jury convicted petitioner Vernon Adler of first degree murder. The trial court sentenced him to life in prison with the possibility of parole.

    According to the prosecution's version of events, 57-year-old Alicia Ross lived at the Minneapolis Hotel in San Diego. One day, Adler helped her carry some packages to her room. Afterwards, he spent the day visiting and drinking with her and the other hotel residents. He attended a party at the hotel that night and sometime after 11 p.m. told other attendees that he was going to Ross's room. The next morning, a friend went to Ross's room and found Ross lying dead on her bed in a pool of blood. Ross's throat had been cut and she had lacerations on her jaw, neck and shoulder. Two broken bottles saturated with blood were found in the room, which had been ransacked.

    Prior to the discovery of Ross's body, Adler had been arrested a few blocks from the hotel for being drunk in public. At the time of his arrest, he had bloodstains on his clothes and shoes. In addition, he had multiple superficial cuts and abrasions on his hands consistent with those produced by broken glass. He also had cut glass lodged in the soles of his shoes and the print from his shoes were similar in pattern and size to those found preserved in blood in Ross's room.

Adler admits meeting the victim. He also admits spending the day drinking and visiting with her and the other hotel residents. However, he denies committing the crime and does not believe himself capable of such violence. In support of the denial, he has claimed at various times that: (1) he has no memory of the crime; (2) he has vague recollections of a struggle with Ross that did not involve the use of a weapon; and (3) he visited Ross after she had been assaulted, which is why the police found blood and glass on his person.

Prior to the commitment offense, Adler had an extensive criminal history dating back to his early youth. Most of his prior offenses involved some type of theft and/or substance abuse. In addition, during his current incarceration, Adler has received numerous disciplinary actions and/or counseling, including one for theft, three for possessing contraband, and seven for refusing to work or failing to report to work. His last serious disciplinary action was in 1985 and his last disciplinary counseling was in 1998.

Adler's most recent psychological evaluation indicates he has antisocial personality disorder, but does not currently require treatment. He also suffers from alcohol dependence, which is identified as his primary risk factor for future violent criminal conduct. Although he has participated in 12-step programs in the past, he does not currently participate in them or any other self-help programs and claims to have been sober since his arrest in 1970. Assuming continued sobriety, the psychological evaluation states his violence potential upon release is no more than the average citizen. The most recent Life Prisoner Evaluation Report prepared by corrections staff states he would pose a moderate degree of threat to the public if released.

Presently, Adler has no parole plans or outside support. However, he has obtained a GED and completed vocational training in electronics. In addition, he has worked several years in the Prison Industry Authority's wood furniture finishing factory with excellent performance reviews.

In October 2005, after reviewing the above information, the Board of Parole Hearings (Board) denied Adler parole, concluding he would pose an unreasonable risk of danger to society or threat to public safety if released. In reaching this conclusion, the Board relied on the circumstances of the commitment offense, Adler's criminal history, his mixed prison programming, the objections to parole from law enforcement agencies and, of particular concern, his complete lack of parole plans.

Adler filed this petition challenging the Board's decision. In the petition, Adler contends that the Board's decision violates the prohibition against ex post facto laws because the Board relied on Determinate Sentence Law (DSL) criteria to reach its decision rather than the Indeterminate Sentence Law (ISL) criteria in effect at the time he committed his offense.

In addition, Adler contends that there is no evidence he would pose a current danger to society if released. He further contends that the Board is violating his right to due process by continually relying on unchanging factors to deny him parole. Moreover, he contends that he has been incarcerated for a period grossly disproportionate to his individual culpability. In support of this claim, he provides copies of profiles of other life prisoners who also committed first degree murder under the ISL and have since been paroled.

We conclude that Adler has not stated a prima facie case for relief. (*People v. Duvall* (1995) 9 Cal.4th 464, 474-475.) Adler's ex post facto law claim has been previously considered and rejected by the courts because there is no appreciable difference in the DSL and ISL criteria for determining parole suitability. (*In re Duarte* (1983) 143 Cal.App.3d 943, 946; *In re Seabock* (1983) 140 Cal.App.3d 29, 40-41.) There are differences in the DSL and ISL criteria for fixing release dates and Adler is entitled to the benefit of the more favorable criteria. (*In re Stanworth* (1982) 33 Cal.3d 176, 188.) However, the Board is not required to fix Adler's release date until the Board finds him suitable for parole. (*Duarte, supra,* 143 Cal.App.3d at pp. 950-951.)

Regarding Adler's remaining claims, in reviewing the decision of the Board to deny parole, this court's inquiry is limited to whether there is some evidence in the record to support the Board's decision, based on factors specified by statute and regulation. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 658.) In this case, the Board considered and relied on appropriate factors in reaching its decision. (Cal. Code Regs., tit. 15, § 2281.) In addition, there is some evidence in the record, as described above, to support the Board's decision. Further, the Board did not rely solely on unchanging factors in reaching its decision. To the contrary, the Board appeared most concerned with Adler's complete lack of parole plans, a factor that is within Adler's control to change.

Finally, Adler has not established that he has been incarcerated for a term grossly disproportionate to his individual culpability. The life prisoner profiles provided by Adler are of no assistance on this point because they lack an evidentiary foundation. Even if the profiles could be considered reliable evidence, neither the federal nor the state constitutional prohibitions against cruel and unusual punishment require intercase proportionality. (*People v. Cox* (1991) 53 Cal.3d 618, 690.) Although the federal prohibition requires intracase proportionality, Adler has not shown that a sentence of life in prison for first degree murder is disproportionate to the sentences for other types of

crimes within California or the sentences for first degree murder in other states. (*People v. Carmony* (2005) 127 Cal.App.4th 1066, 1076.) He also has not shown that the length of his incarceration "shocks the conscience" or "offends fundamental notices of human dignity" in violation of the state prohibition. (*Id.* at p. 1085.)

    The petition is denied.

*/s/ Aaron*
AARON, Acting P. J.

Copies to: All parties