# EXHIBIT 8

# S150459

SUPREME COURT
FILED

FEB 23 2007

Frederick K. _____ Clerk

DEPUTY

Vernon Adler
B-35449  ED-109-L
P.O. Box 689
Soledad, CA 93960-0689
Pro Per

### SUPREME COURT OF CALIFORNIA

Vernon Adler,                    )    Case No._____
                                 )
              Petitioner,        )    (Court of Appeal Writ No. D049680    )
                                 )
                                 )    (San Diego County Superior Court
v.                               )     Writ Numbers  HC 18509-CR 22437)
                                 )
                                 )         PETITION FOR REVIEW
                                 )
B. Curry, Warden (A), et al.     )
                                 )
              Respondent.        )

## PETITION FOR REVIEW

 Petitioner, Vernon Adler, respectfully requests your Honorable Justices to review the denial of petitioner's petition for writ of habeas corpus by the California Courts of Appeal, Fourth Appellate District, filed FEB 15, 2007, attached as exhibit A, which petitioner received in the mail on FEB 20, 2007 _____, making this petition due, by delivering to Correction Officials for mailing, by MARCH 2, 2007.

 Petitioner, being in continued incarceration for over thirty five (35) years and denied parole over sixteen (16) times, challenged the latest denial of his parole by the Board of Parole Hearings on the following grounds:

1

**Ground One:**

Petitioner's due process rights under the 5th and 14th Amendment of the U.S. Constitution and State Law were violated at petitioner's 16th (sixteen) subsequent parole consideration hearing held October 12, 2005 (Ex A) by the Board's continued use of unchanging factors.

**Ground Two:**

Petitioner has been denied his legal right to have a primary term fixed by the Adult Authority, currently Board of Parole Hearings, as ordered by the California Supreme Court in In re Rodriquez, 14 Cal.3d 639 (1975) reaffirmed in In re Dannenberg, 23 Cal.Rptr.3d 417 (2005).

**Ground Three:**

Decision petitioner is unsuitable for parole is "arbitrary and capricious" the "record" is void of "evidence" to support a finding petitioner "currently" poses an unreasonable threat to "Public Safety" if released on parole.

**Ground Four:**

Petitioner requested the Board to consider his application for parole under the laws that applied to him prior to numerous changes that occurred on July 1, 1977, the Board denied, a violation of Constitutional ex post facto.


NECESSITY FOR REVIEW


Clear evidence shows without this court intervention, petitioner has no hope of ever obtaining release on parole. Since 1971, the year petitioner was convicted, this court and California Lawmakers have made numerous changes to parole laws for life term inmates, these changes have been used by the Authorities to convert petitioner's sentence into one of life without parole.

OBJECTIONS TO COURT OF APPEAL's ORDER

While petitioner does not object to the factual history of the offense itself, he takes objection to the Court of Appeals assumption that he denies committing the crime. Not to nitpick, but petitioner explained to the State Psychiatric Team (Ex G) due to his intoxicated state (he was arrested in the early morning hours for being drunk in public) he has no memory of committing this offense, yet he takes full responsibility for his actions, and is remorseful. He has done numerous self-help programs over the years and has been found by the above Psych's to understand the nature and magnitude of his offenses. With no more of a risk to public safety than the average citizen.

The Appellate Court seizes on petitioner's inability to remember committing his crime. Notwithstanding PC 5011, life inmates are not required to admit their crimes in order to be found suitable for parole, any lack of acceptance is seen as lack of understanding. As found in In re Elkins, (2006) 50 Cal.Rptr.3d 503; review denied S148058 [A parole hearing does not provide life-term inmates a good opportunity to show their offenses were not committed in an especially heinous, atrocious, or cruel manner, even if such evidence exists, an inmate's attempt will be seen as an unwillingness to accept responsibility and therefore evidence of unsuitability.] In any event the Appellate Courts statement that petitioner denies (another way of saying does not take responsibility) the crime is contrary to the record.

Next, the Appellate Courts reliance on old non-violent prison write-ups is unreasonable. Petitioner's last write-up was over 8 years ago, and none of his write-ups involve violence, drug or alcohol use. His prison programming shows he is suitable for parole.

The Appellate Courts use of the corrections staff Life Prisoner Evaluation Report's risk assessment is contrary to current California Law. The Los Angeles Superior Court in In re Cortez found correctional staff had no training in assessing inmates "risk of threat" and ordered those assessments

not to be used by the Board, a ruling the California Attorney General did not challenge, thus, the Appellate Courts statement here is unreasonable.

The Appellate Court did find petitioner has marketable skills from his work in the Prison Industry Authority's wood furniture factory where he has excellent work reports for over 10 years. The California Code of Regulations Title 15, Division 2 §2281 et seq., requires marketable skills for parole, nothing in the regs., require outside support or a job. Being petitioner has been incarcerated for more than 35 years, has outlived his outside support, and the only available resource he has is the halfway house programs espoused by the prison system, the Board's finding these programs unsatisfactory is unreasonable. Again, the Regs., do not require outside support, housing, or a job, what they call for is marketable skills, which the Appellate Court found petitioner has, thus petitioner's record does not contain evidence he should be denied parole due to parole plans.

The decisions cited by the Appellate Court In re Duarte (1983) 143 Cal.App.3d 943; In re Seabock, (1983) 140 Cal.App.3d 29 has not been reviewed by this California Supreme Court, yet this court did detail the history of the ISL and DSL in Dannenberg, infra, where the Court found the DSL allowed parole to be denied based solely on the crime, a fact the prior guidelines did not allow, Dannenberg shows both Duarte and Seabock were decided incorrectly. The Prior ISL Law was constitutional because it dealt with the offender, not solely the offense. The DSL is all about punishment and the offense, and in order for the Board to deny parole based on the offense, the Board must find aggravating factors, People v. Black, (2005) 35 Cal. 4th 1230; In re Dannenberg, (2005) 23 Cal.Rptr.3d 417; findings of aggravation beyond the findings of a jury have been held to be unconstitutional Cunningham v. California, (2007) 549 U.S.____[2007 WL 135687].

Notwithstanding Cunningham, [Seabock and Duarte] both erred in finding the new punishment guidelines of the DSL did not violate ex post facto. How

can the actual setting of a parole date violate ex post facto, but new rules
to deny based solely on the crime not? Petitioner would have had his parole
date fixed between 8 to 13 years under the old guidelines In re Stanworth,
(1982) 33 Cal.3d 176. It is unreasonable to say, its okay for the new laws to
prevent a finding of suitability based solely on the offense, when
petitioner's primary term was to be set Dannenberg, supra, and the fact that
petitioner has long past the time allowed to hold him under the newer matrix
table California Code or Regulations Title 15 Division 2 §2403(b) table for
first degree murders sentenced to 25 to life, which if applied to him would be
found to violate ex post facto. Whatever legal reasoning is used,
petitioner's case is classic of ex post facto. Review of this issue can not
be frivolous, there is no existing controlling precedent, and even if there
were, it should be overruled, Anders v. California, (1967) 368 U.S. 738. The
Appellate Court failed to address the issue as to why petitioner's primary
term was never set, a mandate ordered by this court in Rodriquez, infra,
upheld in Dannenberg, supra, thus, under California Law a primary term must be
set.

As for the Appellate Court finding petitioner is not serving a
disproportionate term, they are cosigning the Board's fixing his term at life
without parole Dannenberg Supra. Yet, the Appellate Court found the federal
constitution requires a intracase proportionality, its confusing for that
Court to say the State Constitution does not. The Constitutionality of a
sentence under the Eight Amendment is determined by analyzing three factors:
(1) The gravity of the offense and the harshness of the penalty; (2) the
comparison with the sentences imposed on other criminals in the same
jurisdiction; and (3) where appropriate, the comparison with sentences imposed
for commission of the same crime in other jurisdictions Windham v. Merkle,
(1998) 163 F.3d 1092. Petitioner was under the understanding that State Laws
had to be at least protective as the Federal Constitution.

2c

The question petitioner presents is not whether life with the possibility of parole is disproportionate for first degree murder.  The question is, after 35 years and 16 parole hearings, and clear evidence of a conversion of life with, to life without parole disproportionate to others whose crimes are as grave, yet who's sentences have ended in parole years less than petitioner?

Petitioner's case mandates a intracase proportionate review in order to end disproportionality.

In a nut shell, petitioner accepted full responsibility for his offense, committed over 30 years ago, (passage of nearly twenty years of rehabilitation renders the ability to predict petitioner's future dangerousness based simply on the circumstances of his offense, nil, Elkins supra), past non-violent, non-serious write-ups, last one over 8 years ago, and a new and unreasonable standard for parole plans, none of which is evidence petitioner currently poses a risk to public safety, thus no real evidence contained in petitioner's record to deny parole.

Petitioner presented to the Appellate Court ample reasons for relief, and his case does prove the necessity to grant review, because this court must set standards for parole release for those who are now well past the matrix, without intervention, life with is now life without.

///

///

///

INTRODUCTION

More than Thirty Five (35) years have past since Vernon Adler began his continued incarceration in the California Prison System on July 7, 1971, while Mr. Adler has presented himself for parole over fifteen (15) times, he is being denied parole on factors of his past he can "never" change.

Since Mr. Adler was convicted a entire generation has past, Neil Armstrong walked on the moon, the Beatles broke up, the then Baltimore Colts beat the Dallas Cowboys in Superbowl 5, the Vietnam War ended and Watergate begin. The late William H. Rehniquist, recent victim to cancer, become Associate Justice to the U.S. Supreme Court in 1972, elevated to Chief Justice in 1986, to be succeeded by the youngest man in history Honorable John Roberts. Patty Hearst was kidnapped, later convicted of robberies in 1976, pardoned 1979 and her kidnappers sentenced to 10 years to life in 1978, were paroled 1983, twenty three (23) years ago. And, the California Prison System was considered to be one of the most violent in the country.

During the 35 years of trials our country has endured, petitioner has not involved himself in violent acts or used any illegal substances. Petitioner's psych reports show petitioner is a programming inmate, who has taken trades, upgraded his education, matured well, is not bitter, and the reasonable few institutional write-ups (over a 35 year time span) are for non-violent, minor, prison rule violations, which consist of, six 115's (last one is 1985, now 21 years old) and six 128's (last one in 1998, now 8 years old). Both the 115's and 128's, are so old and non-violent, they equate to broken tail lights or minor work infractions. These minor infractions are therefore worthless in the determination of petitioner's suitability readiness for parole.

The numerous changes in California Penal Law and parole consideration

hearings rules and regulations, since petitioner's conviction in 1971 are being used unlawfully to support a finding of unsuitability for parole in violation of ex post facto principals of law.  During petitioner's 16th parole consideration hearing, held October 12, 2005, (current hearing being challenged) (Exhibits bound separately) (transcripts of hearings marked Ex A) petitioner requested the Board of Parole Hearings (hereafter Board) to apply section 2292(a) which states all life prisoners convicted prior to July 1, 1977 shall be heard under the rules in effect prior to 7/1/77 (Id. pg 5).  The Board refused.  And declared they would hold the hearing under current Laws, Rules, and Regulations (Id. pg 5-6).

Notwithstanding the mandate of <u>Rodriquez</u>, infra, and further assuming, arguendo, petitioner's commitment offense supported denial of parole at petitioner's 1st, 2nd, 3rd, 4th, 5th, 6th, 7th, even his 8th hearing, did the facts of the crime support denial at the 9th? 10th? 11th? 12th? 13th? 14th? 15th?  What about this 16th hearing petitioner is now challenging?  When does overwhelming evidence of a de facto change in sentence from life with, to life without parole, by the Board of Parole Hearings mandate the granting of a writ of habeas corpus?

Must this court address the above violation despite the fact the high court of California ordered Parole Authorities to set primary terms for "ALL" inmates in <u>In re Rodriquez</u>, (1975) 14 Cal.3d 639?  Yes.  Clearly parole authorities have no intention of following laws issued by the California Supreme Court when the law favors the prisoner.  The high court in (2005) affirmed <u>Rodriquez</u>, supra, in <u>In re Dannenberg</u>, 23 Cal.Rptr.3d 417, no doubt, without court intervention, Parole Authorities will "not" set petitioner's primary term.  Thus, Prima Facie has been established.

In 1982, the California Supreme Court in <u>In re Stanworth</u> 33 Cal.3d 176,

4

ruled that failure to consider persons sentenced under the Indeterminate Sentence Law (ISL) prior to 1976 violates ex post facto. It's undisputed that petitioner's rights are being violated, requiring an order to show cause be issued along with appointment of counsel.

## PETITIONER'S CONTENTIONS

1. Petitioner's due process rights under the 5th and 14th Amend. of the U.S. Const. and State Law were violated at petitioner's 16th (sixteenth) subsequent parole consideration hearing held October 12, 2005 by the Board's continued use of unchanging factors.

2. Petitioner has been denied his legal right to have a primary term fixed by the Adult Authority, currently Board of Parole Hearings, as ordered by the California Supreme Court in In re Rodriquez, 14 Cal.3d 639 (1975) reaffirmed in In re Dannenberg, 23 Cal.Rptr.3d 417 (2005).

3. Decision petitioner is unsuitable for parole is "arbitrary and capricious" the "record" is void of "evidence" to support a finding petitioner "currently" poses an unreasonable threat to "Public Safety" if released on parole.

Petitioner submits, as Exhibit B, a Compendium of Life Inmates' Demographics, California Department of Corrections, Compiled February 22, 1997, Statistics for 1945-1996. This Compendium, as petitioner will use to support his grounds for relief, shows numerous examples of life crimes more violent, with past criminal histories more extreme and yet these life term inmates were paroled by the Board. Clear examples of proof petitioner has

been dealt with in a "arbitrary and capricious' manner.

A myth has evolved that the Indeterminate Sentence Law (ISL) and the Determinate Sentence Law (DSL) are combined, the myth is easy to dispel. The DSL, enacted into law in 1976, required set terms (determined by state lawmakers) for all crimes, except murder and kidnapping. Those crimes remained a ISL crime in order to rehabilitate the offender, unlike DSL offender who's sentence was a fixed amount for punishment. The ISL offender was, and is, required to rehabilitate prior to release. The duty of the parole board, therefore, is to compare the ISL offender's rehabilitation to risk to "public safety". Prior to 1976 this required the parole panel to judge the offender, not the offense, for suitability.

Currently, the parole panels use penal code 3041 (b) to find an ISL offender unsuitability because of the offense rather than the rehabilitative efforts of the offender, while this is upside down reasoning and certainly unconstitutional, changes of laws 5 years after petitioner's conviction is clearly a unconstitutional violation of ex post facto.

Clear "evidence" shows, for over 35 years, petitioner has not committed a violent act towards any person, be it, Correction Staff, Prison Staff, or Prison Inmate, clearly petitioner has rehabilitated, what "evidence" remains to support a finding of current "risk" to "public safety". NONE!


## STANDARD FOR REVIEW

Petitioner, being pro per, asks this court to use less stringent standards than formal pleadings drafted by lawyers, Haines v. Kerner (1972) 404 U.S. 519. Petitioner also request this court to apply the factor of "Public Safety", i.e. current risk, which the California Supreme Court has equated the term "suitable" with "safety", see Dannenberg, supra, combined with, In re

6

Scott, 133 Cal.App.4th 573. Commitment offense can negate suitability only if the crime "reliably" established by "evidence" in the "record" rationally indicate that the offender will present an unreasonable "public safety" risk if released from prison. The predictive value of a crime is very questionable after a long period of time. Denials of release solely on the basis of a crime or past crimes "warrant" especially close scrutiny. The instant case, 35 years old, is a classic example of one requiring close judicial scrutiny.

### BOARD OF PAROLE HEARINGS REASON FOR PAROLE DENIAL

1. Prisoner is not suitable for parole and would pose a unreasonable risk of danger to society or threat to public safety if released from prison. This crime demonstrates an exceptionally callous disregard for human suffering (Ex A pg 40).

2. His previous record...burglary, larceny, forgery, auto theft. (Ex A)

3. The panel also made issue of AA and lack of parole plans (Id. 43-44).

This third reason alleged by the BPH is meritless. First, AA has been found to be an unlawful requirement for parole. Second, the Board members are incorrect, prison AA does not advocate, help, or associate with parolees, most, if not all prison AA instructors, are prison employees and for safety reasons will not be placed in a advocate position for former inmates for obvious reasons. Third, "no evidence" after 35 years of sobriety to support a risk to "public safety". Fourth, parole plans or an allegation of lack of housing and a job, are not a requirement for a suitability finding.

Petitioner filed a petition for writ of habeas corpus in the Superior
Court of California, County of San Diego, his county of commitment, case
no. HC 18509-CR 22437. That court denied the petition on June 01, 2006, (Ex
C) on the basis that petitioner had previously filed similar issues, citing In
re Lynch, (1972) 8 Cal.3d 410, 439, fn.26; In re Clark, (1993) 5 Cal.4th 750,
769. That a petition for writ of habeas corpus has once been denied, a new
application will be denied unless there has been a change in the facts or the
law.

That is the case at bar, petitioner filed in 1996 claiming he "was
entitled to a hearing to fix the actual term of imprisonment", the court
denied. Apparently the court assumed petitioner was not entitled a primary
term fixed under In re Rodriquez, supra, by the California Supreme Courts
affirmance of Rodriquez in Dannenberg supra, petitioner's petition must be
heard under that affirmance by the high court in 2005, thus the June 01, 2006
(Ex C) denial is contrary to California Supreme Court Law.

To ensure the principal of exhaustion, petition filed a new petition in
the above Superior Court, case no. HC 18509-CR 22437-2nd petition (Ex D), this
time challenging his sixteen subsequent parole consideration hearing held
October 12, 2005, claiming his due process rights are being violated by
continued denial of parole based on unchanging factors. The Court denied. The
denial order alleged, petitioner is not permitted to try out contentions
piecemeal by successive proceedings. This reasoning fails. Petitioner is
asking the court to order the Authorities to set his primary term as mandated
by the California Supreme Court; in 1975 reaffirmed 2005 (addressed supra) the
Law that applies to petitioner, who was convicted prior to July 1, 1977.

Next, the court applied California Penal Code section 3041 (b) to deny the
petition, this law was not enacted until after petitioner's conviction,

8

therefore is a clear violation of ex post facto.

Further, petitioner has been to sixteen (16) parole hearing, at each he has been denied the setting of a parole date.  Contrary to the Superior Courts claim, petitioner is entitled to file a new application for writ of habeas corpus after each parole consideration hearing.

GROUNDS FOR RELIEF

**GROUND ONE:**

Petitioner's due process rights under the 5th and 14th Amend. of the U.S. Const. and State Law were violated at petitioner's 16th (sixteenth) subsequent parole consideration hearing held October 12, 2005 (Ex A) by the Board's continued use of unchanging factors.

The Board's decision to deny parole was based solely on petitioner's conviction and past history (Id. pg 40-41) (committed over 35 years ago) (petitioner request judicial notice be taken that this is the sixteenth time parole has been denied due to his conviction and past history) factors petitioner can **never** change, an undisputed fact.

Again, petitioner has been to (16) hearings, (his minimum eligible parole date past on November 15, 1977, 29 years ago, Id. pg 1) at each, the same factors are used to deny parole in violation of petitioner's protected liberty interest in parole.  This is a classic example of the Board turning a sentence from life with, into a de facto sentence of life without, the possibility of parole, which Honorable Judge David S. Wesley (June 26, 2006) found continual parole denials based on the forementioned unchanging factors converts a possible parole sentence into a life without parole sentence which is not state law and ordered <u>Rosenkrantz</u> paroled, <u>In re Rosenkrantz</u>, BH003529; appeal

9

denied B192676; California Supreme Court review denied S145504, (Ex E). Also, see Irons v. Warden, 358 F.Supp.2d 936, 947 (in assessing any due process violation is the fact that continued reliance on unchanging circumstances transforms an offense for which California Law provides eligibility for parole into a de facto life imprisonment without parole).

Mandatory language contained in California Penal Code (PC) 3041(a) (which does not violate ex post facto) imposes a obligation to grant parole when certain conditions have been met, thus creating a legally binding protected liberty interest in parole, a presumption that parole release will be granted; Greenholtz v. Inmates of Nebraska, 442 U.S. 15; McQuillon v. Duncan, 306 F.3d. 901-2; Biggs v. Terhume, 334 F.3d 914; Irons, supra; Sass v. California Board of Prison Terms, (2006)   F.3d  , 2006 DJDAR .   . These cases hold that California created an enforceable liberty interest in parole, further, petitioner is entitled to the law under PC 3041(a) that a date shall normally be set (notwithstanding PC 3041(b) and Dannenberg 34 Cal. 1070-1071 application of a denial of 'uniform terms' as quoted by the Superior Court (Ex D) clearly violates petitioner's protection under ex post facto).

The "some evidence" standard of Superintendent v. Hill, (1985) 472 U.S. 445, 457, supports a finding that petitioner has met all conditions of rehabilitation espoused by the prison system (Ex A) and all suitability factors petitioner can obtain in the California Prison System, i.e. stable social history, signs of remorse, age (now 65 years old), understanding and plans for the future (petitioner has developed marketable skills that can be put to use upon release) and institutional behavior (petitioner has an excellent record (considering continued incarceration for 35 years and **"no"** evidence of any violent or serious behavior) demonstrates an enhanced ability to function within the law upon release, evidence found by the Board.

Further, petitioner is housed at Correctional Training Facility - East
Dormitory - housing unit, designed for non-violent, programming,
rehabilitated, working individuals, (petitioner is working in PIA furniture
factory) as such, petitioner has been found to be "low risk" and "non-violent"
when considering risk to "public safety" 'evidenced' by prison administrators
in Johnson v. California 321 F.3d 791, 795.  In Greenholtz, supra, the
U.S. Supreme Court found: "The behavior record of an inmate during confinement
is critical in determining the degree the inmate is prepared to adjust to
parole release".  In Biggs, supra, the Ninth Circuit found:  the "board is
initially 'justified' in denying parole based on the commitment offense or
criminal history" the court warned  "continued use of those factors at
subsequent parole hearings would run contrary to the rehabilitative goals
espoused by the prison system resulting in a constitutional due process
violation.  The court concluded by saying:  continued denials in face of
exemplary behavior and overwhelming evidence of rehabilitation violates an
inmate's protected liberty interest in parole.

Numerous case have found such a violation, Judge Wesley (cited supra) and
the below listed sample few: Kunkler v. Muntz, CV 05-6473 TJH(E)(March 15,
2006); Clay v. Kane, 04-8663-VAP(AJW)(C.D.CAL. December 2, 2005); Saif'ullah
v. Carey, 02-2664-MCE(DAD) 2005 WL 1555389 (E.D.Cal. June 28, 2005); Yellen
v. Butler, S-01-2398-MCE (E.D.Cal. March 31, 2004); Masoner v. State,
03-1261-ER 2004 WL 1080177 (E.D.Cal. Jan 23, 2004).

The California Supreme Court in Dannenberg, 23 Cal.Rptr.3d at 436 (quoting
Rodriquez 122 Cal.Rptr. 552) found the law requires Authorities to set actual
maximum terms for "ALL" inmates, proportionate to their individual
culpability, this responsibility to fix a prisoner's actual term derives from
former PC 3020.  As petitioner will show in Ground Two, through the Compendium

of Life Inmates' Demographics (Ex B) his length of time served is
constitutionally disproportionate.

In the instant case, petitioner was convicted in 1971 (35 years ago) (4
years prior to <u>Rodriquez</u>, supra, clearly the Authorities are failing to follow
the duty to set a maximum term.  The California Supreme Court in <u>In re</u>
<u>Stanworth</u>, 33 Cal.3d at 188 ruled that if the standard of punishment has been
altered to petitioner's prejudice, ex post facto has been violated.

The failure of the Authorities to follow the law set in 1975 in <u>Rodriquez</u>
and again in 2005 as affirmed in <u>Dannenberg</u>, which requires a primary term be
fixed, clearly supports cause for court intervention.  The Board has refused
for 30 plus years and 16 parole hearings to follow the law as it pertains to
petitioner, who was eligible for parole after serving 7 years.  Petitioner was
not sentenced to life without parole, petitioner's only hope for parole is the
granting of this petition for writ of habeas corpus.


**GROUND TWO:**


Petitioner has been denied his legal right to have a primary term fixed by
the Adult Authority, currently Board of Parole Hearings, as ordered by the
California Supreme Court in <u>In re Rodriquez</u>, 14 Cal.3d 639 (1975) reaffirmed
in <u>In re Dannenberg</u>, 23 Cal.Rptr.3d 417 (2005).

Petitioner had and has a legal right under the law to have a primary term
fixed (or it was fixed, yet never disclosed to petitioner) that is
constitutionally proportionate to his individual culpability.  As explained
this term fixing responsibility of the Authorities to fix petitioner's maximum
term has been violated.

In <u>Dannenberg</u> at 421, the court held that "life inmates who believe that

12

such Board decisions have kept them confined beyond the time the Constitution allows for their particular criminal conduct may take their claims to court, petitioner now invokes this right.  Specifically, petitioner asserts his continued incarceration of 35 years is grossly disproportionate compared to the numerous life inmates (who paroled years ago) convicted of crimes more serious than petitioner, see Compendium of Life Inmates' Demographics (Ex B) petitioner will list the follow examples:

DARRELL KEMP:  Committed a sadistic, vicious, premeditated rape murder of a very young lady who was about to be married, served 19 years (Id. pg  8).
CHARLES TURVILLE:  Committed torture/murder, served 12 years (Id. pg 12).
DENNIS STANWORTH:  Raped and killed two women, served 17 years (Id. pg 15).
TERRY MABRY:  Murdered a Police Officer and had prior criminal history of armed robberies, forgery, car theft, served 14 years (Id. pg 19).
GALEN LOKEY:  Kidnap - murder, served 9 years (Id. pg 21).
WILLIAM FAIN:  Murder, three kidnaps, two rapes, sexual perversion, sentence to two life sentences (consecutive) served 15 years / 8 Months (Id. pg 22).
TED SUBIA:  Murdered his victim using a claw type hammer to the head, the head was so crushed the coroner could not determine how many blows were inflicted, the conclusion was severe overkill, time served 8 years (Id. pg 23).
CHARLES JOLLY:  Kidnapped, raped, and murdered a woman by slashing her body beyond identification,  time served 11 years (Id. pg 33).
ROBERT HILL:  Raped, sodomized, and murdered a pregnant housewife, so there would be no witness to identity him, time served 13 years (Id. pg 40).
LU:  Committed two vicious, animal like murders with a hatchet, time served 13 years (Id. pg 45).
JOSE MORALES:  His victim had her thumb amputated, face slashed, and was shot

13

in the head, convicted for murder - mutilation, served 9 years / 11 months,
paroled to a halfway house (Id. pg 53).

VINCENT BOZZO:  Committed murder during armed robbery, released 1990 after
serving 14 years (Id. pg 91).

BILLY McILVAINE:  A Police Officer:  Convicted of torture/murder.  McIlvaine
pretended to arrest David Dominguez, took him to his home, tortured him, then
shot him in the head.  Paroled in 1992 after serving 15 years / 6 months, his
parole affirmed by Governor Pete Wilson, who had sought McIlvanie's release
for many years (Id. pg 94).

The mandate to fix a primary term to "ALL" life term inamtes convicted
prior to 1975 in Rodriquez has clearly not been carried out by the authorities
(or failed to disclose to petitioner or document the primary term in
petitioner's C-file) worse petitioner now suffers confinement which is beyond
constitution limits which Rodriquez sought to prevent.

Clearly, petitioner's 35 years exceeds the time served by most first
degree murderers convicted prior to 1977, and whose facts demonstrate more
violence than the gravity of petitioner commitment offense.  The matrix as it
applies to petitioner (Ex B pg 7) shows:  CIRCUMSTANCES - section  C. Severe
Trauma - VICTIM section II. Prior Relationship, time to serve 13-15-17,
petitioner and the victim attended a party, were seen to consume numerous
alcoholic drinks, victim's throat was cut by a broken wine bottle.

Suitability finding under PC 3041 (b) does not apply, this violates ex
post facto, the application of Dannenberg suitability finding first, "uniform"
terms" setting second, also violates ex post facto.

Petitioner, convicted prior to the changes in law in 1976, requires the
Board to set petitioner's primary term, and requires petitioner's term be
fixed "unform" and proportionate to petitioner's individual culpability,

14

i.e. according to the forementioned "matrix" which clearly shows petitioner

should have served no more than 17 years, petitioner has now served an excess

of 18 years, so far, clear "evidence" of gross disproportionate time served.

The proper means to obtain a declaration of a primary (maximum) term is by

Habeas Corpus, In re Montenegro, 246 C.A.2d. 515 cause for this petition.


**GROUND THREE:**


Decision petitioner is unsuitable for parole is "arbitrary and capricious"

the "record" is void of "evidence" to support a finding petitioner "currently"

poses an unreasonable threat to "Public Safety" if released on parole.

Specifically petitioner challenges the Board's decision to denial parole,

on the baseless finding that petitioner currently poses a current risk to

"public safety" due to the gravity of his offense and past history (both 35

years removed), at his SIXTEENTH (16th) subsequent parole consideration

hearing held October 12, 2005  Ex A).

The factor statutorily required to be considered, and the overarching

consideration, is "Public Safety", the California Supreme Court has equated

the term "suitable" with "safety" In re Dannenberg, (2005) 34 Cal.4th 1061,

1091.  In re Scott, 133 Cal.App.4th 573 the commitment offense can negate

suitability only if circumstances of the crime "reliably" established by

"evidence" in the "record" rationally indicate that the offender will present

an unreasonable public safety risk if released from prison.  Yet, the

predictive value of the commitment offense may be very questionable after a

long period of time. Thus, "denial" of release solely on the basis of the

gravity of the commitment offense "warrants" especially close scrutiny.

PETITIONER PRESENTS SUCH A CASE.

Numerous courts have found the predictive value of offenses declines over

time and California Law does not allow the Board to convert a life with parole sentence into a life without parole sentence, see <u>Bair v. Folsom State Prison</u>, 2005 WL 2219220 *12 n.3 (E.D.Cal. 2005), <u>report and Recommendation adopted by</u>, 2005 WL 3081634 (E.D.Cal. 2005); and <u>Rosenkrantz v. Marshall</u>, 2006 WL 2327085 (C.D. Cal. 2006); and California Superior Court Judge David S. Wesley found continual parole denials based on the forementioned unchanging factors converts a possible parole sentence into a life without parole sentence which is "not" California Law, <u>In re Rosenkrantz</u>, BH003529 (same Robert <u>Rosenkrantz</u> 29 Cal.4th 616); California Court of Appeals summarily denied writ of supersedeas/application for stay no. B192676; California Supreme Court denied review and application for stay no. S145504, (Ex E).

Judge Wesley also found that the Board's decision may not rely on an opposition by the county's District Attorney as a factor to deny parole (Id. pg 2). Judge Wesley also found 20 years of prison incarceration time exceeds the maximum term for first degree murder (Id. pg 3).

Clearly, petitioner's 35 years of incarceration demonstrates a classic example of sentence conversion to life without parole by the Board, and the "record" is void of "evidence" to support a finding petitioner poses a risk to "public safety", both of which requires petitioner's parole.

The Board cannot find petitioner's gains and his ability to maintain them over an extended period of time supported by the evidence presented, the Boards failure to consider all of petitioner's rehabilitative efforts, espoused by the prison system, violates due process, and petitioner has held these gains for well over 10 year, 20 years? 30 years? Petitioner has "no" prison record of violent behavior.

The prison system has determined: 1) petitioner's offense was "not unusually violent" 2) classified petitioner at a low public safety risk level

two inmate and 3) now houses petitioner in Correctional Training Facility II -
East Dormitory - designed for non-violent, programming, working individuals,
such inmate's are considered "low risk" and "non-violent" as testified to in
the case <u>Johnson v. California</u>, 321 F.3d 791,795. The Board's failure to
consider petitioner "risk to public safety" based on his prison housing and
programming has to be a violation of due process. This is also "evidence"
petitioner has the ability to find and maintain a job and decent housing.

Lastly, the Boards findings that petitioner's inability to find housing
and a job (while incarcerated) is "not" a factor to deny parole  (Ex A pg 44).

Even the Board admits petitioner has exceeded his time on line 16-21 (Id.)
they said: "once you get a date, you've been in here so long, you won't have
to worry about staying any longer once you date is established. So you're
talking about 120 days, and all of a sudden you go out the front gate." THE
BOARD CONCEDES PETITIONER HAS PAST HIS TIME TO SERVE.

While unclear, it appears the Board is saying marketable skills and a
halfway house is "not" good enough to get a parole date, of course such is
"not" a factor to deny parole.

Again, the Board's sole reliance on the gravity of the offense to justify
denial of parole can be "initially" justified as fulfilling the requirements
set forth by state law. (Biggs v. Terhune (9th Cir. 2003) 334 F.3d 910, 916.)
However, over time, should petitioner continue to demonstrate exemplary
behavior and evidence of rehabilitation, denying a parole date simply because
of the nature of the commitment offense raises serious questions involving his
liberty interest in parole. (Id. at p. 917.) (Ex B). Thus, petitioner's
commitment offense, assuming the offense met the <u>In re Dannenberg</u>, (2005) 34
Cal.4th 1061 test, supported denial at petitioner's initial hearing, the crime
"no longer" supports denial in face of the Board's finding that petitioner's

rehabilitation supports parole.

During trial proceedings, the district attorney did offer to reduce the charge to second degree murder in exchange for a guilty plea, (Ex K), this is also evidence that petitioner's crime does not warrant death in prison.

## PETITIONER'S REHABILITATION ACHIEVEMENTS

Petitioner has availed himself to numerous self-help, education, vocation courses, of most important are: Achieved his GED, Vocational Welding, attended Alcoholics Anonymous continuously for 13 years, (Ex G), petitioner also has achieved Certificates in A/C Electronics, D/C Electronics, Electronic Circuits, Semiconductor Devices, Electronic Communications, Digital Techniques, Microprocessors, for complication of Vocational Electronics, and a Certificate of Proficiency as a Furniture Painter, Stainer, Sprayer, Number of Hours achieved in this trade 10,000+ hours (Ex J).

## PETITIONER'S PRIOR CRIMINAL HISTORY

While petitioner had a prior record, (One (1) Burglary, One (1) Grand Larceny, One (1) Forgery and One (1) Auto Theft (Ex F) (none of these offenses involved injury to others)) the "predictive value" of said offenses, from 35 years ago, hold no "evidentiary support".

## PSYCHIATRIC EVALUATION

2004 report written by S. Stack and 1999 report written by Steven J. Terrini (submitted as Ex G) both finds that petitioner does "not" currently pose a risk to "public safety" and both support petitioner's release on parole.

It should be noted that the Board read, yet failed to actual consider these recommendations. Specifically, Dr. Stack found Inmate Adler a viable

candidate for parole (Ex A pg 37 & 43). The Board, however, stated that these recommendations are "very good" "but we're the ones that have to make the final decision" (Id. at pg 37 ln 15-16) clearly the panel did not consider this to be a factor which firmly supports parole for petitioner.

## PETITIONER'S SOCIAL RELATIONSHIPS

Petitioner had a good social history with his sister, and friend (Ex G & H) for many years, currently his work record shows he has a excellent ability to work well with correction staff and inmates, "evidence" of his ability to create social relationships. These gains, along with resources provided petitioner through his prison employment has been found to enable petitioner to finalize his parole and employment plans when paroled (Ex A pg 43 and Ex I).

## SUBSTANCE ABUSE

No substance abuse found for over 35 years.

CURRENT LAW HOLDS: Reliance on conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. But, where inmate over time continues to demonstrate exemplary behavior and evidence of rehabilitation, denying him parole date simply because of the nature of prior conduct would raise serious questions involving his liberty in parole; In re Smith, 114 Cal.App.4th 372; Biggs, v. Terhune, 334 F.3d 916; Irons v. Warden, 358 F.Supp.2d. 947 - fn.2.

DUE PROCESS IS VIOLATED by the continued reliance on unchanging factors when the Board of Parole Hearings repeatedly ignore evidence of the inmate's exemplary post-incarceration development and rehabilitation, Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003); Irons v. Warden of Calif. State

Prison, 358 F.Supp.2d 936, 947 (E.D.Cal.2005)(The board has "relied on unchanging factors [i.e., commitment offense and alcohol use at time of offense] at least 15 prior times" to deny parole; "[T]he continued reliance on these factors ... violates due process ..."); Clay v. Kane, No. 04-8663-VAP(AJW) (C.D.Cal. December 2, 2005) (similar); Saif'ullah v. Carey, No. 02-2664-MCE(DAD), 2005 WL 1555389 (E.D.Cal. June 28, 2005) (similar); Yellen v. Butler, No. S-01-2398-MCE, (E.D.Cal. March 31, 2004) (similar); Masoner v. State, No. 03-1261-ER, 2004 WL 1080177 (E.D.Cal. Jan 23, 2004) (similar).

There is "no evidence" in petitioners case of any unsuitability factor other than the now expired predictive value of the commitment offense, and all suitability factors have been met or exceeded.


THEREFORE: "no" evidence can be found in the record to find petitioner poses a current risk to "public safety". The Board concedes petitioner has exceeded the time petitioner was required to do for his offense, thus no parole date need be set, just release, clearly a finding of unsuitability is "arbitrary and capricious" as shown throughout this petition. Thus requiring this petition for writ of habeas corpus to be granted.


**GROUND FOUR:**

Petitioner requested the Board to consider his application for parole under the laws that applied to him prior to numerous changes that occurred on July 1, 1977, the Board denied, a violation of constitutional ex post facto.

During petitioners parole consideration hearings, petitioner has requested the Boards to conduct his hearings under the laws prior to July 1, 1977. During the latest hearing held October 12, 2005 (Ex A) petitioner once again ask the Board to conduct his hearing in accordance to California Code of

Regulations (CCR) Title (T) 15 Division (D) 2, Section (S) 2292 RETROACTIVITY

subsection (a) which states in part: "ALL life prisoners committed to state

prison for crime(s) committed prior to July 1, 1977 SHALL be heard in

accordance with rules in effect prior to 7/1/77." THE BOARD REFUSED (Ex A pg

5-6) holding the hearing under current law in violation of ex post facto.

First and foremost, the California Supreme Court found in In re

Stanworth, 33 Cal.3rd 176 (1976) both the State and Federal Constitutions

require petitioner's parole release consideration be held under both the

Indeterminate Sentence Law and Administrative Guidelines which were in effect at

the time he was sentenced.

The regulations and rules that became effective July 31, 1978 CCR. T. 15

D. 2 S. 2281 (provided as Ex L) subsection (c) Circumstances Tending to Show

Unsuitability. (states in whole) The following circumstances each tend to

indicate unsuitability for release. These circumstances are set forth as

general guidelines; the importance attached to any circumstances or

combination of circumstances in a particular case is left to the judgment of

the panel. Circumstances tending to indicate unsuitability include:

(1) Previous Record of Violence. The prisoner on previous occasions

inflicted or attempted to inflict serious injury on a victim, particularly if

the prisoner demonstrated serious assaultive behavior at an early age.

(2) Childhood Abuse. The prisoner was raised in a home in which he or his

siblings suffered unusual physical abuse.

(3) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted

another in a manner calculated to inflict unusual pain or fear upon victim.

(4) Psychological Factors. The prisoner has a lengthy history of severe

mental problems related to the offense.

(5) Bizarre Conduct After Crime. The prisoner abused, defiled of mutilated

21

the corpse.

(6) <u>Institutional Behavior</u>. The prisoner has engaged in serious misconduct in prison or jail.

As petitioner has shown this court, "NONE" of the above unsuitability factors applies: Again, petitioner has NO record of any of the following: 1) NO record of prior violence, 2) NO record of childhood abuse, 3) NO record of sadistic sexual offenses, 4) NO record of severe mental problems, 5) NO record of bizarre conduct after crime, and 6) NO record of serious misconduct in any institution. Thus, petitioner cannot be found unsuitable under the above.

Judicial notice need be taken that the above guidelines are all about the offender and NOT THE GRAVITY OF THE OFFENSE, the use of California Penal Code 3041 (b) would again be ex post facto, as shown.

The following cases found ex post facto violations; <u>Stanworth</u> supra [both State and Federal]; <u>In re Fain</u>, 139 Cal.App.3d. 295 (1983) [parole date consideration based on determinate sentence law criteria rather than indeterminate sentence law criteria, is ex post facto]. The controlling United States Supreme Court Ex Post Facto Case, <u>Stonger v. California</u> 123 S.Ct. 2446 (2003).

The following case are a few examples of how the prior law was court ordered to be applied to those who committed offense prior to July 1, 1977.

<u>Way v. Superior Court for City of San Diego</u>, 141 Cal.Rptr. 383, 386 (1977) [make punishment fit the criminal rather than the crime]; <u>In re Neal</u>, 114 Cal.App.3d 141 (1980) [all prison sentences, including those imposed under the indeterminate sentence law, must be for a fixed term of imprisonment with a specific parole date]; <u>Dorado v. Kerr</u>, 454 F.2d 892 cert. denied 93 S.Ct. 244 [California indeterminate sentence procedure is for individual treatment of offender]; <u>In re Troglin</u>, 51 C.A.3d 434 [In fixing prison terms

and granting paroles, the Adult Authority is expected to make the length of time fit the criminal rather than the crime]; <u>In re Rodriquez</u>, 14 C.3d 639 (1975) [Adult Authority obligated to fix prisoner's term at number of years proportionate to his offense]; <u>In re Minnis</u>, 7 C.3d 639 (1972) [In deciding whether to fix a sentence at less than maximum and whether to grant parole, the Adult Authority must consider the nature of the offense, age of offender, his prior associations, his habits, his inclinations, his traits of character, his potential for reform, his good conduct while incarcerated and his interest of public security].

Clearly petitioner has been denied his right to have his application for parole consideration held under the laws which apply to him in violation of ex post facto.

## CONCLUSION

THEREFORE:  Petitioner, Vernon Adler, asks, for the above reasons, this petition be granted.


I declare under penalty of perjury the above true and correct.


Respectfully Submitted,


_Vernon Adler_
Vernon Adler  Pro Per

Dated: 2 - 2 1 - 07

# EXHIBIT
# "A"

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

F I L E D
Stephen M. Kelly, Clerk

FEB 15 2007

Court of Appeal Fourth District

| | |
|---|---|
| In re VERNON ADLER<br><br>on<br><br>Habeas Corpus. | D049680<br><br>(San Diego County<br>Super. Ct. No. CR22437) |

THE COURT:

The petition for writ of habeas corpus has been read and considered by Justices Benke, Huffman, and Aaron.

In 1971 a jury convicted petitioner Vernon Adler of first degree murder. The trial court sentenced him to life in prison with the possibility of parole.

According to the prosecution's version of events, 57-year-old Alicia Ross lived at the Minneapolis Hotel in San Diego. One day, Adler helped her carry some packages to her room. Afterwards, he spent the day visiting and drinking with her and the other hotel residents. He attended a party at the hotel that night and sometime after 11 p.m. told other attendees that he was going to Ross's room. The next morning, a friend went to Ross's room and found Ross lying dead on her bed in a pool of blood. Ross's throat had been cut and she had lacerations on her jaw, neck and shoulder. Two broken bottles saturated with blood were found in the room, which had been ransacked.

Prior to the discovery of Ross's body, Adler had been arrested a few blocks from the hotel for being drunk in public. At the time of his arrest, he had bloodstains on his clothes and shoes. In addition, he had multiple superficial cuts and abrasions on his hands consistent with those produced by broken glass. He also had cut glass lodged in the soles of his shoes and the print from his shoes were similar in pattern and size to those found preserved in blood in Ross's room.

In addition, Adler contends that there is no evidence he would pose a current danger to society if released. He further contends that the Board is violating his right to due process by continually relying on unchanging factors to deny him parole. Moreover, he contends that he has been incarcerated for a period grossly disproportionate to his individual culpability. In support of this claim, he provides copies of profiles of other life prisoners who also committed first degree murder under the ISL and have since been paroled.

We conclude that Adler has not stated a prima facie case for relief. (*People v. Duvall* (1995) 9 Cal.4th 464, 474-475.) Adler's ex post facto law claim has been previously considered and rejected by the courts because there is no appreciable difference in the DSL and ISL criteria for determining parole suitability. (*In re Duarte* (1983) 143 Cal.App.3d 943, 946; *In re Seabock* (1983) 140 Cal.App.3d 29, 40-41.) There are differences in the DSL and ISL criteria for fixing release dates and Adler is entitled to the benefit of the more favorable criteria. (*In re Stanworth* (1982) 33 Cal.3d 176, 188.) However, the Board is not required to fix Adler's release date until the Board finds him suitable for parole. (*Duarte, supra,* 143 Cal.App.3d at pp. 950-951.)

Regarding Adler's remaining claims, in reviewing the decision of the Board to deny parole, this court's inquiry is limited to whether there is some evidence in the record to support the Board's decision, based on factors specified by statute and regulation. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 658.) In this case, the Board considered and relied on appropriate factors in reaching its decision. (Cal. Code Regs., tit. 15, § 2281.) In addition, there is some evidence in the record, as described above, to support the Board's decision. Further, the Board did not rely solely on unchanging factors in reaching its decision. To the contrary, the Board appeared most concerned with Adler's complete lack of parole plans, a factor that is within Adler's control to change.

Finally, Adler has not established that he has been incarcerated for a term grossly disproportionate to his individual culpability. The life prisoner profiles provided by Adler are of no assistance on this point because they lack an evidentiary foundation. Even if the profiles could be considered reliable evidence, neither the federal nor the state constitutional prohibitions against cruel and unusual punishment require intercase proportionality. (*People v. Cox* (1991) 53 Cal.3d 618, 690.) Although the federal prohibition requires intracase proportionality, Adler has not shown that a sentence of life in prison for first degree murder is disproportionate to the sentences for other types of

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
#### (C.C.P. §§ 1013(A), 2015,5)

I, _____Vernon Adler_____, declare:

I am over 18 years of age and I am party to this action.  I am a resident of CORRECTIONAL TRAINING FACILITY prison, in the County of Monterrey, State of California.  My prison address is:

> _____Vernon Adler_____, CDCR #:  B-35449
> CORRECTIONAL TRAINING FACILITY
> P.O. BOX 689, CELL #: ED-109-L
> SOLEDAD, CA  93960-0689.

On ____2-21-07_____, I served the attached:

Petition for Review

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope (verified by prison staff), with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named institution in which I am presently confined.  The envelope was addressed as follows:

Supreior Court San Diego County
State of California
P.O. Box 122724
San Diego, CA. 92112-2724

Office of the Attorney General California
455 Golden Gate Avenue, Suite 11000
San Francisco, CA. 94102-7004

California Supreme Court
350 McAllister Street
San Francisco, CA. 94102

California Court of Appeal 4th District
750 B. Street, # 300
San Diego, CA. 92101-8189

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on __2-21-07____.

_____Vernon Adler___ Pro Per_____
Declarant